UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

AARON GLASER,                                    No.: 1:18-cv-971

                              Plaintiff,

                                                 **COMPLAINT AND DEMAND
                                                 FOR JURY TRIAL**

              -against-

UPRIGHT CITIZENS BRIGADE LLC, ALEX SIDTIS,
AND SHANNON PATRICIA O'NEILL,

                              Defendants.
------------------------------------------------------------------X

   Plaintiff, AARON GLASER, by and through his attorneys, MARK DAVID SHIRIAN

P.C., complaining of the Defendants, UPRIGHT CITIZENS BRIGADE LLC, ALEX SIDTIS,

AND SHANNON O'NEILL, respectfully alleges as follows:

   1.  This firm, MARK DAVID SHIRIAN P.C., represents Plaintiff AARON

GLASER (hereinafter "Plaintiff" or "Plaintiff Glaser") in connection with his claims against his

former school and employer, Defendants UPRIGHT CITIZENS BRIGADE LLC, (hereinafter

"UCB"), ALEX SIDTIS (hereinafter "Sidtis"), AND SHANNON PATRICIA O'NEILL

(hereinafter "O'Neill"), (O'Neill, together with Sidtis, the "Individual Defendants," and the

Individual Defendants, together with UCB, the "Defendants") for negligence, gender

discrimination, hostile work environment and wrongful termination, pursuant to Title VII of the

Civil Rights Act, and the New York State Human Rights Law, New York Executive Law 290 et

seq., New York City Admin. Cod. §8-107, violations of Title IX and the Clery Act, and other

tortuous conduct.

## NATURE OF ACTION

2.      This is an action for declaratory and injunctive relief and for damages arising out of defendants' unlawful conduct that resulted in the wrongful termination of Plaintiff Glaser, a former student and employee. Defendants' actions, which were in violation of federal, state and city law, were taken to achieve a predetermined result and with deliberate disregard of the consequences to plaintiff and the grievous harm that he would suffer and has suffered.

3.      Simply put: UCB improperly mishandled an investigation against Plaintiff Glaser by failing to conduct a formal hearing process against Plaintiff Glaser.

4.      Plaintiff Glaser seeks redress against Defendants UCB, Sidtis, and O'Neill, due to actions, omissions, errors, and the flawed procedures, and/or negligence and overall failure to provide Plaintiff Glaser with a meaningful standard of due process and equity, concerning the anonymous, reckless, hollow and wrongful allegations of sexual misconduct made against him.

## JURISDICTION AND VENUE

5.      This court has original federal question jurisdiction under 28 U.S.C. 1331 and 1343 because this case is brought for gender discrimination, hostile work environment, retaliation, and wrongful termination, under Title VII of the Civil Rights Act and other tortuous conduct. This Court has supplemental jurisdiction over Plaintiff's negligence, New York State Human Rights Law ("NYSHRL"), New York Executive Law 290 *et seq.* and N.Y. Exec. L 296 *et seq.* and New York City Admin. Cod. §8-107 claims as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue properly lies in the South District of New York pursuant to 28 U.S.C. 1391(b), because the claims arose in this judicial district and the defendants are doing business in this District.

## PARTIES

7.      Plaintiff Glaser is a 30-year-old male. During all times hereinafter mentioned, Plaintiff Glaser was and is a resident of the State of New York.

8.      At all relevant times, Plaintiff Glaser met the definitions of an "employee" of UCB's as both a theater and an educational institution under all applicable statutes.

9.      UCB has both a theater and improvisational and sketch comedy training center (the "UCB Training Center") in New York City. In 2005, UCB expanded and opened the Upright Citizens Brigade Theatre Los Angeles and began offering UCB Training Center classes on the west coast as well. The Upright Citizens Brigade Theatre is home for all things comedy. Their four theatres, two in New York and two in Los Angeles, offer affordable, high-quality shows seven nights a week. In addition, UCB runs one of the largest and most respected improvisation and sketch comedy schools in the country.

10.      UCB was and still is the employer of Plaintiff Glaser at all relevant times to this action.

11.      Sidtis is the managing director of the UCB's New York office.

12.      O'Neill is the artistic director the UCB's New York office.

13.      Sidtis and O'Neill both conducted an investigation of Plaintiff Glaser with respect to allegations that he raped and drugged several women.

14.     At all relevant times, UCB has met the definition of an "employer" under all applicable statutes.

15.     This action is brought against Sidtis in his individual capacity pursuant to N.Y. Executive Law 290 et seq.

16.     This action is brought against O'Neill in his individual capacity pursuant to N.Y. Executive Law 290 et seq.

17.     At all relevant times, UCB has met the definition of an "employer" under all applicable statutes.

## **PROCEDURAL BACKGROUND**

18.     On or about May 2017, Plaintiff Glaser filed a complaint against defendant UCB with the Equal Opportunity Commission ("EEOC"), which was also adopted by the New York State Division of Human Rights and assigned EEOC Charge No. 520-2017-02902.

19.     On or about December 6, 2017, the EEOC issued a "Notice of Right to Sue" to Plaintiff Glaser advising him of him right to file an action against defendants within 90 days of him receipt of the notice. (Annexed hereto as Exhibit A).

20.     This lawsuit has been timely filed within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

21.     Any and all other prerequisites to the filing of this suit have been met.

## FACTS

A.     **Plaintiff Glaser's Promising History with UCB as a Student, Performer, and Educator.**

22.     Growing up, Plaintiff Glaser would take the Long Island Railroad from his home to New York City on weekend evenings to see performances at UCB's New York Theater.  He loved watching the improvisers and, in the fall of 2005 while attending Nassau Community College as a full-time student and working part-time, Plaintiff Glaser would travel one hour each way into Manhattan to watch UCB theater's late-night performances.  By the summer of 2006, Plaintiff Glaser enrolled in his first course at UCB, Improvisation 101, the novice course for performing.

23.     Shortly thereafter and in the fall of 2006, Plaintiff Glaser transferred to Northeastern University and moved to Boston to attend college. Even while attending Northeastern University, he would come back on certain weekends to view performances since he missed being a part of the theater and the school.  Despite having stellar grades and the respect of his professors, near the end of Plaintiff Glaser's 2006 fall semester, he took a permanent leave from his studies at Northeastern University with the hopes of becoming an entertainer like the many who have graduated from UCB before him.  Approximately one month later, Plaintiff Glaser took his second course at UCB, Improvisation 201, and quickly began to show promise as a student and performer.

24.     With the encouragement of teachers and performers who noticed his talent and wanted him to take more courses to develop as a performer, Plaintiff Glaser continued to take at least an additional dozen classes at UCB between 2006 and 2010.  In so doing, Plaintiff Glaser completed both the improvisation and sketch comedy performance curriculums.

25.     During this extensive coursework, Plaintiff Glaser submitted sketch samples to UCB, including to a committee of senior teachers and experienced performers at UCB knowns as the "Harold Committee."  In June of 2007, the Harold Committee reviewed his work, and based upon recommendations internal and external to the Harold Committee regarding Plaintiff Glaser's talents and fit, elected to hire Plaintiff Glaser and place him on a house sponsored sketch-performance team (such team, a "Maude").  Plaintiff Glaser's Maude would provide performances at UCB's New York Theater on what was known as "Maude Night."

26.     Just two months later in August of 2007, UCB placed Plaintiff Glaser onto an additional and highly coveted house sponsored group, an improvised comedy team known as a "Harold," and then onto an additional Maude. Plaintiff Glaser's Harold would provide performances at UCB's New York Theater on what was known as "Harold Night."

27.     At the end of the house sponsored groups' performances on Maude Nights and Harold Nights, the performers, including Plaintiff Glaser, were instructed by UCB to announce that "we have shows seven nights a week and we also have a training center where you can learn sketch comedy, long form 'improv' comedy, and everything you see here." In so doing, the performers, many of whom were former and current students, were constantly and necessarily promoting the school.

28.     For various reasons unrelated to Plaintiff Glaser, two of the house sponsored teams dissolved; however, Plaintiff Glaser remained on one Maude team through 2010.

29.     Simultaneously with performing on the house sponsored teams, from November of 2007 until August of 2008, Plaintiff Glaser was hired as an intern at UCB.  As an intern, he

would set up the theater prior to performances, accept deliveries, deposit cash with the bank, and clean the theater after performances.

30.      As an intern, Plaintiff Glaser was compensated for his time in the theater by being provided free coursework. Upon information and belief, UCB's internship program was for students who they saw promise in or who proved to be very involved with the theater. Plaintiff Glaser was awarded at least two courses as a direct result of his internship.

31.      From 2010 until 2013, Plaintiff Glaser began to retool his career to focus more on standup, still assisting UCB teachers and performers by participating in performances when needed.  With UCB's guidance, Plaintiff Glaser spent this period of time re-establishing himself as a standup performer. In 2013, Plaintiff Glaser began producing and hosting a monthly stand-up series at a UCB theater, entitled "Midnight Stand-Up," which ran until the August 2016 *UCB Meeting* (defined below).

32.      Midnight Stand-Up was a hit, selling out almost every performance.  Plaintiff Glaser booked new comics and famous celebrities. During Midnight Stand-Up, while the audience was getting seated, a projector was run, projecting messages onto the stage's wall encouraging audience members to take classes and become performers like what they see at UCB theaters.

33.      In September of 2014, a private client contacted a branch of UCB, UCB TourCo, and requested a stand-up comic to headline and host a night of stand-up comedy.  UCB TourCo contacted Plaintiff Glaser to run the event.

34.      In addition, Plaintiff Glaser was asked, in his capacity as a UCB performer and former student, to assist current students in UCB sketch classes by performing those students'

works in front of the students, as part of the student curriculum.  Plaintiff Glaser did this several times during the latter part of his tenure with UCB.

35.     At all times relevant to this action, Plaintiff Glaser was employed by UCB, and exclusively utilized UCB equipment, including but not limited to, the theater itself, the UCB Training Center, film equipment, rehearsal space, meeting rooms, microphone, lighting, lighting and sound technicians, advertising and machinery. UCB also maintained records of the dates that Plaintiff Glaser worked on the show and directly supervised Plaintiff Glaser while he was on the premises of UCB.

36.     Performers at UCB, including Plaintiff Glaser, were compensated by free drinks and were allowed free admission to shows, as well as comped admission tickets for friends. Performers are also showcased to casting directors and pushed towards even more professional opportunities.

37.     Performers were told by UCB that this type of compensation would be far more beneficial and UCB claimed that they could not afford to pay all of their performers.

38.     UCB's curriculum is intimately bound with its performances. Performers promote classes at performances, teach classes, and assist with classes.  Students come in with the aim of becoming performers.  The performance space is as much a theater as it is a showcase for the potential of the curriculum, and the curriculum is touted as a way to increase entertainers' prospective value for employment within the entertainment industry.

39.     When Plaintiff Glaser was first involved with UCB in 2006 as a student, O'Neill, the current artistic director who was then also the UCB course registrar, mocked Plaintiff Glaser for having his parents pay for his classes, which humiliated Plaintiff Glaser.

40.     In the ten (10) years at UCB, Plaintiff Glaser never had any issues with anyone. Quite contrary, he was a beloved figure of UCB, readily offering a hand to students and experienced performers alike, and producing innovative new shows that filled seats.

**B.      The UCB Meeting and Its Devastating Effects on Plaintiff Glaser's Life.**

41.     On or around August 9, 2016, Plaintiff Glaser received an email requesting he come to UCB's main offices in Midtown Manhattan to discuss complaints received regarding Plaintiff Glaser's conduct.   On or around August 11, 2016, Plaintiff Glaser attended a meeting (the "UCB Meeting") to discuss this conduct at UCB's office in Midtown Manhattan.  The UCB Meeting was comprised of Plaintiff Glaser, O'Neill, and Sidtis, the managing director of UCB.

42.     At the UCB Meeting, the Individual Defendants both informed Plaintiff Glaser that "in the past people feel as though you raped them."

43.     Plaintiff Glaser was given no information other than being told it happened in 2010 or prior, at least six years before this meeting.  The Individual Defendants seemed unsure of the facts and told Plaintiff Glaser that there was an investigation, even though Plaintiff Glaser was never contacted about any investigation.  Plaintiff Glaser was never questioned, was never given the facts, was never able to review an investigation, and was not allowed to explain himself, or hear how the Defendants came to their conclusions.

44.     Plaintiff Glaser was then summarily terminated and banned by UCB and was told that he could not enter the premises of UCB, and thereby could neither perform nor take classes. Sidtis then told Plaintiff Glaser that he could appeal the UCB banning.  He was additionally assured that the UCB Meeting, the banning, and the complaints against him would remain

confidential, and that he could take his show, Midnight Stand-Up, to any other theater that he wished.

45.     O'Neill mentioned at that point that she would have no involvement with anything past the meeting and to contact Sidtis. UCB made no effort to investigate these claims with the assistance of Plaintiff Glaser.

46.     During the initial meeting, Plaintiff Glaser was told by Sidtis that "if you contact us with a lawyer, your response will be from a lawyer."

47.     UCB never conducted a formal hearing against Plaintiff Glaser with respect to the allegations of sexual assault.

48.     On August 13, 2016, just two days after the UCB Meeting, someone posted on Twitter that Plaintiff Glaser had been banned by UCB for raping multiple women.  The only way this information could have gotten out was if UCB or its employees disseminated these confidential conclusions and the banning, in other words leaking the information, which was immediately or subsequently leaked to the press.  Upon information and belief, and given that they were in such a ready position to do so, one or both of the Individual Defendants leaked that information.

49.     Upon information and belief, pursuant to the leaked information, Gina Ippolito, a UCB performer and employee at their Los Angeles location, generated a fake press release pretending to be a spokesperson for UCB and asserting that Plaintiff Glaser was banned for raping multiple women.  To be clear, UCB is seen as an authority on comedy: people see their judgment as fact.

50.     A message was posted in several Facebook groups for female comedians, which included an email of a UCB counselor that women could contact and appeared to be a fake press release from UCB.

51.     Upon information and belief, UCB sent cease and desist letters but at that point Plaintiff Glaser's reputation was already ruined.

52.     As a result of the foregoing, "Aaron Glaser is a rapist" went viral across the internet.

53.     A UCB press spokesperson Raina Falcon responded with a written statement:

> "The UCB is not formally commenting on this matter, but I will say that UCB has always had an open-door policy and encourages anyone with a complaint or concern regarding sexual harassment to report it immediately to any of our Directors of Student Affairs, who are trained professionals. Any such complaints are always taken very seriously."[1]

54.     Plaintiff Glaser was dropped from every show that he had booked. No venue would work with Plaintiff Glaser. No comedian or actor would be willing to work with Plaintiff Glaser.  Plaintiff Glaser was kicked out of his home by his roommates, people who are involved with UCB.

55.     After the UCB Meeting and the viral twitter campaign, which was a result of UCB leaking the information of the UCB Meeting, within a matter of weeks, Plaintiff Glaser's life fell apart.

56.     Plaintiff Glaser was banned from almost every comedy venue in New York that he had worked with in the matter of 48 hours.  For his remaining shows at venues not typically

---

[1]  https://www.thecut.com/2016/08/why-are-comedians-defending-an-accused-rapist.html

affiliated with the comedy community, such as the show titled "Slow Dance" at the bar Niagara in the East Village, which Plaintiff Glaser produced, performers refused to participate, and Plaintiff Glaser was forced to resign as the host.

57.     In addition, Plaintiff Glaser had been hired to perform in an online advertisement for TD Ameritrade.  The commercial aired online, and then due to the outraged social response, an onslaught of emails and comments poured in, demanding to know why TD Ameritrade hired rapists—all of which was a direct response to the misinformation leaked by UCB from the UCB Meeting, which in itself lacked anything close to fair process—the commercial was pulled off the internet.  Plaintiff Glaser has not been hired for a commercial since.

58.     In addition, and as a direct result of the leaked information from the UCB Meeting, Plaintiff Glaser's roommates at the time, who were UCB students, demanded that Plaintiff Glaser leave the residence and find other accommodations.  Plaintiff Glaser was forced to sleep on the couches of whatever friends would have him, and eventually, he was forced to move back home with his parents.

59.     Worse still, Plaintiff Glaser received numerous death threat messages on Facebook and Twitter, as well as threatening voicemails to his personal phone.

60.     By late August of 2016, not even three weeks after the UCB Meeting, Plaintiff Glaser had lost everything he had spent ten years building.  Plaintiff Glaser had grown despondent from the ongoing trauma of losing his friends, his career, and his girlfriend.  Plaintiff Glaser would wait for the train to take him to work and consider jumping in front of the tracks or overdosing on prescription drugs, would text friends suicide notes, and was emotionally volatile to the point of taking his own life because of the fallout from UCB leaking the contents of the

UCB Meeting, a meeting that was premised on an utter lack of process and was leaked by inadequately trained employees. As a result, Plaintiff Glaser was prescribed an emergency prescription for antidepressants to get him through such dark times.

61.     On or about August 14, 2016, Plaintiff Glaser had a phone call with Sidtis and he told Plaintiff Glaser that he would be given the findings of the investigation and the appeal process would be outlined on Monday.

62.     Sidtis had stopped returning Plaintiff Glaser's multiple phone calls and emails imploring Sidtis and UCB for an appeal.  As his career spiraled out of control, Plaintiff Glaser grew desperate for a chance to sort the matter out; however, the appeal he was originally promised was never granted.

63.     Upon information and belief, the Individual Defendants have no training in investigative techniques in general, in investigating allegations of sexual assault, or in what conduct constitutes sexual harassment or sexual assault.

64.     At all material times, the Individual Defendants were each acting within the course and scope of their employment with UCB.

65.     Upon information and belief, the Defendants have not furnished Plaintiff Glaser with any work product from the investigation, and, as a result, the details of the Individual Defendant's investigation are not known to plaintiff at this time.

66.     One detail, however, cannot be disputed: Plaintiff Glaser was never included and did not participate in the investigation.

67.     Upon information and belief, the Individual Defendants did not have any training in adjudication; in the law; in the weighing of evidence; in what type of conduct constitutes sexual harassment or sexual assault; or in the relevance or irrelevance of particular types of evidence in the alleged sexual assault setting.

68.     Plaintiff Glaser has been publicly labeled a rapist because UCB claims to have conducted an investigation in which Plaintiff Glaser was never questioned. No hearing was ever conducted. Plaintiff Glaser walked into a room and within 24-hours his fate was sealed.  Within weeks, his life was destroyed.

69.     Plaintiff Glaser was never given the opportunity to face his accusers.

70.     Plaintiff Glaser firmly believes that there was a gender bias at UCB, especially because of the movement that followed within the comedy community was labeled "believe all women."  Plaintiff Glaser also believes that O'Neill, for whatever reason, labeled Plaintiff Glaser a "privileged white man" and decided that he must be guilty because he looks like other people who have been guilty of crimes in the past.

71.     Upon information and belief, a police report was never filed against Plaintiff Glaser for any of these alleged sexual assaults.

72.     Plaintiff consistently excelled in his work at UCB.

73.     To be clear, the determination of the Defendants are false, have no basis in reality and are not based upon any conviction or other activity of the Plaintiff.  They are simply false.

74.     Plaintiff Glaser has been labeled domestically and internationally as a "rapist" and abuser and will have to live the rest of his life with this stigma.

75.     Plaintiff Glaser has not been given any information, recourse, or evidence pointing to the validity of the false, despicable and salacious claims made against him.  Plaintiff Glaser poured his heart and soul into an institution and was an upstanding member of that community.  In return, they banned him and destroyed his career.

**Federal Statutory and Regulatory. Requirements Concerning Allegations of Sexual Assault**

76.     The issue of sexual assaults within educational institutions is addressed by two separate acts of Congress: (a) Title IX of the Education Amendments of 1972, 20 U.S.C. 1681-1688 ("Title IX"); and (b) The Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, 20 U.S. 1092(f) ("Clery Act").

**Title IX**

77.     Title IX applies to all public and private educational institutions that receive federal funds, including colleges and universities.  The statute prohibits discrimination on the basis of sex in a school's "education program or activity," which includes all of the school's operations. 20 U.S.C. §§ 1681(a), 1687.   A school specifically agrees, as a condition for receiving federal funds, to operate all of its programs and activities in compliance with Title IX and the Department of Education's Title IX regulations.   This agreement is known as an "assurance of compliance."  34 C.F.R. § 106.4(a)-(c).

78.     UCB is a recipient of federal funds, is bound by Title IX and its regulations, and, upon information and belief, has executed an assurance of compliance.

79.     Gender discrimination is a form of sex discrimination prohibited by Title IX. Sexual harassment is defined for Title IX purposes as unwelcome conduct of a sexual nature that

includes sexual intercourse, sexual assault, and rape. Student-on-student sexual harassment is prohibited by Title IX, as are other forms of sexual harassment.

80.     Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance *procedures providing for the prompt and equitable resolution of student . . . complaints* alleging any action which would be prohibited by" Title IX or regulations thereunder. 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice) (emphasis added).  Such prohibited actions include all forms of sexual harassment, including sexual intercourse, sexual assault, and rape. *Id.* at 19-20, 21.

81.     The procedures adopted by a school covered by Title IX must not only "ensure the Title IX rights of the complainant," but must also "*accord[] due process to both parties involved[.]*" *Id.* at 22.

82.     The "prompt and equitable" procedures that a school must implement to "accord due process to both parties involved" must include, at a minimum:

- "Notice . . . of the procedure, including where complaints may be filed." *See generally* U.S. Dep't of Education, Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties Title IX* (2001) at 2-3 & n.2, 3, 6, 8, 20 (notice of publication at 66 Fed. Reg. 5512 (January 19,2001)). *Id.* at 19-20,21 & nn.98-101. *Id.* at 22 (emphasis added).

- "Application of the procedure to complaints alleging [sexual] harassment"; "Adequate, reliable, and impartial investigation of complaints, including the opportunity to present witnesses and other evidence";

- "Designated and reasonably prompt timeframes for the major stages of the complaint process"; and

- "Notice to the parties of the outcome of the complaint[.]" *Id.* at 20.

83.     A school or educational institution also has an obligation under Title IX to make sure that all employees involved in the conduct of procedures adjudicating or otherwise resolving issues related to sexual harassment and sexual assault have "adequate training as to what conduct constitutes sexual harassment," which includes "alleged sexual assaults." *Id.* at 21.

**The Clery Act**

84.     The Clery Act mandates that schools receiving federal funding create and publish procedures for complaints involving charges of sexual assault. A school is required to have a written statement of policy detailing such procedures. 20 U.S.C. 1092(f)(8)(A)(ii). That policy must have, at a minimum,

- [p]rocedures for on-campus disciplinary action in cases of alleged sexual assault, which include a clear statement that

  - (I) the accuser and the accused are entitled to the same opportunities to have others present during a campus disciplinary proceeding; and

> ○ (II) both the accuser and the accused shall be informed of the outcome of any campus disciplinary proceeding brought alleging a sexual assault. *Id.* at 20. *Id.* at 21.20 U.S.C. § 1092(f)(8)(A)(ii).*Id.* (8)(B)(iv). *See also* 34 C.F.R. § 668.46(b)(vi) (similar).

**UCB's Procedures Concerning Allegations of Sexual Assault**

85.     Upon information and belief, UCB does not have any procedures in place concerning allegations of sexual assault.

86.     UCB's website is devoid of any procedures concerning allegations of sexual assault.

87.     Moreover, even if UCB does in fact have procedures in place concerning allegations of sexual assault, the procedures violate Title XI and the Clery Act.

88.     In the course of performing the duties of his position, Plaintiff Glaser was forced to endure a hostile work environment, which was severe and pervasive and altered his working conditions.

89.     In the course of performing the duties of his position, UCB discriminated against Plaintiff Glaser in violation of Title VII by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, a negligent investigation and ultimate termination and discipline of Plaintiff Glaser because of his gender. The acts of gender bias discrimination forming the basis of this complaint began in June 2016, and continued throughout August 2016, during the time of UCB's investigation of Plaintiff Glaser through the day of his termination.

90. Plaintiff Glaser believes he was wrongfully terminated given that he had an outstanding performance record in his role as an intern and performer at UCB. As such, Plaintiff Glaser believes that UCB engaged in discriminatory conduct by the gender-biased manner in which they conducted the investigation of him and ultimately terminating his employment based on his gender.

## FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF
## DECLARATORY JUDGMENT - TITLE IX AND CLERY ACT
### (Brought against Defendant UCB)

91. Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

92. As set forth above, Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, and the regulations promulgated thereunder require a school receiving federal funds to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student ... complaints" alleging any form of sexual harassment, including sexual assault.

93. Upon information and belief, UCB receives federal funding.

94. These procedures must "accord[] due process to both parties involved[.]"

95. The "prompt and equitable" procedures that a school must implement to "accord due process to both parties involved" must include: (a) "[n]otice ... of the procedure"; (b) "[a]dequate, reliable, and impartial investigation of complaints"; (c) "the opportunity to present witnesses and other evidence"; and (d) "[d]esignated and reasonably prompt timeframes for the major stages of the complaint process." A school must also ensure that all employees involved in the conduct of the procedure have "adequate training as to what conduct constitutes sexual harassment," which includes "alleged sexual assaults."

96.     As set forth above, the Clery Act states that both "the accuser and the accused are entitled to the same opportunities to have others present during a campus disciplinary proceedings."

97.     As implemented, UCB's disciplinary process in this case, or lack thereof, violated Title IX and the regulations thereunder, which have the force of law, including the requirements that the procedures comport with due process and be "prompt and equitable." Those violations, which are described above, include, but are not limited to, the following: (a) the appointment of an untrained individuals to be the investigators; (b) the failure to provide an unbiased disciplinary tribunal by allowing O'Neill and Sidtis as the prosecutor, fact finder, and sentencing judge; (c) the failure to provide appropriate training for the members who investigated Plaintiff Glaser; and (d) the failure to provide timely and meaningful notice to Plaintiff Glaser; (e) failure to conduct a hearing and denying Plaintiff Glaser the opportunity to present witnesses and other evidence; (f) failure to provide written statements of all witnesses; (g) failure to disclose exculpatory evidence; (h) failure to afford opportunity for confrontation and cross-examination; (i) failure to conduct a formal hearing, let alone in a timely fashion; and (j) the failure to provide a meaningful right of appeal.

98.     As applied to Plaintiff Glaser, UCB's disciplinary process violated Title IX and the regulations thereunder, which have the force of law, including the requirements that the procedures comport with due process and be "prompt and equitable."  Those violations which are described above, include, but are not limited to, the following: (a) the failure to notice and conduct a hearing, which denied Plaintiff Glaser a reasonable time to seek appropriate advice and assistance and to properly prepare his defense; (b) the failure to provide written notice to Plaintiff Glaser, both as to the description of the allegations and the identity and expected

testimony of witnesses; (c) the failure of the investigator to "meet with each of the students involved in the alleged incident as well as any possible witnesses"; (d) proceeding with the charge against Plaintiff Glaser but failing to convene a hearing when there was not sufficient evidence to convince an unbiased tribunal of Plaintiff Glaser's guilt; (e) failing to provide Plaintiff Glaser with copies of all witness statements; (g) breaching the ongoing duty to disclose exculpatory evidence to Plaintiff Glaser; (h) the finding that Plaintiff Glaser committed rape and drugged women even though there was not sufficient evidence to support such a finding; (i) failing to provide a meaningful appeal; (j) otherwise acting to achieve a predetermined result, i.e., a finding that Plaintiff Glaser committed rape.

99.     Based on the foregoing, UCB conducted its investigation in a manner that was biased against the male being accused. From the outset, the actions (and inactions) of Defendants O'Neill and Sidtis were highly improper in that they demonstrated an inherent bias and predetermination of Plaintiff Glaser's guilt, based on his status as the male accused.

100.    Defendant UCB has created an environment where an accused male employee is fundamentally denied due process by being prosecuted under a presumption of guilt. This one-sided process deprived Plaintiff Glaser an employment opportunity based on his gender.

101.    As applied to Plaintiff Glaser, UCB's disciplinary process violated the Clery Act in that the failure to conduct a hearing deprived Plaintiff Glaser of his opportunity to have witnesses present at a hearing.

102.    Pursuant to the provisions of 28 U.S.C. §§ 2201, 2202, and 1651, Plaintiff Glaser is entitled to (a) a declaratory judgment that UCB's disciplinary process in this case was contrary to Title IX (including its due process requirements); (b) a declaratory judgment that UCB's

disciplinary process, is, as applied to Plaintiff Glaser, contrary to Title IX (including its due process requirements) and the Clery Act; and (c) further necessary or proper relief.

## SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFF
### TITLE IX - DAMAGES
### (Brought against Defendant UCB)

103.    Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

104.    It is well established that Title IX includes an implied private right of action, without any requirement that administrative remedies, if any, be exhausted. An aggrieved plaintiff may seek money damages and other relief

105.    As set forth above, UCB's actions in the investigation and adjudication of the allegations against Plaintiff Glaser were wrongful, willful, intentional, reckless, in clear violation of Title IX's requirements, and constituted an effort to achieve a predetermined result: a finding that Plaintiff Glaser had committed a sexual assault. UCB was also deliberately indifferent to the effects of its actions on plaintiff.

106.    As a direct and proximate result of UCB's actions, Plaintiff Glaser sustained, and will continue to sustain, substantial injury, damage, and loss, including, but not limited to: mental anguish; severe emotional distress; injury to reputation; past and future economic loss; deprivations of due process; loss of employment opportunities; and loss of future career prospects.

**THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
**Violation of Title IX Deliberate Indifference**
**(Brought against Defendant UCB)**

107. Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

108. UCB employees and/or agents, acted with deliberate indifference towards Plaintiff Glaser because of his male gender.

109. UCB employees and/or agents, including, but not limited to, O'Neill, and Sidtis, had the authority to institute corrective measures to remedy: (a) UCB's violations of Plaintiff Glaser's rights under Title IX and/or (b) UCB's erroneous determination that Plaintiff Glaser violated UCB's policies which UCB adopted pursuant to federal laws and regulations related to Title IX.

110. UCB employees and/or agents exhibited deliberate indifference by refusing to remedy: (a) UCB's violations of Plaintiff Glaser's rights under Title IX; and/or (b) UCB's erroneous determination that Plaintiff Glaser violated UCB policies which UCB adopted pursuant to federal laws and regulations related to Title IX.

111. UCB's deliberate indifference caused Plaintiff Glaser economic and non-economic damages in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
**Negligence**
**(Brought against Defendants UCB, Sidtis and O'Neill)**

112. Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

113.    Having undertaken an investigation, UCB owed a duty of care to Plaintiff and others to conduct that process in a non-negligent manner and with due care.

114.    Defendants owed duties of care to Plaintiff Glaser. Such duties included, without limitation, a duty of reasonable care in the conduct of its investigation into the allegations of sexual misconduct against Plaintiff Glaser, and a duty of reasonable care in the development and implementation of fair and equitable policies. The applicable standard of care is informed by the law of New York and by the requirements of Title IX and the Clery Act.

115.    At all times material hereto, UCB, Sidtis and O'Neill had a duty to hire competent personnel, adequately train its personnel, and adequately supervise its personnel.

116.    Furthermore, at all times material hereto, UCB, Sidtis and O'Neill had a duty of care to ensure that its policies and procedures were fair, reasonable, and followed.

117.    UCB, Sidtis and O'Neill breached these duties of care owed to Plaintiff Glaser and was negligent in the following respects:

>    a.    Failing to train its employees, agents or representatives in the proper method to thoroughly investigate and adjudicate, without bias, complaints of sexual misconduct.
>
>    b.    Failing to supervise its employees, agents or representatives and making sure the procedures were followed.
>
>    c.    Failing to maintain proper policies and procedures designed to fairly, reasonably and properly adjudicated claims of sexual misconducts without bias or favor.

118.    UCB, Sidtis and O'Neill's conduct, as described above, fell below the applicable standard of care and amounted to a breach of the defendants' duty of care.

119.    Moreover, the failure to conduct a hearing deprived Plaintiff Glaser of the opportunity as to have witnesses present at the hearing. This deprivation, in violation of the Clery Act, was also a breach of the Defendants' duty of care.

120.    Moreover, Defendants breached their duty of care inasmuch as they were aware, or should have been aware, that UCB's policies fail to protect male employees equally and to the same extent as female employees.

121.    Defendants breached their duty of care inasmuch as they were aware, or should have been aware, that issuing a press release with respect to sexual assault prior to Plaintiff Glaser's appeal would unfairly prejudice the Title IX process.

122.    Defendants breached their duty of care inasmuch as they was aware, or should have been aware, that their agents in the Title IX process were failing to effectively oversee implementation of UCB's policies during Plaintiff Glaser's investigation.

123.    The Defendants' breaches of the duty of care caused Plaintiff, in fact and proximately, to sustain substantial injury, damage, and loss, including, but not limited to: mental anguish; severe emotional distress; injury to reputation; past and future economic loss; deprivations of due process; loss of employment opportunities; and loss of future career prospects.

**FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
**Negligence *Per Se***
**(Brought against Defendants UCB, Sidtis and O'Neill)**

124.    Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

125.    Both Title IX and the Clery Act create statutory duties that UCB was obligated to perform.

126.    Plaintiff Glaser is a person within the protection of Title IX and the Clery Act and is intended to be benefited thereby.

127.    The Defendants' violations of these statutes and its failure to perform its duties thereunder as described above have proximately caused injury to plaintiff, constitute negligence *per se,* and are actionable.

128.    The Defendants' breaches caused plaintiff, in fact and proximately, to sustain substantial injury, damage, and loss, including, but not limited to: mental anguish; severe emotional distress; injury to reputation; past and future economic loss; deprivations of due process; and loss of future career prospects.

**SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
**Gross Negligence**
**(Brought against Defendants UCB, Sidtis and O'Neill)**

129.    Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

130.    As set forth above, the Defendants have engaged in conduct that amounts to ordinary negligence and negligence *per se.*

131.    The Defendants' actions were taken with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law. The Defendants' actions evidence a conscious neglect of duty, a callous indifference to consequences, and such an entire want of care as would raise a presumption of a conscious indifference to consequences.

132.    The Defendants have acted willfully, intentionally, and recklessly. The Defendants were reckless in that they were aware of, but consciously disregarded, a substantial and unjustifiable risk of injury or damage to Plaintiff. The Defendants' disregard of this risk was a gross deviation from the standard of care.

133.    The Defendants' gross negligence has caused Plaintiff, in fact and proximately, to sustain substantial injury, damage, and loss, including, but not limited to: mental anguish; severe emotional distress; injury to reputation; past and future economic loss; deprivations of due process; loss of employment opportunities; and loss of future career prospects.

## SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF
### (Negligent Training and Supervision of Employees)
### (Brought against Defendant UCB)

134.    Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

135.    O'Neill and Sidtis, as investigators and in all other capacities mentioned above, were employees of UCB at all material times.

136.    As described above, these employees lacked the proper training in order to carry out their responsibilities under the student disciplinary system, Title IX, and the Clery Act.

137.    As alleged above and below, these employees committed negligent, grossly negligent, and intentional tortious acts that caused injuries to Plaintiff.

138.    UCB knew, or in the exercise of due care, should have known of these employees' lack of training and inability to carry out their responsibilities under the student disciplinary system, Title IX, and the Clery Act.

139.    UCB's negligent failure to train and supervise these employees directly and foreseeably caused injuries to plaintiff.  Had UCB taken appropriate steps to train and supervise these employees, such steps would, more probably than not, have prevented the injuries.

140.    UCB's breach of its duty to ensure proper training and adequate supervision for these employees proximately caused Plaintiff to sustain substantial injury, damage, and loss, including, but not limited to: mental anguish; severe emotional distress; injury to reputation; past and future economic loss; deprivations of due process; loss of employment opportunities; and loss of future career prospects.

## EIGHTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF
### (Negligent Infliction of Emotional Distress)
### (Brought against Defendants UCB, Sidtis and O'Neill)

141.    Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

142.    The Defendants' conduct described above was negligent and involved numerous breaches of the standard of care.

143.    It was reasonably foreseeable that these breaches of the standard of care would cause plaintiff mental anguish, severe emotional distress, and serious mental injury.

144.    These breaches of duty did actually and proximately cause plaintiff mental anguish, severe emotional distress, and serious mental injury, as well as other substantial injury, damage, and loss.

**NINTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
**(Gender Discrimination in Violation Of Title VII of**
**the Civil Rights Act Of 1964)**
**(Brought against Defendant UCB)**

145.    Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

146.    Plaintiff alleges that UCB, through its officers, agents, and employees, engaged in a pattern and practice of gender discrimination against him with respect to the terms, conditions and privileges of his employment in violation of Title VII.

147.    By virtue of his and accusers' respective genders, UCB predetermined the result of its investigation to avoid any negative publicity instead of providing the Plaintiff due process.

148.    As part of its pattern and practice of employment discrimination, UCB through its officers, agents, and employees subjected Plaintiff to gender discrimination and failed to take corrective action by conducting an investigation in order to achieve a predetermined result: a finding that Plaintiff Glaser had committed a sexual assault.

149.    UCB knew or should have known about the gender discrimination in the workplace.

150.    UCB failed and refused to take appropriate action to end the gender discrimination to which Plaintiff was subjected, instead making a determination to protect its

reputation, avoid bad press, and serve its own economic interests, which was a demonstration of bad faith.

151.    As a result of the discriminatory acts of UCB through its officers, agents, and employees, Plaintiff suffered, among other damages: mental anguish; severe emotional distress; injury to reputation; past and future economic loss; deprivations of due process; loss of employment opportunities; and loss of future career prospects.

152.    UCB's discrimination against Plaintiff Glaser was committed with reckless and callous disregard of his Title VII right to a workplace free from discrimination based on gender.

153.    As a result of Defendant UCB's unlawful conduct, Plaintiff Glaser is entitled to compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

**TENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
**(Hostile Work Environment in Violation of Title VII of**
**The Civil Rights Act Of 1964)**
**(Brought against Defendant UCB)**

154.    Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

155.    Plaintiff alleges that Defendant through its agents and employees created and condoned a hostile work environment against Plaintiff by humiliating and embarrassing him.

156.    Plaintiff was discriminated based on his gender by UCB during its flawed investigation for the alleged incidents.

157.    In violation of Title VII, UCB discriminated against Plaintiff Glaser on the basis of gender by subjecting him to a hostile work environment that was severe *and* pervasive enough to affect the terms and conditions of him employment.

158.    That as a result of the discriminatory acts of UCB through its agents and employees, Plaintiff suffered emotional distress.

## ELEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF
## VIOLATION OF SECTION 704 (a) of TITLE VII, 42 U.S.C. 2000e-3(a)
## (Brought against Defendant UCB)

159.    Plaintiff repeats and incorporates by reference the allegations stated above as if they were set forth in full herein.

160.    UCB engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. 2000e-3(a), when it terminated Plaintiff Glaser's employment in retaliation because of his gender.

161.    The practices complained of above have deprived Plaintiff of equal employment opportunities, and otherwise adversely affected his status as an employee, because of his gender.

162.    The unlawful employment practices complained of above were intentional.

163.    The unlawful employment practices complained of above were, and are, done with malice or with reckless indifference to the federally protected rights of Plaintiff.

## TWELFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF
## (Violation of the NYSHRL. EXEC. L. 296, *et seq.*)
## (Brought against Defendants UCB, Sidtis and O'Neill)

164.    Plaintiff repeats and incorporate by reference the allegations stated above as if they were set forth in full herein.

165.    In violation of NYSHRL, defendants discriminated against Plaintiff on the basis of gender by subjecting him to a hostile work environment that was severe or pervasive enough to affect the terms and conditions of him employment.

166.    Defendants at all times relevant herein had actual and constructive knowledge of the conduct described above.

167.    As a result of the discrimination perpetrated and maintained by Defendants and to Plaintiff and their failure to protect the Plaintiff from discrimination, Plaintiff suffered emotional distress.

168.    Defendants violated the NYSHRL by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct and acts of their employees.

169.    Defendants failed to comply with their duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future.

**THIRTEENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF**
**(Discrimination and Harassment in Violation of New York State Human Rights**
**Law**
**(Brought against Defendants UCB, Sidtis and O'Neill)**

170.    Plaintiff repeats and incorporates by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

171.    Defendants have discriminated against Plaintiff in violation of the New York State Human Rights Law by denying him equal terms and conditions of employment, including but not limited to, discriminating against Plaintiff because of his gender.

172.     Defendants have discriminated against Plaintiff in violation of the New York State Human Rights Law by creating, fostering, condoning, accepting, ratifying and/or otherwise failing to prevent or to remedy a hostile work environment that included, among other things, severe and pervasive harassment of Plaintiff because of his gender.

173.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer monetary and/or economic damages, but not limited to, loss of past and future income, compensation and benefits.

174.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of the New York State Human Rights Law, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering.

### FOURTEENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF
### (Violation of New York City Admin. Code § 8-107)
### (Brought against Defendants UCB, Sidtis and O'Neill)

175.     Plaintiff repeats and incorporates by reference each and every allegation contained in the above stated paragraphs, and incorporates the same herein as though fully set forth.

176.     Plaintiff alleges that the foregoing actions by Defendants violate the New York City Administrative Code § 8-107, in that Defendants discriminated against Plaintiff on the basis of gender by subjecting him to a sham investigation because of his gender.

177.    The Defendants' discrimination against Plaintiff was committed with reckless and callous disregard of his right to a workplace free from discrimination based on gender.

178.    As a result of the Defendants' unlawful conduct, Plaintiff is entitled to compensatory damages, punitive damages, pre-post judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays and respectfully requests that the Court enter judgment in him favor and against Defendant, containing the following:

a.  A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State of New York.

b.  Order Defendant UCB to institute and carry out policies, practices, and programs which eradicate the effects of its past and present unlawful employment practices;

c.  Order Defendants to make whole Plaintiff AARON GLASER, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, lost bonuses, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

d.  Order Defendants to make whole Plaintiff AARON GLASER, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

e.  Order Defendants to make whole Plaintiff AARON GLASER, by providing compensation for non-pecuniary losses, including emotional pain, suffering, mental anguish, embarrassment, and isolation, resulting from the unlawful employment practices described above, in amounts to be determined at trial;

f.  Order Defendants to pay Plaintiff AARON GLASER, punitive damages for its malicious and reckless conduct described above;

g.  Attorney fees and costs; and

h.  Grant such further relief as the Court deems necessary and proper in the public interest.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: February 4, 2018
      New York, New York

                    Respectfully submitted,

                    MARK DAVID SHIRIAN P.C.

By: _____
                    Mark D. Shirian, Esq.
                228 East 45th Street, Suite 1700B
                New York, NY 10017
                Telephone: (516) 417-0201
                Email: mshirian@shirianpc.com
                Bar No.: (MS1202)

                COUNSEL FOR PLAINTIFF