UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AARON GLASER,

                         Plaintiff,

      -against-

UPRIGHTS CITIZENS BRIGADE, LLC, ALEX
SIDTIS, and SHANNON PATRICIA O'NEILL,

                     Defendants.

Case No.: 18-cv-971 (JPO)

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

**FOX ROTHSCHILD LLP**
Carolyn D. Richmond, Esq.
James M. Lemonedes, Esq.
Zev Singer, Esq.
Bryn Goodman, Esq.
101 Park Avenue, Suite 1700
New York, New York 10178
(212) 878-7900
*Attorneys for Defendants Upright Citizens Brigade,*
*LLC, Alex Sidtis, and Shannon Patricia O'Neill*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS .............................................................................. 2

LEGAL ARGUMENT ................................................................................... 6

    I.      PLAINTIFF'S EMPLOYMENT CLAIMS FAIL AS A MATTER OF LAW ....... 6

          A.     Plaintiff Fails to Allege Facts Sufficient to Establish He Was An
Employee Protected by Title VII or NYSHRL (Claims 9, 10, 11, 12,
and 13) .......................................................................................... 7

               i)       Plaintiff Received No Remuneration from UCB ............................ 7

               ii)      Even if this Court finds Plaintiff Received Remuneration, He
is not an Employee Because His Allegations Fail the "Reid"
Test ......................................................................................... 9

          B.     Plaintiff Fails to Allege Sufficient Facts to Support a Claim of
Gender Discrimination Under Title VII or NYSHRL ............................. 11

               i)       Plaintiff Fails to Allege Facts That Give Rise to  an Inference
of Discrimination (Claims 9 and 13) ............................................ 12

               ii)      Plaintiff Fails to State a Hostile Work Environment Claim
(Claims 10 and 13) ..................................................................... 14

               iii)     Plaintiff's Claim for Retaliation Fails as He does not Allege
that He Engaged in Protected Activity (Claim 11) ....................... 15

          C.     Plaintiff's NYCHRL and Individual Liability Claims Fail (Claims 12
and 14) .......................................................................................... 16

    II.     PLAINTIFF'S EDUCATION CLAIMS SHOULD BE DISMISSED ................. 17

          A.     Plaintiff's Claim for Declaratory Judgment Fails Because Where
There is No Basis For the Underlying Title IX and Clery Act Claims,
Declaratory Judgment Is Inappropriate (Claim 1) .................................... 17

          B.     Plaintiff's Title IX Claims Must Fail Because Plaintiff Was Neither A
Student Nor An Employee, He Was A Volunteer Performer (Claims 2
and 3) ............................................................................................ 18

          C.     Plaintiff Fails to State A Claim For Gender Discrimination Under
Title IX (Claims 2 and 3) .................................................................... 19

i

III.  PLAINTIFF'S TORT-BASED CLAIMS FAIL ..................................................... 22

    A.  Plaintiff's Purported Claim for Negligent Investigation Fails (Claims 4 and 6) ................................................................................................. 22

    B.  Plaintiff's Negligence Per Se Claim Fails (Claim 5) ................................ 23

    C.  Plaintiff's Claim for Negligent Training and Supervision of Employees Fails (Claim 7) ........................................................................ 23

    D.  Plaintiff's Claim for Negligent Infliction of Emotional Distress Fails (Claim 8) .......................................................................................... 24

IV.  PLAINTIFF'S TITLE IX CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE UCB IS NOT A RECIPIENT OF FEDERAL FINANCIAL ASSISTANCE ................................. 25

    A.  UCB Is Not A Direct Nor An Indirect Recipient of Federal Assistance .. 26

    B.  Title IX Does Not Extend to a Beneficiary of Federal Financial Assistance ................................................................................................ 27

V.  THIS COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER REMAINING STATE AND CITY LAW CLAIMS ............................... 28

CONCLUSION ............................................................................................................... 29

ACTIVE\57060836.v1-5/23/18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aiken v. Interglobal Mergers and Acquisitions,*
  No. 05-CV-5503, 2006 WL 1878323 (S.D.N.Y. July 5, 2006) ..............................23

*Albert-Velez v. Corporacion de Puerto Rico Para La Difusion Publica,*
  361 F.3d 1 (1st Cir. 2004) ......................................................................................10

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ...........................................................................................6, 12

*Beck v. Cornell Univ.,*
  No. 5:16-CV-1104, 2016 WL 6208535 (N.D.N.Y. Oct. 24, 2016) ........................17

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ...........................................................................................6, 12

*Buckley v. Archdiocese of Rockville Centre,*
  992 F. Supp. 586 (E.D.N.Y. 1998) .......................................................................26

*Cannon v. University of Chicago,*
  441 U.S. 677 (1979) ..............................................................................................26

*Chick v. Cty. of Suffolk,*
  546 Fed. Appx. 58 (2d Cir. 2013) ..........................................................................14

*Coleman v. Corp. Loss Prevention Assocs.,*
  282 A.D.2d 703, 724 N.Y.S.2d 321 (2d Dep't 2001) ............................................22

*Community for Creative Non-Violence v. Reid,*
  490 U.S. 730 (1989) .......................................................................................7, 9, 11

*Conde v. Sisley Cosmetics USA, Inc.,*
  No. 11-CV-4010, 2012 WL 1883508 (S.D.N.Y. May 23, 2012) ....................6, 8, 11

*Connell v. Consol. Edison Co. of N.Y., Inc.,*
  109 F. Supp. 2d 202 (S.D.N.Y. 2000) ...................................................................14

*Cosgriff v. Valdese Weavers LLC,*
  No. 09-CV-5234, 2012 WL 1071497 (S.D.N.Y. Mar. 30, 2012) ...........................10

*Davis v. New York Sports Officials' Council,*
  No. 09-CV-0514, 2010 WL 3909688 (N.D.N.Y. Sept. 30, 2010) ............................9

ACTIVE\57060836.v1-5/23/18

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010).................................................................2

*Doe v. Columbia*,
  831 F.3d 46 (2d Cir. 2016).............................................................18, 20

*Doe v. Meisels, et al.*,
  No. 14-CV-5725, 2016 WL 2977269 (E.D.N.Y. 2016) ...................................26-28

*Electronics for Imaging, Inc. v. Coyle*,
  340 F.3d 1344 (Fed. Cir. 2003)..........................................................25

*Elizabeth Cucinotta Sorvillo Felicia Mooradian v. St. Francis Preparatory Sch.*,
  No. 13-CV-3357, 2014 WL 11462720 (E.D.N.Y. Aug. 14, 2014) ........................27

*Erasmus v. Deutsche Bank Americas Holding Corp.*,
  No. 15-CV-1398, 2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015)..........................17

*Fosen v. The New York Times*,
  No. 03-CV-3785, 2006 WL 2927611 (S.D.N.Y. Oct. 11, 2006)..........................14

*Garnett–Bishop v. New York Comm. Bancorp, Inc.*,
  No. 12–CV–2285, 2014 WL 5822628 (E.D.N.Y. Nov. 6, 2014) ..........................17

*Gebser v. Lago Vista Indep. Sch. Dist.*,
  524 U.S. 274 (1998).....................................................................23

*Gomez v. Stonybrook Univ.*,
  No. 14-CV-7219, 2016 WL 1039539 (E.D.N.Y. Jan. 28, 2016 ..........................12

*Gulino v. N. Y. State Educ. Dept.*,
  460 F.3d 361 (2d Cir. 2006)...............................................................7

*Haavistola v. Cmty Fire Co.*,
  6 F.3d 211 (4th Cir. 1993) ...............................................................8

*Henschke v. New York Hospital-Cornell Medical Center*,
  821 F. Supp. 166 (S.D.N.Y. 1993) .......................................................18

*Hughes v. Twenty-First Century Fox, Inc.*,
  No. 17-CV-7093, 2018 WL 1940175 (S.D.N.Y. Apr. 24, 2018) ......................6, 17

*In re Joint Eastern & Southern Dist. Asbestos Litig.*,
  14 F.3d 726 ...............................................................................18

*Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*,
  No. 16-CV-7720, 2017 WL 4074547 (D.N.J. Sept. 13, 2017) ..........................23

iv

*K.T. v. Culver-Stockton Coll.,*
   865 F.3d 1054 (8th Cir. 2017) ..............................................................................19

*K. T. v. Culver-Stockton Coll.,*
   No. 16-CV-165, 2016 WL 4243965 (E.D. Mo. Aug. 11, 2016 ...............................19

*LaSalle v. City of N.Y.,*
   No. 13–CV–5109, 2015 WL 1442376 (S.D.N.Y. Mar. 30, 2015)....................13, 16

*Lerohl v. Friends of Minnesota Sinfonia,*
   322 F.3d 486 (8th Cir. 2003) ..............................................................................10

*Littlejohn v. City of New York,*
   795 F.3d 297 (2d Cir. 2015)................................................................................15

*Makarova v. U.S.,*
   201 F.3d 110 (2d Cir. 2000)................................................................................25

*McDonnell Douglas v. Green,*
   411 U.S. 792 (1973)........................................................................................ 11-12

*Melendez v. Int'l Serv. Sys., Inc.,*
   No. 97-CV-8051, 1999 WL 187071 (S.D.N.Y. Apr. 6, 1999) ..................................7

*In re Metropolitan Opera Ass'n, Inc. and Operatic Artists of Am.,*
   No. 2-RC-21699, 1999 WL 112550 (NLRB Feb. 26, 1999) ..................................11

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,*
   715 F.3d 102 (2d Cir. 2013)................................................................................16

*Miotto v. Yonkers Pub. Sch.,*
   534 F. Supp. 2d 422 (S.D.N.Y. 2008)..................................................................23

*Morris v. Fordham Univ.,*
   No. 03-CV-556, 2004 WL 906248 (S.D.N.Y. Apr. 28, 2004) ...............................18

*Nat'l Collegiate Athletic Ass'n v. Smith,*
   525 U.S. 459 (1999)......................................................................................26, 27

*Nungesser v. Columbia, et al.,*
   169 F. Supp. 3d 353 (S.D.N.Y 2016)..............................................................13, 18

*O'Connor v. Davis,*
   126 F.3d 112 (2d Cir. 1997)..............................................................................7, 9

*Ornstein v. New York City Health & Hosps. Corp.,*
   10 N.Y.3d 1 (N.Y. 2008) ...................................................................................25

v

*Petrisch v. HSBC Bank USA, Inc.*,
  No. 07-CV-3303, 2013 WL 1316712 (E.D.N.Y. Mar. 28, 2013).............................17

*Philpott v. New York*,
  252 F. Supp. 3d 313 (S.D.N.Y. 2017)...................................................................19

*Propst v. Ass'n of Flight Attendants*,
  546 F. Supp. 2d 14, 22–23 (E.D.N.Y. 2008) ..................................................17-18

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
  743 F.3d 11 (2d Cir. 2014)......................................................................................14

*Roe v. Chappagna Central School District*,
  No. 16-CV-7099, 2017 WL 4119655 (S.D.N.Y. Sept. 9, 2017)...........................20

*Rolph v. Hobart and William Smith Colleges*,
  271 F. Supp. 3d 386 (W.D.N.Y. 2017) ..................................................................20

*Romero v. City of New York*,
  839 F. Supp. 2d 588 (E.D.N.Y. 2012) ..................................................................24

*Ross v. Univ. of Tulsa*,
  No. 14-CV-484, 2015 WL 4064754 (N.D. Okla. July 2, 2015) .............................23

*Rossetti v. Bd. of Educ.*,
  716 N.Y.S.2d 460 (3d Dep't 2000)........................................................................24

*Russell v. New York Univ.*,
  No. 15-CV-2185, 2017 WL 3049534 (S.D.N.Y. July 17, 2017) ............................18

*Salazar v. Ferrara Bros. Bldg. Materials Corp.*,
  No. 13–CV–3038, 2015 WL 1535698 (E.D.N.Y. Apr. 6, 2015)..............................6

*Sanders-Peay v. NYC Dep't of Educ.*,
  No. 14-CV-4534, 2014 WL 6473507 (E.D.N.Y. Nov. 18, 2014) ..........................12

*Shultz v. Shearith*,
  867 F.3d 298 (2d Cir. 2017)...................................................................................14

*Soloviev v. Goldstein*,
  104 F. Supp. 3d 232 (E.D.N.Y. 2015) ...................................................13, 15, 17

*Spackman v. District of Columbia Dept. of Employment Servs.*,
  590 A.2d 515 (D.C. Cir. 1991) ...............................................................................10

*Stokes v. City of New York*,
  No. 05-cv-0007, 2007 WL 1300983 (E.D.N.Y. May 3, 2007)................................24

ACTIVE\57060836.v1-5/23/18

*Summa v. Hofstra Univ.*,
    708 F.3d 115 (2d Cir. 2013)..................................................................................18

*Sweeney v. Bd. of Educ. of Rocky Point Union Free Sch. Dist.*,
    491 N.Y.S.2d 455 (2d Dep't 1985)..........................................................................7

*Taggart v Costabile*,
    131 A.D.3d 243 (2d Dep't 2015)............................................................................25

*Towers v. State Univ. of N.Y. at Stony Brook*,
    No. 04-CV-5243, 2007 WL 1470152 (E.D.N.Y. May 21, 2007)............................18

*U.S. Dept. of Transp. v. Paralyzed Veterans*,
    477 U.S. 597 (1986)............................................................................................26-28

*Vega v. Hempstead Union Free Sch. Dist.*,
    801 F.3d 72 (2d Cir.2015)....................................................................................11

*Vega v. State Univ. of N.Y. Bd. of Trustees*,
    No. 97-CV-5767, 2000 WL 381430 (S.D.N.Y. Apr. 13, 2000) ............................18

*Wang v. Phoenix Satellite Television US, Inc.*,
    976 F. Supp. 2d 527 (S.D.N.Y. 2013).....................................................................8

*Weitz v. State*,
    182 Misc.2d 320, 696 N.Y.S.2d 656 (N.Y. Ct. Cl. 1999)......................................23

*Williams v. New York City Hous. Auth.*,
    872 N.Y.S. 2d 27 (1st Dep't 2009) .......................................................................16

*York v. Ass'n of the Bar of the City of New York*,
    286 F.3d 122 (2d Cir. 2002)..................................................................................9

*Yu v. Vassar Coll.*,
    97 F. Supp. 3d 448 (S.D.N.Y. 2015)......................................................................22

*Yusuf v. Vassar College*,
    35 F.3d 709 (2d Cir. 1994)............................................................................19, 21

**Statutes**

42 U.S.C.A. § 2000e *et seq.* ....................................................................................15

20 U.S.C. § 1092(f).................................................................................................1

20 U.S.C. § 1681(a) .....................................................................................1, 18, 26

28 U.S.C. § 1367(c) ...............................................................................................29

29 U.S.C. § 794.................................................................................................................28

Jeanne Clery Campus Security Policy and Campus Crime Statistics Act ("Clery Act")......................................................................................................... *passim*

Title VII of the Civil Rights Act of 1964 ("Title VII") ........................................ *passim*

New York City Human Rights Law ("NYCHRL")............................................... *passim*

New York State Human Rights Law ("NYSHRL") .............................................. *passim*

Title IX......................................................................................................................... *passim*

**Other Authorities**

34 C.F.R. §106.2(h) ........................................................................................................26

Federal Rules of Civil Procedure ("FRCP") 12(b) .............................................2, 6, 25

ACTIVE\57060836.v1-5/23/18

## PRELIMINARY STATEMENT

Plaintiff, Aaron Glaser ("Plaintiff"), asserts fourteen claims in total against Upright Citizens Brigade, LLC ("UCB"), seven of which are also asserted against Alex Sidtis, and Shannon Patricia O'Neill (collectively, with UCB, the "Defendants"). The claims[1] cover three main topics: (1) employment claims under Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII") and the New York State Human Rights Law ("NYSHRL") (claims nine through fourteen); (2) educational claims under Title IX, 20 U.S.C. § 1681 (a)(1972) *et seq.* (hereinafter "Title IX"), and the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, ("Clery Act"), codified at 20 U.S.C. § 1092(f) (claims one through three); and (3) tort-based claims (claims four through eight). Plaintiff is an improvisational performer, sketch comedy actor, and stand-up comedian who, at the time of the events in this case, voluntarily performed once a month at UCB's theatre in the Chelsea neighborhood of New York. Accordingly, each claim should be dismissed, because Plaintiff was neither an employee nor was he a student of UCB under the relevant law, and Defendants owe him no duty to trigger any of the tort-based claims asserted.

UCB banned Plaintiff from its theatres in August 2016 after it conducted an investigation into complaints that Plaintiff raped several women in the UCB community. After the news that UCB banned Plaintiff caught fire in the comedian community, Twitter users and bloggers were not kind to Plaintiff. In response, Plaintiff has thrown a panoply of purported reverse gender discrimination claims at Defendants. Plaintiff's misguided lawsuit fails to a state any claims for which relief can be granted and/or lacks subject matter jurisdiction. Simply put, this is about a performer's tarnished reputation and bruised ego, which is not actionable as pled. Pursuant to

---

[1] The Complaint identifies each Claim as a "Cause of Action."

ACTIVE\57060836.v1-5/23/18

Federal Rules of Civil Procedure ("FRCP") 12(b)(6) and 12(b)(1), Plaintiff's Complaint and Jury

Trial Demand dated February 4, 2018 (the "Complaint") should be dismissed in its entirety.

## STATEMENT OF FACTS[2]

### The Upright Citizens Brigade Theatre

Plaintiff does **not** allege he is one of UCB's full-time employees, including theatre

technicians, bookkeepers, human resources staff or venue managers.  Instead, Plaintiff alleges he

was an "employee" of UCB because he "performed" at a UCB theater.  UCB is a New York limited

liability company doing business as Upright Citizens Brigade Theatre, which operates two

improvisational and sketch comedy theatres. *See* Declaration of James Lemonedes dated May 23,

2018 ("Lemonedes Dec."), Exhibit ("Ex.") B, Alex Sidtis Affidavit ("Sidtis Aff.") ¶ 1.  The theatre

involved in this case is located at 307 West 26th Street, New York, NY, 10001, in the Chelsea

neighborhood of New York. *See* Sidtis Aff. ¶¶ 2-3.

Upright Citizens Brigade Training Center, LLC (the "Training Center") is a *separate and*

*distinct* limited liability company, which operates a Training Center in New York. *Id.* ¶ 4.  UCB

and the Training Center foster a thriving performing arts community where Plaintiff was

encouraged and supported in pursuing his craft. *See* Complaint ("Comp.") ¶¶ 24, 31.  Plaintiff

wishes to re-enter that community where he claims he "never had any issues with anyone" and

was a "beloved figure." *See* Comp. ¶ 40.

UCB's name is affiliated with three other separate corporate entities located in California

that also promote and support improvisational and sketch comedy, known as Upright Citizens

Brigade Training Center LA, LLC (an improvisational and sketch comedy training center), UCB

---

[2] For purposes of this Motion to Dismiss as to FRCP 12(b)(6) only, the material factual allegations set forth in the Complaint are assumed true and will form the basis for the statement of facts herein. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

2

Inner Sanctum, LLC (a café and performance space), and UCBTLA, LLC (an improvisational and sketch comedy theatre) (collectively, the "California Entities"). Sidtis Aff. ¶ 6. The California Entities lease a building located at 5419 Sunset Boulevard in Los Angeles, which is owned by 5419 Sunset Properties, LLC ("5419 Sunset"). Sidtis Aff. ¶ 8. In 2012, 5419 Sunset received a small business loan from the Federal Government. Sidtis Aff. ¶ 10. 5419 Sunset secured the loan to rebuild the inside of the theatre located on its property and originally received the loan funding on May 13, 2015. *Id.* None of the affiliated entities are identified as defendants in this action.

<u>Training Center Courses</u>

The Training Center, not UCB, offers Improvisation and Sketch Classes. Sidtis Aff. ¶ 4. Certain Training Center students are invited to audition for house teams, known as the "Harold" and "Maude" teams. *See* Comp. ¶¶ 25-26. Students at the Training Center generally covet opportunities to perform in "house sponsored groups" at a UCB theater. *Id*. Significantly, Plaintiff fails to allege that such student-performers receive any salary or monetary compensation for the privilege of appearing at a UCB theatre.

<u>Plaintiff's Education and Enrollment in Courses at the Training Center</u>

In the summer of 2006, Plaintiff was attending Nassau Community College ("Nassau CC") as a full-time student when he enrolled in his first course at the Training Center, Improvisation 101. *Id.* ¶ 22. Plaintiff alleges that Defendant Shannon Patricia O'Neill, who is the current artistic director and was the course registrar in 2006 when Plaintiff registered for classes at the Training Center, "mocked" him for having his parents pay for his classes. *Id.* ¶ 39.

In the fall of 2006, Plaintiff did not take any classes at the Training Center because he moved out of state and transferred from Nassau CC to Northeastern University in Boston, Massachusetts. *Id.* ¶ 23. Plaintiff left that University after one semester and returned to New York

3

purportedly to pursue a career in performing.[3]  *Id.* ¶ 23.  He enrolled in another Training Center course, Improvisation 201.  *Id.*  Over the next five years, 2006 to 2010, Plaintiff took another twelve (12) courses at the Training Center.  *Id.* ¶ 24. By 2010, Plaintiff completed both the Improvisation and Sketch curriculums, which are the only two curricula offered at the Training Center.  *Id.* ¶ 24.  During his time as a student, Plaintiff auditioned for and was invited to join two teams, the Harold Team and the Maude team.  *Id.* ¶¶ 25-26.  He remained on at least one team until 2010, when he began to focus on his career. ¶¶ 28, 31.

Plaintiff's Performance Career

Beginning in 2010, Plaintiff began to focus on his standup career. *Id.* ¶ 31.  Plaintiff does ***not*** allege that he received any ***monetary*** compensation from UCB from 2010 to 2016.  While Plaintiff attempted to build his stand-up career, he admits receiving guidance and support from his former Training Center teachers and classmates. *Id.* ¶ 31.  Glaringly absent from his Complaint, however, is ***any*** **allegation that Plaintiff was taking classes or earning wages from UCB from 2010 to 2016**.  Plaintiff alleges that in August 2016 he was "banned from almost every comedy venue in New York," which demonstrates that he was performing at other non-UCB venues.[4]  *See* Comp. ¶ 56.  After 2010, Plaintiff was never again a student at the Training Center or an intern at UCB.  Plaintiff alleges that his connection to UCB after 2010 consisted of:

1. From 2013 to 2016, Plaintiff was invited to host a monthly stand-up series at UCB, which provided him with publicity for his stand-up career. *Id.* ¶ 31.  He does not allege that he was hired to host these monthly events, nor does he allege he received any monetary compensation. In exchange for hosting the series, Plaintiff received free publicity, drink tickets and comp tickets to the show. *Id.* ¶ 36.

---

[3] From November 2007 to August 2008, Plaintiff was an intern at UCB, and alleges that he helped set up and clean the theatre prior to and after performances, accepted deliveries and deposited cash in the bank.  *See id.* ¶ 29.  In exchange for his work as an intern, Plaintiff received two free courses at the Training Center. *Id.* ¶ 30.

[4] As concerns his performance at non-UCB venues, Plaintiff alleges he was the host of a show "Slow Dance," at an East Village venue, *see* Comp. ¶ 56, and that TD Ameritrade hired him to perform an online commercial, *id.* ¶ 57.

4

2. September 2014, UCB TourCo[5] recommended Plaintiff to host a night of stand-up comedy for a private client. *Id.* ¶ 33. Plaintiff does not allege he was hired for the gig.

3. Several times Plaintiff volunteered to assist current Training Center students by performing in sketch works. *Id.* ¶ 34. There is no indication of when this occurred other than between 2010 to 2016.

<u>The Rape Accusations Against Plaintiff.</u>

On August 9, 2016, UCB emailed Plaintiff and requested that he come to UCB's main offices in Midtown Manhattan. *Id.* ¶ 41. On August 11, 2016, Plaintiff met with Ms. O'Neill and Mr. Sidtis at UCB's offices. *Id.* During this meeting, UCB advised Plaintiff that: several people had accused him of rape, UCB conducted an investigation, and UCB decided to ban Plaintiff from performing at UCB (the "Aug. 2016 Meeting"). *Id.* ¶¶ 42-44. Two days later, Plaintiff alleges that "someone" posted the news that Plaintiff was banned from UCB. *Id.* ¶ 48. Plaintiff alleges that a UCB performer generated a "fake press release . . . pretending to be a spokesperson for UCB," advising that Plaintiff "was banned for raping multiple women." *Id.* ¶ 49. Plaintiff admits that in response to the fake release, UCB sent a cease and desist letter to the person who allegedly posted the news. *Id.* ¶ 51. Plaintiff alleges that his roommates, who were involved in the UCB community, demanded that he move out, and that, along with being publicly labeled a rapist, drove him to depression. *Id.* ¶¶ 58, 60.

It has been nearly a decade since Plaintiff completed the two curricula offered at the Training Center: improvisation and sketch. *See* Comp. ¶ 24. At the time he was banned from UCB, August 2016, he was a volunteer performer and a former student, who used the UCB as a platform to promote his career outside UCB. Plaintiff claims that *after* he was banned from UCB,

---

[5] UCB TourCo is defined in the Complaint as "a branch of UCB." *See* Comp. ¶ 33.

a movement in the comedy community started, which he claims was called "believe all women." *Id.* ¶ 70.

## LEGAL ARGUMENT

## LEGAL STANDARD UNDER FRCP 12(B)(6)

To survive a motion to dismiss under FRCP 12(b)(6), the facts set forth in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  Conclusory statements fail to meet the pleading standard set forth in *Iqbal* and *Twombly*.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## I.   PLAINTIFF'S EMPLOYMENT CLAIMS FAIL AS A MATTER OF LAW

Plaintiff's ninth through thirteenth claims for gender discrimination, hostile work environment, and unlawful employment practices are brought pursuant to Title VII, NYSHRL and the New York City Human Rights Law ("NYCHRL").  Plaintiff's claims under these statutes, however, fail as a matter of law because he was not an "employee" of UCB as defined under Title VII, NYSHRL and NYCHRL. [6/7]  Both Title VII and NYSHRL "are subject to the same standard" and Plaintiff fails to allege facts to establish claims under either law.  *Salazar v. Ferrara Bros. Bldg. Materials Corp.,* No. 13–CV–3038, 2015 WL 1535698, at *5 (E.D.N.Y. Apr. 6, 2015).

---

[6] NYCHRL uses a nearly identical test to NYSHRL and Title VII in determining whether an employment relationship exists.  *See Conde v. Sisley Cosmetics USA, Inc.*, No. 11-cv-4010, 2012 WL 1883508, at *2 (S.D.N.Y. May 23, 2012) (finding remuneration is the threshold question under NYCHRL in determining whether someone is an employee).

[7] Defendant acknowledges that interns are protected under State and City laws (based on the 2014 amendments). *See* N.Y. Exec. Law § 296-c; New York City, N.Y. Code § 8-107; *see also Hughes v. Twenty-First Century Fox, Inc.*, No. 17-CV-7093, 2018 WL 1940175, at *8 (S.D.N.Y. Apr. 24, 2018).  This, however, is inapplicable, as Plaintiff **does not** allege he was an intern at the relevant time – during the Aug. 2016 Meeting.

6

A. **Plaintiff Fails to Allege Facts Sufficient to Establish He Was An Employee Protected by Title VII or NYSHRL (Claims 9, 10, 11, 12, and 13)**

In evaluating whether an employment relationship exists under Title VII and NYSHRL, the Second Circuit has explained that compensation is the threshold issue. *O'Connor v. Davis*, 126 F.3d 112 (2d Cir. 1997) (holding that an unpaid intern is not an employee under Title VII); *Sweeney v. Bd. of Educ. of Rocky Point Union Free Sch. Dist.*, 491 N.Y.S.2d 455 (2d Dep't 1985) (holding that the NYSHRL did not extend protection to unpaid school volunteer). "Where no financial benefit is obtained by the purported employee from the employer, no plausible employment relationship of any sort can be said to exist." *Gulino v. New York State Educ. Dept.*, 460 F.3d 361 (2d Cir. 2006) quoting *O'Connor*, 126 F.3d at 115-16. Only once the threshold issue is established – that a financial benefit exists between two parties – does the analysis turn to the multi-factor common law agency test set forth by the Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), to determine whether an employment relationship exists. *O'Connor v. Davis*, 126 F.3d 112 (2d Cir. 1997).[8] Because Plaintiff does not assert that he received remuneration (as he unable to assert), he has failed to plead facts that satisfy the threshold issue in asserting an employment relationship and this Court need not apply the *Reid* test. Nevertheless, even applying the *Reid* test, Plaintiff does not allege facts to plead any actionable claim under the applicable statutes.

  i) *Plaintiff Received No Remuneration from UCB*

Plaintiff did not receive direct or indirect remuneration from UCB. Direct remuneration is

---

[8] The NYCHRL applies a nearly identical test to the one applied in *Reid*, asking whether the employer: "1) had the power of the selection of the employee; 2) paid the employee; 3) had the power of dismissal over the employee; and 4) had the power to control the employee's conduct ." *Melendez v. Int'l Serv. Sys., Inc.*, No. 97-cv-8051, 1999 WL 187071, at *9 (S.D.N.Y. Apr. 6, 1999) (citations omitted) (applying test to New York City Human Rights Law). As under Title VII and NYSHRL, control is the paramount factor in this test. *Id.* at *9.

7

salary or wages. *Id.* Indirect remuneration could be significant financial benefits such as employee benefits, health insurance, vacation or sick pay. *See, e.g., Haavistola v. Cmty Fire Co.*, 6 F.3d 211 (4th Cir. 1993) (employment relationship existed where firefighter received disability insurance, retirement pension, survivors' benefits, group life insurance and scholarships for dependents upon death).

After Plaintiff was a student and intern,[9] Plaintiff moved away from the UCB community to pursue his stand-up career from 2010 to 2013. *See* Comp. ¶ 31.  In 2013, Plaintiff alleges UCB invited him to host a monthly stand-up series.  *Id.*  Similar to the intern in *Wang v. Phoenix Satellite Television US, Inc.*, 976 F. Supp. 2d 527, 537 (S.D.N.Y. 2013), when Plaintiff hosted the series, he did not enter into a mutually beneficial economic relationship with UCB.  *See* Comp. ¶ 36.  Plaintiff does not allege that UCB paid him a salary or wages.  Instead, Plaintiff alleges that he enjoyed the use of UCB's venue and equipment while hosting the show and claims that this somehow made him an "employee."  *Id.* ¶ 35.  The use of UCB's venue and equipment, however, does not distinguish him from a volunteer, and not does create an employment relationship.  *See Conde v. Sisley Cosmetics USA, Inc.*, No. 11-CV-4010, 2012 WL 1883508, at *2 (S.D.N.Y. May 23, 2012) (granting motion to dismiss finding a Sisley Cosmetics vendor who worked at the Sisley cosmetics counter in Saks, was interviewed by Saks, monitored by Saks' employees, and used Saks' cash registers was not an employee of Saks).

---

[9] During the relevant timeframe, Plaintiff was neither a student nor an intern.  Plaintiff alleges he took classes at UCB from 2006 to 2010. *See* Comp. ¶ 24.  Plaintiff also claims he was an intern, from November 2007 to August 2008, and in exchange received two free courses. *See* Comp. ¶ 29. Title VII protections do not extend to unpaid interns. *See Wang v. Phoenix Satellite Television US, Inc.*, 976 F. Supp. 2d 527, 537 (S.D.N.Y. 2013) (dismissing plaintiff's complaint because no mutually beneficial economic relationship existed between an unpaid intern and the company hosting her internship).

8

Plaintiff alleges that in exchange for hosting a monthly show, he would receive free publicity, drink tickets for himself and complimentary show tickets for friends. *Id.* ¶ 36.  However, none of these perks are sufficient to create an employment relationship.  Thus, Plaintiff did not receive any of the benefits that are typically associated with indirect remuneration sufficient to create an employment relationship.  *See York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) (affirming dismissal of Title VII claims where plaintiff volunteered and, in return, received clerical support and tax deductions because there can be no employment relationship absent financial benefit).  Significantly, Plaintiff *does not allege* that he received employee benefits, health insurance, vacation or sick pay for his "work" at UCB.  Instead, he received the type of rewards that a volunteer might receive, which is what he was.  As such, he fails to assert facts that can support any claim under Title VII and NYSHRL.

ii)   *Even if this Court finds Plaintiff Received Remuneration, He is not an Employee Because His Allegations Fail the "Reid" Test*

Even if this Court determines that drink tickets and complimentary tickets for friends when performing at a monthly show is sufficient remuneration to satisfy the threshold issue in evaluating an employment relationship, Plaintiff must still satisfy the multi-factor common law agency test under *Reid* to be considered an employee.  *See O'Connor v. Davis*, 126 F.3d 112 (2d Cir. 1997) citing *Community for Creative Non-Violence v. Reid*, 490 US 730 (1989).[10]

The *Reid* analysis[11] requires this Court to consider the totality of the circumstances, but the

---

[10] When applying the *Reid* test courts "must disregard those factors that, in light of the facts of a particular case are irrelevant or of indeterminate weight." *See Davis v. New York Sports Officials' Council*, No. 09-CV-0514, 2010 WL 3909688 (N.D.N.Y. Sept. 30, 2010).

[11] "[1] the hiring party's right to control the manner and means by which the product is accomplished . . . [;][2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hired party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; and [13] the tax treatment

9

most important factor is control over one's work.  *See Lerohl v. Friends of Minnesota Sinfonia*, 322 F.3d 486 (8th Cir. 2003) (dismissing the case and finding musicians in to be independent contractors).  Defendants are unaware of any case applying the *Reid* factors to comedians or improvisation performers, but courts have evaluated plaintiffs in analogous professions such as musicians, actors and artists.

For example, the Eighth Circuit held that musicians, who played with the *Friends of Minnesota Sinfonia*, were <u>not</u> employees because they controlled their own work.  *Id.*  In its decision, the *Lerohl* Court considered that: the orchestra musicians also performed for other organizations and performed solo; they were able to opt out of performances; they were paid per performance; and their employer allegedly did not withhold income taxes, health insurance, workers' compensation insurance or other fringe benefits (except contributing an agreed percentage of the performers union scale payments to the musicians union pension fund).  *Id.*  The *Lerohl* Court was not persuaded by plaintiffs' argument that the director controlled their work because the Court found that work by independent contractors is often performed "to the exacting specifications of the hiring party."  *Id.*

Other courts have made similar determinations about actors, opera singers, artists and sculptors.  *See Albert-Velez v. Corporacion de Puerto Rico Para La Difusion Publica*, 361 F.3d 1 (1st Cir. 2004) (hostess of a TV show found not to be an employee because she had control over her performance); *Spackman v. District of Columbia Dept. of Employment Servs.*, 590 A.2d 515 (D.C. Cir. 1991) (opera contracts with people necessary to create the opera, opera singer retained artistic integrity as an artist); *In re Metropolitan Opera Ass'n, Inc. and Operatic Artists of Am.*,

---

of the hired party."  *Cosgriff v. Valdese Weavers LLC*, No. 09-cv-5234, 2012 WL 1071497, at *5 (S.D.N.Y. Mar. 30, 2012) quoting *Reid*, 490 U.S. at 751-52.

10

No. 2-RC-21699, 1999 WL 112550 (NLRB Feb. 26, 1999) (solo artists engaged on a per performance basis were not employees); *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) (finding that a sculptor was an independent contractor rather than an employee).

By its very nature a comedian's work is that of an independent artist who controls his/her performance. Notably, Plaintiff alleges he controlled the monthly show he hosted at UCB. *See* Comp. ¶¶ 31-32. Plaintiff alleges that he "produced" and "hosted" a monthly stand-up series for UCB. *See* Comp. ¶ 31. Plaintiff alleges that he "booked new comics and famous celebrities" and "sold out almost every performance." *Id.* ¶ 32. Although Plaintiff alleges that he was "supervised" by UCB while on its premises, *see* Comp. ¶ 35, this vague conclusory allegation is not enough to establish that UCB had the kind of control giving rise to an employment relationship. *See Conde v. Sisley Cosmetics USA, Inc.*, No. 11-CV-4010, 2012 WL 1883508, at *2 (S.D.N.Y. May 23, 2012) (finding allegations that plaintiff attended meetings with putative employer, was told how to dress, was monitored by putative employer, and was given a warning that she would be "terminated" if she did not follow dress code, were not enough to establish an employment relationship). Underscoring this conclusion is that Plaintiff was not constrained to only performing at UCB, he could perform elsewhere and he did. *See* Comp. ¶¶ 56-57. Plaintiff never alleges that UCB provided him with health insurance or other fringe benefits and did not make pension contributions for him. Thus, Plaintiff has failed to allege facts sufficient to establish an employment relationship under *Reid*.

## B.   Plaintiff Fails to Allege Sufficient Facts to Support a Claim of Gender Discrimination Under Title VII or NYSHRL

Employment discrimination cases under Title VII and NYSHRL are subject to burden-shifting framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 82–83 (2d Cir. 2015). However, the Second

11

—

Circuit has held "[a]t the pleadings stage of the litigation, [plaintiff is] not required to plead a *prima facie* case of discrimination as contemplated by the *McDonnell Douglas* framework." *Id.* at 84. Rather, "[u]nder *Iqbal* and *Twombly* . . . in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his sex was the motivating factor." *Gomez v. Stonybrook Univ.*, No. 14-CV-7219, 2016 WL 1039539, at *4 (E.D.N.Y. Jan. 28, 2016), report and rec. adopted, No. 14-CV-7219, 2016 WL 1045536 (E.D.N.Y. Mar. 15, 2016). Even under the lenient pleading requirements, Plaintiff has failed to plea any actionable employment claim.

i) <u>Plaintiff Fails to Allege Facts That Give Rise to<br>an Inference of Discrimination (Claims 9 and 13)</u>

Plaintiff merely alleges he is male and UCB terminated him from his employment, but alleges no facts to suggest that UCB banned him ***because*** of his gender. Instead, Plaintiff alleges that UCB's investigation into his alleged sexual misconduct was unfair. These allegations, without more, do not give rise to a claim for gender discrimination under Title VII or NYSHRL. "[N]aked assertions of discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." *Sanders-Peay v. NYC Dep't of Educ.*, No. 14-CV-4534, 2014 WL 6473507, at *3 (E.D.N.Y. Nov. 18, 2014). Rather, Plaintiff must allege facts to support an inference of discrimination that his gender was a motivating factor in the decision to "terminate" him.[12]

---

[12] As will be established below, a similar analysis is applied in considering a claim under Title IX. *See*, fn 18, *and accompanying text below*. As demonstrated below, Plaintiff has failed to allege sufficient facts to assert a plausible claim of education discrimination based upon gender under Title IX. Indeed, Plaintiff's allegations regarding the "believe all women" movement could *not support an inference of discrimination*, because Plaintiff admits this movement occurred *after* the complained of conduct (the Aug. 2016 Meeting) occurred. *See* Comp. ¶ 70. This same analysis is applicable in considering Plaintiff's Title VII claim, and is incorporated by reference herein.

12

In order to assert facts to establish the required causal connection a plaintiff may allege "actions or remarks made by decision makers that could be viewed as reflecting discriminatory animus." *LaSalle v. City of N.Y.*, No. 13–CV–5109, 2015 WL 1442376, at *2 (S.D.N.Y. Mar. 30, 2015). Plaintiff, however, has not done so here. In a failed attempt to establish the required causal connection Plaintiff claims Ms. O'Neill "mocked [him] for having his parents pay for his classes" when he first registered at UCB. Comp. ¶ 39. Without any further basis, Plaintiff next alleges that he "believes that [Ms.] O'Neill labeled him a 'privileged white man' and decided that he must be guilty." *Id.* ¶ 70. Indisputably, Plaintiff's "belief," without facts to support such a belief, aside from one decade-old comment – that is devoid of any reference to gender – is insufficient to establish an inference of discrimination.

Plaintiff also alleges that the phrase "'Aaron Glaser is a rapist' went viral across the internet." Comp. ¶ 52. The allegation in itself demonstrates that any adverse attention that Plaintiff allegedly received was based on his alleged actions *not his gender*. *See Nungesser v. Columbia, et al.*, 169 F. Supp. 3d 353 (S.D.N.Y 2016) (finding that plaintiff was not being harassed because of his gender, but because he was accused of sexual misconduct which is not gender based, because both men and women can be accused of sexual misconduct). Moreover, Plaintiff fails to connect the allegations of attention on the internet to UCB.

Plaintiff also fails to plead facts that UCB treated him less favorably than other similarly situated females. *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 248–49 (E.D.N.Y. 2015). While Plaintiff alleges that UCB predetermined the results of its investigation because his accusers were female, *see* Comp. ¶ 147, he also alleges that UCB's Managing Director, Mr. Sidtis, *see* Comp. ¶ 11, who is male, investigated the allegations and decided that Plaintiff should be banned from UCB facilities. Id. ¶ 97. In evaluating Plaintiff's allegations of discrimination the Court should apply

13

the inference against discriminatory intent when the decision maker is in the same protected class as plaintiff. *See Fosen v. The New York Times*, No. 03-CV-3785, 2006 WL 2927611, at *5 (S.D.N.Y. Oct. 11, 2006); *see also Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 209 (S.D.N.Y. 2000) (noting inference against discriminatory intent when decision-makers are in same protected class as plaintiff).

       ii)    <u>*Plaintiff Fails to State a Hostile Work Environment Claim (Claims 10 and 13)*</u>

In order to establish an actionable hostile work environment claim Plaintiff must allege, "'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Shultz v. Shearith*, 867 F.3d 298, 309 (2d Cir. 2017) quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014).

Plaintiff alleges that for ten years he "was a beloved figure of UCB" and he "never had any issues with anyone." Comp. ¶ 40. Then suddenly, without any warning, everything changed during the Aug. 2016 Meeting when he was banned from UCB facilities. Plainly, Plaintiff's own characterization of his experience at UCB contradicts any claim of hostile work environment. In contrast to his own allegations, Plaintiff attempts to support his hostile work environment claim by conclusively alleging that his work environment was "humiliating and embarrassing," which was "severe and pervasive," because of the "flawed investigation." *Id.* ¶¶ 155-157. Even these allegations, however, rest upon Plaintiff's dissatisfaction with the investigation into his alleged misconduct, as Plaintiff asserts he was "discriminated based on his gender by UCB during its flawed investigation." *Id.* ¶ 156. These conclusory allegations alone are insufficient to state a claim under the law. *See Chick v. Cty. of Suffolk*, 546 Fed. Appx. 58 (2d Cir. 2013) (summary order) (affirming the district court's grant of the defendant's motion to dismiss a claim for hostile

14

work environment where the plaintiff could point only to two remote, non-specific, and conclusory incidents).

Although Plaintiff alleges that UCB's investigation gave rise to a hostile work environment, *see* Comp. ¶¶ 155-156, he also alleges he first learned of the investigation during the Aug. 2016 Meeting. *Id.* ¶¶ 41-44. It is implausible for Plaintiff to claim the he was subjected to a hostile work environment allegedly created by an investigation of which he was unaware until the point that he was banned from the UCB facilities. *Id.* ¶ 43. Moreover because he was allegedly "terminated" at the Aug. 2016 Meeting he could no longer be exposed to what he conclusively alleges was a hostile work environment. Accordingly, Plaintiff has failed to allege any circumstances that give rise to a claim for hostile work environment.

### iii) *Plaintiff's Claim for Retaliation Fails as He does not Allege that He Engaged in Protected Activity (Claim 11)*

Plaintiff's claim for retaliation is deficient on its face because he fails to allege that he engaged in any protected activity. "A prima facie case for retaliation under Title VII and NYSHRL requires: (1) that employee was engaged in a protected activity, (2) that defendants knew of the protected activity, (3) that employer took adverse employment actions against employee, and (4) there was a causal connection between the protected activity and the adverse action." *Soloviev*, 104 F. Supp. 3d 232 citing 42 U.S.C.A. § 2000e *et seq.*; NYSHRL.

A claim for retaliation requires that Plaintiff allege either that he opposed a practice that is discriminatory and unlawful or that he "made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing," in connection with an alleged violation of law. *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015). Plaintiff, however, *fails to allege any facts that he engaged in protected activity.* Instead, Plaintiff merely states that he was male and "terminated." *See* Comp. ¶ 160. This simply does not suffice; he does not allege

15

that he opposed any unlawful practice or assisted in an investigation against UCB prior to his "termination." Plaintiff does not allege that he complained about the investigation nor does he allege that he even knew about the investigation before he was banned from UCB. Indeed, Plaintiff could not have complained that UCB's investigation was unlawful before he knew it existed. Plaintiff's claim for retaliation must fail as a matter of law.

### C.      Plaintiff's NYCHRL and Individual Liability Claims Fail (Claims 12 and 14)

"NYCHRL claims . . . are reviewed independently from and more liberally than their federal and state counterparts." *LaSalle v. City of N.Y.*, No. 13–CV–5109, 2015 WL 1442376, at *3 (S.D.N.Y. Mar. 30, 2015) (granting motion to dismiss race discrimination claim under NYCHRL because, notwithstanding the more lenient standard, plaintiff failed to plead facts supporting an inference that she was treated less well than others because of her race). Plaintiff's allegations fail to sustain a claim even under the more lenient NYCHRL standard because, as established above, Plaintiff has not alleged facts that show he was treated less well than others because of his gender. For example, Plaintiff does not allege that he was treated less favorably than women accused of sexual misconduct. Indeed, Plaintiff cannot show "that [he] is treated 'less well'" because of a protected trait. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). Plaintiff does not plead more "than what [a] reasonable victim of discrimination would consider petty slights and trivial inconveniences," which is insufficient for a claim under the law. *Williams v. New York City Hous. Auth.*, 872 N.Y.S. 2d 27 (1st Dep't 2009).

To whatever degree it might be asserted that the Complaint presents any claim of retaliation under NYCHRL, any such claim must fail for the same reasons that Plaintiff's NYSHRL and Title VII retaliation claims, must fail -- Plaintiff failed to allege that he engaged in any protected activity. *Soloviev*, 104 F. Supp. 3d at 252 citing N.Y.C. Admin. Code § 8–107(7).

Finally, individual liability under the NYSHRL and the NYCHRL "are subject to the same analysis." *Hughes v. Twenty-First Century Fox, Inc.*, No. 17-CV-7093, 2018 WL 1940175, at *13 (S.D.N.Y. Apr. 24, 2018) citing N.Y.C. Admin. Code § 8–107(1)(a). Plaintiff's NYCHRL and NYSHRL[13] claims alleging individual liability fail for the same reasons.

## II.    PLAINTIFF'S EDUCATION CLAIMS SHOULD BE DISMISSED

Plaintiff brings three claims under Title IX against UCB. Initially, Plaintiff seeks declaratory relief under Title IX and the Clery Act.[14] Plaintiff next asserts a violation of Title IX, and finally Plaintiff asserts a separate claim under Title IX by alleging that UCB acted with deliberate indifference in violation of the statute.

### A.    Plaintiff's Claim for Declaratory Judgment Fails Because Where There is No Basis For the Underlying Title IX and Clery Act Claims, Declaratory Judgment Is Inappropriate (Claim 1)

In order to obtain a declaratory judgment, Plaintiff must establish claims upon which his declaratory relief rests. *Propst v. Ass'n of Flight Attendants*, 546 F. Supp. 2d 14, 22–23 (E.D.N.Y. 2008) (dismissing claims for declaratory relief where the substantive claims on which the declaratory relief was based were dismissed because "[t]he court may 'only enter a declaratory

---

[13] An individual can only be subject to liability if he qualifies as an "employer" or as an "aider or abettor" under NYSHRL. *Garnett–Bishop v. New York Comm. Bancorp, Inc.*, No. 12–CV–2285, 2014 WL 5822628, at *17 (E.D.N.Y. Nov. 6, 2014). Plaintiff has alleged no facts to support a claim that Ms. O'Neill or Mr. Sidtis are employers or aiders and abettors under the law. He merely claims that they conducted a poor and biased investigation. *See* Comp. ¶¶ 41-47. Moreover, there can be no aiding and abetting liability where there is no underlying liability for discrimination, harassment or retaliation. Because Plaintiff's claims fall short of alleging a violation under the law, his aiding and abetting claims also necessarily fail. *See Erasmus v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 1398 (PAE), 2015 WL 7736554, at *8 (S.D.N.Y. Nov. 30, 2015), citing *Petrisch v. HSBC Bank USA, Inc.*, No. 07 Civ. 3303 (KAM), 2013 WL 1316712, at *21 (E.D.N.Y. Mar. 28, 2013) ("[A]iding and abetting is only a viable theory where an underlying violation has taken place.").

[14] Plaintiff alleges that he is entitled to declaratory relief under the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, ("Clery Act"), codified at 20 U.S.C. 1092(f). *See* Comp. ¶ 96. The Clery Act, however, specifically states that its provisions do not give rise to private causes of action. 20 U.S.C. §§ 1092(f)(14)(A)(i); 1092(i)(5)(C); 1092(j)(2)(B); *see also Beck v. Cornell Univ.*, No. 5:16-CV-1104, 2016 WL 6208535, at *2 (N.D.N.Y. Sept. 22, 2016), report and recommendation adopted, No. 5:16-CV-1104, 2016 WL 6208542 (N.D.N.Y. Oct. 24, 2016). Accordingly, Plaintiff has not stated a claim against Defendants under the Clery Act. Defendants understand that Plaintiff intends to withdraw his Clery Act claim.

17

judgment in favor of a party who has a substantive claim of right to such relief' " quoting *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 14 F.3d 726 at 731). As discussed below, Plaintiff cannot state a claim under the Clery Act or Title IX, thus his claim for declaratory relief must fail. In addition, no private right of action exists under Title IX based on alleged disparate impact of a policy on a protected group. *See Nungesser v. Columbia, et al.*, 169 F. Supp. 3d 353 (S.D.N.Y 2016) citing *Doe v. Columbia*, 831 F.3d 46 (2d Cir. 2016). Thus, in order to establish a claim under Title IX, Plaintiff must plead intentional discrimination based on gender, and he has not.

**B.**     **Plaintiff's Title IX Claims Must Fail Because Plaintiff Was Neither A Student Nor An Employee, He Was A Volunteer Performer (Claims 2 and 3)**

Title IX provides, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX typically protects students, but courts are divided on whether Title IX *also* protects employees. *Russell v. New York Univ.*, No. 15-CV-2185, 2017 WL 3049534, at *38 (S.D.N.Y. July 17, 2017), citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 131 & n.1 (2d Cir. 2013) (declining to decide "whether there is a private right of action for employment discrimination under Title IX").[15] The Southern District of New York recently dismissed a Title IX claim where it found that plaintiff was an employee, not a student. *Philpott v. New York*, 252 F. Supp. 3d 313, 318 (S.D.N.Y. 2017).

---

[15] Compare *Towers v. State Univ. of N.Y. at Stony Brook*, No. 04-CV-5243, 2007 WL 1470152, at *4 (E.D.N.Y. May 21, 2007) (finding Title IX cannot be used to circumvent the remedial scheme of Title VII), *and Vega v. State Univ. of N.Y. Bd. of Trustees*, No. 97-CV-5767, 2000 WL 381430, at *3 (S.D.N.Y. Apr. 13, 2000) (agreeing with the Fifth and Seventh Circuits that Title VII provides the exclusive remedy for individuals "alleging employment discrimination on the basis of sex, and limiting money damages under Title IX to student plaintiffs."), *with Morris v. Fordham Univ.*, No. 03-CV-556, 2004 WL 906248, at *3 (S.D.N.Y. Apr. 28, 2004) ("Neither the Supreme Court nor the Second Circuit has resolved the question of whether Title IX provides a cause of action to employees of federally funded educational programs who bring claims of sex discrimination against their employers), *and Henschke v. New York Hospital-Cornell Medical Center*, 821 F. Supp. 166, 172 (S.D.N.Y. 1993) (finding an employment discrimination private right of action exists under Title IX).

If a claim for employment discrimination exists under Title IX, then the same employment relationship analysis applied above to Plaintiff's Title VII claims will apply here. *See Yusuf v. Vassar College*, 35 F.3d 709, 714 (2d Cir. 1994) ("courts have interpreted Title IX by looking to . . . the case law interpreting Title VII."). Based on the analysis above, Plaintiff's claim for employment discrimination under Title IX fails because he was not an employee of UCB.

Plaintiff was **not a student nor an employee at the time of the complained of conduct** (the Aug. 2016 Meeting) and, as such, his Title IX claims fail. Plaintiff alleges he is a "former student," who last enrolled in UCB classes in 2010. *See* Comp. ¶ 24. Plaintiff was a volunteer performer from 2013, when UCB granted him performance privileges, until UCB revoked those privileges in 2016. Title IX does not cover non-student volunteers who have privileges to use an institution's facilities. *See K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054 (8th Cir. 2017) (finding a potential soccer recruit visiting campus was not protected by Title IX, even though sexually assaulted at an on-campus fraternity house by one of its members). This court should follow the *K.T. v. Culver-Stockton Coll.* court and dismiss Plaintiff's Title IX claims because Plaintiff was a non-student, performer on a UCB theater at the time of the alleged misconduct. *See K. T. v. Culver-Stockton Coll.*, No. 4:16-CV-165, 2016 WL 4243965, at *1 (E.D. Mo. Aug. 11, 2016), *aff'd*, 865 F.3d 1054 (8th Cir. 2017). Plaintiff as a volunteer performer with privileges to use UCB's theatre cannot bring a claim under Title IX.

### C.     Plaintiff Fails to State A Claim For Gender Discrimination Under Title IX (Claims 2 and 3)

Even if this Court should find that that UCB is covered by Title IX (which Defendants' dispute), then the Court should nevertheless dismiss Plaintiff's education-based claims as he has failed to allege facts to support a claim for gender discrimination under Title IX. There are two types of claims arising from dissatisfaction with the investigation into claims of sexual harassment:

19

erroneous outcome or selective enforcement.   *Yusuf*, 35 F.3d at 714 (recognizing reverse discrimination claim under Title IX).   In the Complaint, Plaintiff asserts erroneous outcome and does not allege selective enforcement.[16]   Plaintiff also attempts to create a new cause of action for deliberate indifference, which is not a cause of action under Title IX.   Deliberate indifference is a standard,[17] not a separate claim, thus Defendants will address Plaintiff's "deliberate indifference" allegations in connection with his claim for gender discrimination under Title IX.

Plaintiff claims that UCB's investigation into allegations of his sexual misconduct led to an erroneous outcome. *See* Comp. ¶ 109 ("UCB's erroneous determination").   To bring an erroneous outcome challenge, plaintiff must allege (1) facts sufficient to cause some doubt on the outcome of the investigation and (2) a causal connection between the flawed outcome and gender bias. *See Rolph v. Hobart and William Smith Colleges*, 271 F. Supp. 3d 386, 399 (W.D.N.Y. 2017) (Plaintiff fails to allege particular facts sufficient to doubt the accuracy of the outcome reached). The pleading standard in reverse discrimination cases requires that Plaintiff plead specific facts that support a minimal plausible inference of discrimination. *See Columbia*, 831 F.3d 46 (finding that specific allegations of anti-male bias and factual allegations asserting detailed reasons for that bias was sufficient to survive a motion to dismiss).[18]   The Second Circuit reversed the dismissal

---

[16] Nowhere in the Complaint does Plaintiff mention selective enforcement and in describing the nature of his claim, Plaintiff relies exclusively on an erroneous outcome theory, as he alleges: "Simply put: UCB improperly mishandled an investigation against Plaintiff Glaser by failing to conduct a formal hearing process against Plaintiff Glaser." Comp. ¶ 3.

[17] The deliberate indifference standard is typically applied to determine whether a plaintiff has stated a claim sufficient to recover from an institution based on a hostile environment claim under Title IX. *Roe v. Chappagna Central School District,* No. 16-CV-7099, 2017 WL 4119655 (S.D.N.Y. Sept. 9, 2017) (holding a plaintiff must show that the school was deliberately indifferent to a substantial risk of harm).

[18] In *Columbia* the Second Circuit confirmed that pleading a Title IX claim carries a requirement of asserting facts to support an assertion of discriminatory intent similar to the requirement found in pleading a Title VII violation. 831 F.3d at 55-56. As demonstrated above, *see fn* 12 and accompanying text, Plaintiff has failed to allege sufficient facts to assert a plausible claim of employment discrimination based upon gender.   This same analysis is applicable in considering Plaintiff's Title IX claim, and is incorporated by reference herein.

20

of the pleading in *Doe v. Columbia* based on plaintiff's allegations that public criticism predating the disciplinary decision influenced Columbia University's handling of its investigation into allegations of plaintiff's sexual misconduct. *Id.* Here, in contrast to the assertions in *Columbia,* Plaintiff does **not** allege facts to establish that UCB's findings were colored by bias. Indeed, Plaintiff does not allege that UCB was under any criticism for failing to address females' claims of sexual misconduct. Instead, Plaintiff alleges that the "believe all women" movement in the national comedian community did not begin until **after Plaintiff was banned from UCB.** *See* Comp. ¶ 70 ("the movement that followed"). Plaintiff's allegation that UCB employees acted "with deliberate indifference" towards Plaintiff because of his male gender, *id.* ¶ 108, is insufficient because it lacks the specificity required under the law. Plaintiff's only support for his claim that UCB was deliberately indifferent is simply that UCB violated his rights under Title IX and UCB made an erroneous determination. *See* Comp. ¶¶ 109-110. These are not facts, but legal conclusions.

The only additional facts Plaintiff alleges in support of his erroneous outcome claim, are that the investigators were untrained, Plaintiff did not receive notice of the investigation, no hearing was held, Plaintiff did not receive witness statements, there was no cross-examination, and no appeal was allowed. *See* Comp. ¶ 97. Plaintiff's list of alleged procedural flaws does not give rise to an inference of gender bias and, thus, are not enough to survive a motion to dismiss. *Yusuf,* 35 F.3d at 715 ("[a]llegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss."). The fatal gap in his pleading is the "lack of particularized allegation[s] relating to a causal connection between the flawed outcome and gender bias." *Id.* This gap is widened by the fact that Plaintiff asserts a gender bias based on a movement

21

that occurred *after the conduct that allegedly serves as the basis for Plaintiff's claims.   See* Comp. ¶ 70.   Furthermore, Plaintiff fails to allege a causal connection between the investigation and gender bias because the sexual misconduct allegations against Plaintiff were the types of allegations UCB would investigate, regardless of gender.

## III.   PLAINTIFF'S TORT-BASED CLAIMS FAIL

Plaintiff's fourth through eighth claims for common law negligence, negligence *per se*, gross negligence, negligent training and supervision, and negligent infliction of emotional distress against all Defendants should be dismissed.   Plaintiff's tort-based claims are all premised on Defendants' allegedly improper investigation into the allegations of sexual misconduct.   *See* Comp. ¶¶ 114, 125, 131.   Plaintiff alleges duties of care where none exist in an attempt to circumvent the statutory preclusion of private lawsuits. Because the alleged duties do not exist, Plaintiff's negligence claims fail and should be dismissed.

### A.   Plaintiff's Purported Claim for Negligent Investigation Fails (Claims 4 and 6)

Plaintiff alleges Defendants breached their duty of care to plaintiff to conduct a "non-negligent" investigation and maintain "fair and equitable policies" for their investigations into allegations of sexual misconduct.   *Id.* ¶¶ 113-114.   Plaintiff's negligence claims must fail because "[t]here is no cause of action in the State of New York sounding in negligent prosecution or investigation." *Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 484 (S.D.N.Y. 2015) quoting *Coleman v. Corp. Loss Prevention Assocs.*, 282 A.D.2d 703, 724 N.Y.S.2d 321, 322 (2d Dep't 2001); *see also Weitz v. State,* 182 Misc.2d 320, 696 N.Y.S.2d 656 (N.Y. Ct. Cl. 1999) (applying this rule to "administrative disciplinary charges brought against a college or university student").   This Court should follow the *Yu* court's decision in a similar case where plaintiff claimed his college breached

22

its duty of reasonable care investigating allegations of sexual misconduct, which dismissed plaintiff's claim because New York does not recognize negligent investigation claims.

**B.**     **Plaintiff's Negligence Per Se Claim Fails (Claim 5)**

To state a claim for negligence *per se*, Plaintiff alleges that Defendants[19] breached their statutory duties created by Title IX and the Clery Act,[20] which proximately caused him injury.   To bring a claim for damages under Title IX requires Plaintiff to prove that the recipient entity "has actual knowledge of discrimination in the recipient's programs and fails adequately" to remedy such discrimination.   *Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, No. 16-CV-7720, 2017 WL 4074547, at *11 (D.N.J. Sept. 13, 2017) (holding that "Negligence *per se* would be an end-run around the requirements of Title IX") quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998); *see also Ross v. Univ. of Tulsa*, No. 14-CV-484, 2015 WL 4064754, at *3 (N.D. Okla. July 2, 2015) (dismissing claim for negligence *per se* because Title IX may not be logically or reasonably "substituted" for the common-law standard of care).   Accordingly, a claim that a violation of Title IX, or regulations thereunder, constitutes negligence *per se* would vitiate Title IX's knowledge requirement.

**C.**     **Plaintiff's Claim for Negligent Training and Supervision of Employees Fails (Claim 7)**

Plaintiff alleges that UCB was negligent in that Ms. O'Neill and Mr. Sidtis, as employees of UCB, failed to conduct a proper investigation under Title IX and the Clery Act. *See* Comp. ¶¶

---

[19] Plaintiff brings his negligence *per se* claims against all Defendants, including the individual defendants, but Title IX does not support claims against individuals. *See Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 426 (S.D.N.Y. 2008).

[20] Furthermore, federal courts may not create a duty of care where New York courts have declined to recognize one, "nor may [they] impose a duty of care based upon a statute that does not permit a private right of action." *Aiken v. Interglobal Mergers and Acquisitions*, No. 05-CV-5503, 2006 WL 1878323, at *2 (S.D.N.Y. July 5, 2006) (dismissing negligence claims based on the Bank Secrecy Act and Patriot Act because neither statute afforded a private right of action).   As there is no private right of action under the Clery Act, there can be no claim for negligence *per se* based on the Clery Act.

23

135-140. "It is well settled under New York law that '[a] claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of [his or her] employment.'" *Stokes v. City of New York*, No. 05-CV-0007, 2007 WL 1300983, at *14 (E.D.N.Y. May 3, 2007). Thus, "[w]here an employee is acting within the scope of his or her employment, the employer is liable under the theory of *respondeat superior* and no claim may proceed against the employer for negligent hiring or retention." *Id.* quoting *Rossetti v. Bd. of Educ.*, 716 N.Y.S.2d 460, 462 (N.Y. App. Div. 2000). Plaintiff alleges that Ms. O'Neill and Mr. Sidtis "were acting within the course and scope of their employment with UCB." *See* Comp. ¶ 64. Thus, Plaintiff's purported claim for negligent training and supervision of employees should be dismissed.

### D.   Plaintiff's Claim for Negligent Infliction of Emotional Distress Fails (Claim 8)

To state a claim for negligent infliction of emotional distress ("NIED"), Plaintiff must show (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress. *See Romero v. City of New York*, 839 F. Supp. 2d 588 (E.D.N.Y. 2012). Plaintiff does not allege facts establishing the required elements for NIED. Plaintiff alleges that "Defendants' conduct was negligent and involved numerous breaches of the standard of care" and that it was foreseeable that such a breach would cause Plaintiff emotional distress. Comp. ¶¶ 142-143. Plaintiff must allege facts that demonstrate that Defendants' behavior was "beyond all possible bounds of decency." *See Romero*, 839 F. Supp. 2d 588. Plaintiff merely alleges that Defendants conducted a poor investigation and wrongfully "terminated" him, which falls far short of the "extreme and outrageous" standard necessary to bring a claim for NIED.

Plaintiff also fails to allege a plausible causal connection between UCB "terminating" his monthly stand-up show and his emotional distress. Plaintiff alleges that he grew "despondent from the ongoing trauma of losing his friends, his career, and his girlfriend." Comp. ¶ 60. Plaintiff

24

must show "[a] breach of the duty of care resulting directly in emotional harm." *Taggart v Costabile*, 131 A.D.3d 243, 252-53 (2d Dep't 2015) citing *Ornstein v. New York City Health & Hosps. Corp.*, 10 N.Y.3d 1 (N.Y. 2008).  Here, Plaintiff alleges no facts that plausibly suggest that Defendants alleged conduct directly resulted in emotional harm.   Indeed, the Complaint specifically alleges events constituting an intervening factor – "someone posted on Twitter that Plaintiff Glaser had been banned by UCB for raping multiple women."[21] Comp. ¶ 48. Accordingly, Plaintiff's NIED claim must fail.

**IV.    PLAINTIFF'S TITLE IX CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE UCB IS NOT A RECIPIENT OF FEDERAL FINANCIAL ASSISTANCE**

Defendants move this Court to dismiss Plaintiff's Title IX claims under FRCP 12(b)(1) for lack of subject matter jurisdiction.[22]  It is Plaintiff's burden to establish there is proper jurisdiction over the Title IX claims in this case.  *See Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003), *cert. denied*, 540 U.S. 1111 (2004) (a party who seeks federal jurisdiction bears the burden of establishing that jurisdiction is proper).  Plaintiff's assertion that UCB was a recipient of federal funds that meet the definition under Title IX, *see* Comp. ¶ 78,  is false and not sufficient to meet Plaintiff's burden.  *See* Sidtis Aff. ¶ 5.  Despite Plaintiff's conclusory allegations, UCB was neither a direct or indirect recipient of Federal financial assistance, which is a necessary prerequisite for an institution to fall under the ambit of Title IX.  *See* 20 U.S.C. § 1681(a) (Title IX prohibits discrimination "on the basis of sex . . . under any education program or activity *receiving Federal financial assistance*."); *see also, Doe v. Meisels, et al.*, No. 14-CV-5725, 2016

---

[21]  Remarkably, the Complaint further establishes that UCB issued a cease and desist letter regarding a fake press release by someone "pretending to be a spokesperson for UCB." Comp. ¶ 51.

[22]  In determining whether this Court lacks of subject matter jurisdiction it may consider evidentiary submissions to resolve a factual dispute.  *See Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).

25

WL 2977269 (E.D.N.Y. May 20, 2016).  Accordingly, UCB is **not** covered by Title IX.  *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459 (1999).

### A.    UCB Is Not A Direct Nor An Indirect Recipient of Federal Assistance

As defined by 34 C.F.R. §106.2(h), a "recipient" of Title IX funds is:

> any State or political subdivision thereof, or any instrumentality of a State or political subdivision thereof, any private agency, institution or organization, or other entity, or any person, to whom Federal financial assistance is extended directly or through another recipient and which operates an education program or activity which receives such assistance, including any subunit, successor, assignee or transferee.

UCB is not an educational institution.  Sidtis Aff. ¶ 4.  The Training Center may likely qualify as an educational institution, but neither the Training Center nor UCB were recipients of Federal financial assistance and thus are not institutions that must comply with Title IX.  *See Cannon v. Univ. of Chicago,* 441 U.S. 677, 695 n.17 (1979) ("Title IX is applicable only to certain educational institutions receiving Federal financial assistance"); *Cf. U.S. Dep't of Transp. v. Paralyzed Veterans,* 477 U.S. 597, 605 (1986) ("Congress limited the scope of § 504 [which has the same federal funding trigger as Title IX] to those who actually 'receive' Federal financial assistance").  Plaintiff's failure to plead facts to support his conclusory allegation that UCB is a recipient of Federal financial assistance is fatal to his claims under Title IX.  *See Buckley v. Archdiocese of Rockville Centre*, 992 F. Supp. 586, 588-90 (E.D.N.Y. 1998) (in the absence of any factual allegations that the defendant received federal funds itself, or had any formal institutional affiliation with an entity that did, Title IX claim could not be maintained).  Specifically, Plaintiff does not allege what funds UCB received or how UCB used any funds.

A direct recipient of federal funds under Title IX regulations must execute a written assurance agreeing to comply with Title IX. 34 C.F.R. § 106.4.  UCB has never executed any such assurance on the basis of federal aid received by colleges and universities. *See* Sidtis Aff. ¶ 5.  In

26

other words, UCB never knowingly or voluntarily accepted the terms of the Spending Clause contract, and accordingly is not covered by Title IX.  As such, Plaintiff's attempt to confer jurisdiction of this Court through Title IX jurisdiction is without merit.

An institution is an indirect recipient of Federal financial assistance if the institution enrolls students who receive federal funds earmarked for tuition at that institution.  *Meisels,* 2016 WL 2977269.  The *Meisels* Court dismissed Title IX claims against an entity who plaintiffs did not claim they paid tuition to with earmarked federal funds.  *Id.*  In that case, plaintiffs' Title IX claims failed because the allegations did not support an inference that the defendant received federal funds earmarked for tuition.  *Id.*  Plaintiff does not allege that he paid for his UCB courses with federal aid earmarked for tuition.  To the contrary, Plaintiff alleges his parents paid for his UCB courses. *See* Comp. ¶ 39.  UCB neither directly nor indirectly receives Federal financial assistance.

**B.**    **Title IX Does Not Extend to a Beneficiary of Federal Financial Assistance**

Plaintiff may claim that UCB is a **beneficiary** of Federal financial assistance, but that is not enough to subject an entity to the requirements of Title IX.  "[E]ntities that only benefit economically from federal assistance are not" **recipients** within the meaning of Title IX. *Elizabeth Cucinotta Sorvillo Felicia Mooradian v. St. Francis Preparatory Sch.*, No. 13-cv-3357, 2014 WL 11462720, at *5 (E.D.N.Y. Aug. 14, 2014) quoting *NCAA v. Smith*, 525 U.S. 459, 460 (1999). Finding otherwise would unnecessarily extend the statutorily grounded-limits on Title IX's reach. *Paralyzed Veterans,* 477 U.S. at 605.  The Supreme Court in *NCAA v. Smith* found that the NCAA, which received dues not earmarked for tuition from federally assisted colleges, was *not a recipient* of federal financial assistance.  Receiving funds from a federally assisted college will make an institution an economic **beneficiary** of the federal funds, but not a **recipient** under Title IX and thus not required to comply with Title IX.  *Meisels,* 2016 WL 2977269.

27

The Supreme Court examined analogous statutory language and similar facts in *Paralyzed Veterans* to determine whether commercial airlines are covered under Section 504 of the Rehabilitation Act, which prohibits discrimination against disabled persons in any program or activity "receiving Federal financial assistance." 477 U.S. at 604-05, citing 29 U.S.C. § 794. The Supreme Court found that it is airports, not airlines who receive Federal financial assistance, and airlines merely benefit from the aid by using the runways.  477 U.S. at 604-06.  Similar to the airlines in *Paralyzed Veterans*, the California Entities affiliated with UCB only benefit from the use of 5419 Sunset's theater and thus, this Court should find, consistent with *Paralyzed Veterans*, that Title IX "does not extend as far as those who benefit from" the Federal financial assistance. *Id.* at 607, 610 (emphasis added).  5419 Sunset received a small business loan to renovate its Los Angeles theater, which the California Entities rent.  *See* Sidtis Aff. ¶ 8.  5419 Sunset is **not** involved in any educational programs.  *See* Sidtis Aff. ¶ 9.  As such, UCBTLA, LLC, is at best a beneficiary of 5419 Sunset's small business loan used to renovate its theatre.  Moreover, the defendant, UCB, is **not even a beneficiary** of 5419 Sunset's federal assistance; UCB is an affiliate of a beneficiary. Plaintiff's suggestion that this Court should extend Title IX's reach to an affiliate of a beneficiary is contrary to Supreme Court case law and beyond the pale.

## V.    THIS COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER REMAINING STATE AND CITY LAW CLAIMS

Should this Court decide to dismiss *only* Plaintiff's federal claims (and Defendants respectfully assert that dismissal is appropriate for all claims), this Court should decline supplemental jurisdiction for Plaintiff's state and city claims (including all tort-based claims).  28 U.S.C. § 1367(c) allows the court to decline to exercise supplemental jurisdiction over a state or city law claim if the court has dismissed all claims over which it has original jurisdiction. Given the foregoing reasons, this Court should find that Plaintiff has failed to state a claim under Title

28

IX, Title VII and the Clery Act, and decline to exercise supplemental jurisdiction over Plaintiff's other claims.

## CONCLUSION

The face of the Complaint demonstrates that no facts exists to support Plaintiff's claims. Instead, Plaintiff is attempting to use this Court as a means to clear his name by challenging the outcome of UCB's investigation into his alleged sexual misconduct. This is a desperate attempt to point the finger at UCB in order to save his own career. Plaintiff's allegations, however, do not give rise to an inference of gender discrimination. Defendants recognize that accusations of rape are devastating, but they are devastating regardless of the accused's gender. As such, Defendants move this Court to dismiss the Complaint with prejudice.

Dated: New York, New York
      May 23, 2018

                        Respectfully submitted,

                        **FOX ROTHSCHILD LLP**

                        By: _____
                            Carolyn D. Richmond, Esq.
                            James M. Lemonedes, Esq.
                            Zev Singer, Esq.
                            Bryn Goodman, Esq.
                            101 Park Avenue, Suite 1700
                            New York, New York 10178
                            Phone: (212) 878-7900
                            Facsimile: (212) 692-0940
                            jlemonedes@foxrothschild.com
                            ***Attorneys for Defendants***

ACTIVE\57060836.v1-5/23/18