**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AARON GLASER,

                                  Plaintiff,

        -against-

UPRIGHTS CITIZENS BRIGADE, LLC, ALEX
SIDTIS, and SHANNON PATRICIA O'NEILL,

                                  Defendants.

Case No.: **18-cv-971 (JPO)**

**ECF Case**

---

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

---

**FOX ROTHSCHILD LLP**
Carolyn D. Richmond, Esq.
James M. Lemonedes, Esq.
Bryn Goodman, Esq.
101 Park Avenue, Suite 1700
New York, New York 10178
(212) 878-7900
*Attorneys for Defendants Upright*
*Citizens Brigade, LLC, Alex Sidtis,*
*and Shannon Patricia O'Neill*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT .................................................................................... 1

OVERVIEW OF ISSUES CREATED BY FAC .......................................................... 2

STATEMENT OF FACTS ........................................................................................... 5

The Upright Citizens Brigade Theatre ....................................................................... 5

Training Center Courses .............................................................................................. 6

Plaintiff's Education and Enrollment in Courses at the Training Center ..................... 7

Plaintiff's Performance Career ................................................................................... 8

The Rape Accusations Against Plaintiff. .................................................................... 9

LEGAL ARGUMENT .................................................................................................. 9

LEGAL STANDARD UNDER FRCP 12(b)(6) ........................................................... 9

I.       PLAINTIFF'S EMPLOYMENT CLAIMS FAIL AS A MATTER OF LAW ................. 10

    A.      Plaintiff Fails to Allege Facts Sufficient to Establish He Was An Employee
        Protected by Title VII or NYSHRL (Claim Nos. 6, 9, 10, 11, 12, and 13) .......... 10

        1.      Plaintiff Received No Remuneration from UCB ..................................... 11

        2.      Even if this Court finds Plaintiff Received Remuneration, He is not an
            Employee Because His Allegations Fail the "Reid" Test ......................... 13

    B.      Plaintiff Fails to Allege Sufficient Facts to Support a Claim of  Gender
        Discrimination Under Title VII or NYSHRL (Claim Nos. 9 and  13) ................. 16

        1.      Plaintiff Fails to Allege Facts That Give Rise to  an Inference of
            Discrimination (Claim Nos. 9 and 13) .................................................... 16

        2.      Plaintiff Fails to State a Hostile Work Environment Claim (Claim
            Nos. 10 and 12) ..................................................................................... 19

        3.      Plaintiff's Claim for Retaliation Fails as He does not Allege that He
            Engaged in Protected Activity (Claim No. 11) ........................................ 21

i

C.    Plaintiff's Individual Liability Claims Must Fail (Claim Nos. 6 and 7)............... 22

D.    Plaintiff's Additional NYCHRL Claims Must Also Fail (Claim Nos. 14, 15 and 16) ..................................................................................................... 23

II.    PLAINTIFF'S EDUCATION CAUSES OF ACTION SHOULD BE DISMISSED....... 24

A.    Plaintiff's Claim for Declaratory Judgment Fails Because Where There is No Basis For the Underlying Title IX Claim, Declaratory Judgment Is Inappropriate (Claim No. 1)................................................................................ 24

B.    Plaintiff's Title IX Claims Must Fail Because Plaintiff Was Neither A Student Nor An Employee (Claim Nos. 2, 3 and 4) ............................................. 25

C.    Plaintiff Fails to State A Claim For Gender Discrimination Under Title IX (Claim Nos. 2, 3 and 4).................................................................................. 26

III.    PLAINTIFF'S TORT-BASED CLAIMS FAIL ............................................................ 31

A.    Plaintiff's Negligence Claims Are Pre-Empted by the Workers' Compensation Act, if he is Found to be an Employee......................................... 31

B.    Plaintiff's Claim for Negligent Training and Supervision of Employees Fails (Claim No. 5) ....................................................................................... 32

i.    *Plaintiff alleges Individual Defendants acted within the scope of their employment, thus, his claim must fail* ....................................................... 32

ii.    *Plaintiff cannot make out the elements of a claim for negligent training and supervision* .......................................................................... 32

C.    Plaintiff's Claim for Negligent Infliction of Emotional Distress Fails (Claim No. 8) .......................................................................................................... 33

IV.    PLAINTIFF'S TITLE IX CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE UCB IS NOT A RECIPIENT OF FEDERAL FINANCIAL ASSISTANCE.......................................................................... 34

A.    UCB Is Not A Direct Nor An Indirect Recipient of Federal Assistance .............. 35

B.    Title IX Does Not Extend to a Beneficiary of Federal Financial Assistance ....... 37

V.    THIS COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER REMAINING STATE AND CITY LAW CLAIMS...................................................... 39

CONCLUSION.............................................................................................................................. 40

ACTIVE\60817662.v1-8/1/18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albert-Velez v. Corporacion de Puerto Rico Para La Difusion Publica,*
   361 F.3d 1 (1st Cir. 2004) ..................................................................................................14

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .................................................................................................10, 16

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ..............................................................................................9, 10, 16

*Brightman v. Prison Health Serv., Inc.,*
   108 A.D.3d 739 (2d Dep't 2013) .......................................................................................21

*Brown v. Bronx Cross County Medical Group,*
   834 F. Supp. 105 (S.D.N.Y. 1993) ...................................................................................33

*Buckley v. Archdiocese of Rockville Centre,*
   992 F. Supp. 586 (E.D.N.Y. 1998) ...................................................................................36

*Cannon v. Univ. of Chicago,*
   441 U.S. 677 (1979) .........................................................................................................35

*Chick v. Cty. of Suffolk,*
   546 Fed. Appx. 58 (2d Cir. 2013) ....................................................................................20

*Community for Creative Non-Violence v. Reid,*
   490 U.S. 730 (1989) .........................................................................................11, 13, 14, 15

*Conde v. Sisley Cosmetics USA, Inc.,*
   No. 11-cv-4010, 2012 WL 1883508 (S.D.N.Y. May 23, 2012) ................................10, 12, 15

*Connell v. Consol. Edison Co. of N.Y., Inc.,*
   109 F. Supp. 2d 202 (S.D.N.Y. 2000) ..............................................................................19

*Cosgriff v. Valdese Weavers LLC,*
   No. 09-cv-5234, 2012 WL 1071497 (S.D.N.Y. Mar. 30, 2012) .........................................14

*Davis v. New York Sports Officials' Council,*
   No. 09-CV-0514, 2010 WL 3909688 (N.D.N.Y. Sept. 30, 2010) .......................................13

iii

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)..........................................................................................5

*Doe v. Columbia*,
    831 F.3d 46 (2d Cir. 2016)..........................................................3, 24, 27, 28, 29

*Doe v. Meisels, et al.*,
    No. 14-CV-5725, 2016 WL 2977269 (E.D.N.Y. May 20, 2016) .....................35, 37

*Drisdom v. Niagara Falls Mem. Med. Ctr.*,
    53 A.D.3d 1142, 861 N.Y.S.2d 919 (4th Dep't 2008)...........................................32

*Elecs. for Imaging, Inc. v. Coyle*,
    340 F.3d 1344 (Fed. Cir. 2003)................................................................... 34-35

*Elizabeth Cucinotta Sorvillo Felicia Mooradian v. St. Francis Preparatory Sch.*,
    No. 13-cv-3357, 2014 WL 11462720 (E.D.N.Y. Aug. 14, 2014) ..........................37

*Emmons v. City Univ. of N.Y.*,
    715 F. Supp. 2d 394 (E.D.N.Y. 2010) ...............................................................22

*Erasmus v. Deutsche Bank Americas Holding Corp.*,
    No. 15 CIV. 1398 (PAE), 2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015)..............22

*Fosen v. The New York Times*,
    No. 03-CV-3785, 2006 WL 2927611 (S.D.N.Y. Oct. 11, 2006)...................... 8-19

*Gomez v. Stonybrook Univ.*,
    No. 14-CV-7219, 2016 WL 1039539 (E.D.N.Y. Jan. 28, 2016) ...........................16

*Gulino v. New York State Educ. Dept.*,
    460 F.3d 361 (2d Cir. 2006).............................................................................11

*Haavistola v. Cmty Fire Co.*,
    6 F.3d 211 (4th Cir. 1993) ........................................................................ 11-12

*Henschke v. New York Hospital-Cornell Medical Center*,
    821 F. Supp. 166 (S.D.N.Y. 1993) ....................................................................25

*Hughes v. Twenty-First Century Fox, Inc.*,
    304 F. Supp. 3d 429 (S.D.N.Y. 2018)...........................................................10, 22

*In re Joint Eastern & Southern Dist. Asbestos Litig.*,
    14 F.3d 726 (2d Cir. 1993)...............................................................................24

*K. T. v. Culver-Stockton Coll.*,
    No. 4:16-CV-165, 2016 WL 4243965 (E.D. Mo. Aug. 11, 2016)..........................26

iv

*K.T. v. Culver-Stockton Coll.*,
    865 F.3d 1054 (8th Cir. 2017) ....................................................................26

*Kassapian v. City of New York*,
    155 A.D.3d 851 (2d Dep't 2017) ................................................................21

*Kirkman v. Astoria Gen. Hosp.*,
    204 A.D. 2d 401 (2d Dep't 1994) ...........................................................32-33

*Kwang Bok Yi v. Open Karaoke Corp.*,
    161 A.D.3d 971 (1st Dep't 2018) ...........................................................32-33

*LaSalle v. City of N.Y.*,
    No. 13–CV–5109, 2015 WL 1442376 (S.D.N.Y. Mar. 30, 2015)..................17, 23

*Leftenant v. City of New York*,
    70 A.D.3d 596 (1st Dep't 2010) .................................................................32

*Lerohl v. Friends of Minnesota Sinfonia*,
    322 F.3d 486 (8th Cir. 2003) ................................................................14, 15

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015)......................................................................21

*Makarova v. U.S.*,
    201 F.3d 110 (2d Cir. 2000).......................................................................34

*McDonnell Douglas v. Green*,
    411 U.S. 792 (1973).................................................................................16

*Melendez v. Int'l Serv. Sys., Inc.*,
    No. 97-cv-8051, 1999 WL 187071 (S.D.N.Y. Apr. 6, 1999) .................................11

*In re Metropolitan Opera Ass'n, Inc. and Operatic Artists of America*,
    No. 2-RC-21699, 1999 WL 112550 (NLRB Feb. 26, 1999) .................................15

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013).......................................................................23

*Morris v. Fordham Univ.*,
    No. 03-CV-556, 2004 WL 906248 (S.D.N.Y. Apr. 28, 2004) ..............................25

*Nat'l Collegiate Athletic Ass'n v. Smith*,
    525 U.S. 459 (1999).................................................................................35

*Nungesser v. Columbia, et al.*,
    169 F. Supp. 3d 353 (S.D.N.Y 2016)......................................................18, 24

v

*O'Brien v. King World Prods, Inc.*,
   669 F. Supp. 639 (S.D.N.Y. 1987) ...................................................................31

*O'Connor v. Davis*,
   126 F.3d 112 (2d Cir. 1997)..................................................................10, 11, 13

*Ornstein v. New York City Health & Hosps. Corp.*,
   10 N.Y.3d 1 (N.Y. 2008) ...........................................................................34

*Owen v. State*,
   160 A.D.3d 1410, 76 N.Y.S.3d 330 (4th Dep't 2018)..............................................32

*Perry v. Burger King Corp.*,
   924 F. Supp. 548 (S.D.N.Y. 1996). ...............................................................33

*Persaud v. S. Axelrod Co.*,
   No. 95 CIV. 7849(RPP), 1996 WL 11197 (S.D.N.Y. Jan. 10, 1996)..............................31

*Petrisch v. HSBC Bank USA, Inc.*,
   No. 07 Civ. 3303 (KAM), 2013 WL 1316712 (E.D.N.Y. Mar. 28, 2013) ...........................23

*Philpott v. New York*,
   252 F. Supp. 3d 313 (S.D.N.Y. 2017).............................................................25

*Propst v. Ass'n of Flight Attendants*,
   546 F. Supp. 2d 14 (E.D.N.Y. 2008). ............................................................24

*Richardson v. New York Univ.*,
   202 A.D.2d 295 (1st Dep't 1994) ................................................................33

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
   743 F.3d 11 (2d Cir. 2014).......................................................................19

*Roe v. Chappagna Central School District*,
   No. 16-CV-7099, 2017 WL 4119655 (S.D.N.Y. Sept. 9, 2017)..................................27

*Rolph v. Hobart and William Smith Colleges*,
   271 F. Supp. 3d 386 (W.D.N.Y. 2017) ...........................................................27

*Romero v. City of New York*,
   839 F. Supp. 2d 588 (E.D.N.Y. 2012) .........................................................33-34

*Ross v. Mitsui Fudosan, Inc.*,
   2 F. Supp. 2d 522 (S.D.N.Y. 1998) ........................................................31, 32-33

*Russell v. New York Univ.*,
   No. 15-CV-2185, 2017 WL 3049534 (S.D.N.Y. July 17, 2017)..................................25

*Salazar v. Ferrara Bros. Bldg. Materials Corp.*,
   No. 13–CV–3038, 2015 WL 1535698 (E.D.N.Y. Apr. 6, 2015) .............................................10

*Sanders-Peay v. NYC Dep't of Educ.*,
   No. 14-CV-4534, 2014 WL 6473507 (E.D.N.Y. Nov. 18, 2014) ...........................................17

*Shultz v. Shearith*,
   867 F.3d 298 (2d Cir. 2017)..................................................................................................19

*Soloviev v. Goldstein*,
   104 F. Supp. 3d 232 (E.D.N.Y. 2015) ......................................................................18, 21, 23

*Spackman v. District of Columbia Dept. of Employment Servs.*,
   590 A.2d 515 (D.C. Cir. 1991) ..............................................................................................15

*Stokes v. City of New York*,
   No. 05-CV-0007, 2007 WL 1300983 (E.D.N.Y. May 3, 2007).............................................32

*Summa v. Hofstra Univ.*,
   708 F.3d 115 (2d Cir. 2013)..................................................................................................25

*Sweeney v. Bd. of Educ. of Rocky Point Union Free Sch. Dist.*,
   491 N.Y.S.2d 455 (2d Dep't 1985).......................................................................................11

*Taggart v Costabile*,
   131 A.D.3d 243 (2d Dep't 2015) ..........................................................................................34

*Towers v. State Univ. of N.Y. at Stony Brook*,
   No. 04-CV-5243, 2007 WL 1470152 (E.D.N.Y. May 21, 2007) ..........................................25

*U.S. Dep't of Transp. v. Paralyzed Veterans*,
   477 U.S. 597 (1986)..........................................................................................35, 37, 38

*Vega v. Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015)....................................................................................................16

*Vega v. State Univ. of N.Y. Bd. of Trustees*,
   No. 97-CV-5767, 2000 WL 381430 (S.D.N.Y. Apr. 13, 2000) ............................................25

*Wang v. Phoenix Satellite Television US, Inc.*,
   976 F. Supp. 2d 527 (S.D.N.Y. 2013)...................................................................................12

*Williams v. New York City Hous. Auth.*,
   872 N.Y.S. 2d 27 (1st Dep't 2009) .......................................................................................23

*York v. Ass'n of the Bar of the City of New York*,
   286 F.3d 122 (2d Cir. 2002)..................................................................................................13

ACTIVE\60817662.v1-8/1/18

*Yusuf v. Vassar College*,
35 F.3d 709 (2d Cir. 1994)..........................................................25, 26, 30

**Statutes**

42 U.S.C.A. § 2000e *et seq.* ...............................................................21

20 U.S.C. § 1681(a) ...........................................................25, 35, 36

28 U.S.C. § 1367(c) .........................................................................39

29 U.S.C. § 794..............................................................................38

Jeanne Clery Campus Security Policy and Campus Crime Statistics Act ("Clery Act").............................................................................................3

Civil Rights Act of 1964 Title VII ........................................................1

N.Y. Code § 8-107 ..........................................................................10

N.Y. Exec. Law § 296-c....................................................................10

N.Y. McKinney's Executive Law § 290 *et seq.* .....................................21

N.Y. Workers' Comp. Law § 11 (McKinney 2018) .................................31

New York City Human Rights Law.....................................................1, 3

New York City Human Rights Law.......................................................11

New York City Human Rights Law ("NYCHRL")............................... *passim*

New York State Human Rights Law ("NYSHRL") ............................. *passim*

Rehabilitation Act Section 504 ......................................................35, 37

State Human Rights Law ..................................................................1, 3

Title VII .................................................................................. *passim*

Title IX.................................................................................... *passim*

Worker's Compensation Law ..........................................................3, 31

**Other Authorities**

34 C.F.R. §106.2(h) .........................................................................35

FRCP 12(b)(1) ...............................................................................34

FRCP 12(b)(6) ..........................................................................................................5, 9

N.Y.C. Admin. Code § 8–107............................................................................22, 23

New York Post article...........................................................................................28

ACTIVE\60817662.v1-8/1/18

## PRELIMINARY STATEMENT

Plaintiff, Aaron Glaser ("Plaintiff"), is an improvisational performer, sketch comedy actor, and stand-up comedian who, at the time of the events in this case, voluntarily performed once a month at Defendant Upright Citizens Brigade, LLC ("UCB") theatre in the Chelsea neighborhood of New York.  Defendants never employed Plaintiff, and he has not been a student of Upright Citizens Brigade Training Center, (the "NY Training Center") for nearly a decade.  Yet, Plaintiff claims that UCB, Alex Sidtis, and Shannon Patricia O'Neill (collectively, with UCB, referred to as the "Moving Defendants"), along with six newly added defendants the NY Training Center (together with UCB, the "New York Entities"), Upright Citizens Brigade Training Center LA, LLC (the "CA Training Center"), UCB Inner Sanctum, LLC (the "Inner Sanctum"), UCBTLA, LLC ("UCBTLA") (referred to collectively with the CA Training Center and the Inner Sanctum as the "California Entities"), 5419 Sunset Properties, LLC ("5419 Sunset") and Susan Hale (collectively with Alex Sidtis and Shannon Patricia O'Neill, referred to as the "Individual Defendants"),[1] violated laws intended to protect students and employees.  Even if, Plaintiff's action was brought pursuant to laws intended to cover amateur performers who were using a free venue to work on their craft, his allegations fail to establish any colorable claims.

In the Plaintiff's First Amended Complaint and Demand for Jury Trial dated June 28, 2018 (the "FAC"),[2] Plaintiff alleges three main types of claims: (1) employment claims under Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") (claims six, seven, and

---

[1] The Individual Defendants, the New York Entities, the California Entities, and 5419 Sunset shall be referred to hereinafter collectively as the "Defendants."

[2] The First Amended Complaint is annexed hereto as Exhibit ("Ex.") "A" to the Declaration of James Lemonedes dated August 1, 2018 ("Lemonedes Dec.").

1

nine through sixteen); (2) educational claims under Title IX, 20 U.S.C. §1681 (a)(1972) *et seq.* (hereinafter "Title IX") (claims one through four); and (3) tort-based claims (claims five and eight). Plaintiff's claims are premised solely on UCB's decision to ban Plaintiff from its facilities in August 2016. UCB decided to ban Plaintiff after conducting an investigation into complaints that Plaintiff raped several women in the UCB community. After the news that UCB banned Plaintiff caught fire in the comedian community, Twitter users and bloggers were not kind to Plaintiff.

Plaintiff retaliated by filing his initial Complaint against the Moving Defendants on February 4, 2018 (the "Initial Complaint"). [Docket No. 1].[3] On May 23, 2018, Moving Defendants filed a motion to dismiss the Initial Complaint. [Docket Nos. 15-17].[4] On June 28, 2018, Plaintiff filed his FAC. [Docket No. 25].[5] On July 5, 2018, the Court so-ordered the Parties' Stipulation to extend the Moving Defendants' time to answer or otherwise respond to the FAC up to and including August 1, 2018. [Docket No. 30]. Plaintiff has not, and clearly cannot, properly plead any claim for relief, thus, pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) and 12(b)(1), Plaintiff's First Amended Complaint and Demand for Jury Trial dated June 28, 2018 should be dismissed in its entirety.

## OVERVIEW OF ISSUES CREATED BY FAC

In response to Defendants' motion to dismiss the Initial Complaint, Plaintiff amended the Initial Complaint to include sixteen claims, removing three of his original fourteen claims and

---

[3] The Initial Complaint is annexed hereto as Ex. "B" to the Lemonedes Dec. On April 12, 2018, the court endorsed the Parties' Stipulation to extend Moving Defendants time to answer or otherwise respond to the Initial Complaint up to, and including, May 23, 2018. [Docket No. 12].

[4] On June 4, 2018, Plaintiff submitted a letter motion requesting time to file an amended complaint [Docket No. 19], which the Court granted on June 5, 2018. [Docket No. 20].

[5] On July 5, 2018, the Court so-ordered the Parties' Stipulation to extend the Moving Defendants' time to answer or otherwise respond to the FAC up to and including August 1, 2018. [Docket No. 30].

2

adding five new claims.[6]  Plaintiff also added six new defendants in the FAC.[7]  The main difference

between the Initial Complaint and the FAC is the addition of three new paragraphs of allegations,

which are repeated verbatim eight times throughout the FAC.  The new paragraphs are a

transparent effort to repackage Plaintiff's pleading to fit into the mold of *Doe v. Columbia*, 831

F.3d 46 (2d Cir. 2016) by claiming that Defendants felt pressure to accept the allegations of sexual

misconduct against Plaintiff because of pressure from the comedy community.  Plaintiff has failed,

however, to allege facts to support his conclusion.  He cannot rectify his insufficient pleading by

slapping the same three conclusory paragraphs into eight of his sixteen claims.  Plaintiff had a

chance to revise his Initial Complaint based on Moving Defendants initial motion to dismiss.  He

has added new players and new allegations, but the FAC does *not* alter the fatal flaws that existed

in the initial complaint.  This is because Plaintiff cannot state a claim for relief.  Instead, the FAC

only muddles the basis for Plaintiff's already defective claims by asserting various conclusory

allegations, without any factual support, and deleting a specific factual assertion that undermines

Plaintiff's educational claims.

      Plaintiff is *not* protected by Title VII or Title IX because he was neither an employee nor

a student of Defendants and because neither the New York Entities nor the California Entities[8]

---

[6] Plaintiff withdrew (1) his claim under the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, ("Clery Act"), for which no private right of action exists; (2) his claim for negligence; and (3) his claim for negligence *per se*.  Plaintiff added, however, (1) a fourth claim under Title IX for "erroneous outcome"; (2) aiding and abetting under the New York State Human Rights Law ("NYSHRL"); (3) aiding and abetting under the New York City Human Rights Law ("NYCHRL"); (4) retaliation under the NYCHRL; and (5) hostile work environment under the NYCHRL.

[7] Plaintiff has added as Defendants: (1) Upright Citizens Brigade Training Center, LLC; (2) Upright Citizens Brigade Training Center LA, LLC; (3) UCB Inner Sanctum, LLC; (4) UCBTLA, LLC; (5) 5419 Sunset Properties, LLC; and (6) Susan Hale.

[8] Moving Defendants' counsel does not represent the newly added defendants at this time, including the NY Training Center, California Entities, Ms. Hale, and/or 5419 Sunset.

were direct or indirect recipients of Federal financial assistance.  Moreover, Plaintiff's tort-based allegations are either barred by the Worker's Compensation Law or are still insufficiently pled.

Plaintiff essentially added conclusory assertions: (1) that Defendants were biased and were influenced by criticisms circulating in the press that UCB turned a blind eye to charges of sexual assault; (2) this bias motivated UCB to accept females' accusations and reject the male's side of the story; and (3) the Individual Defendants adopted a bias stance to avoid public criticism.[9]  In a failed attempt to support these conclusory arguments, Plaintiff attaches as Exhibit B to the FAC a news report dated August 18, 2016, nearly *a week after* Plaintiff was banned from UCB.  The report reflects the media coverage of the incident, but suggests *nothing* about UCB receiving criticism *prior* to its decision to ban Plaintiff.  Moreover, after recognizing that Defendants' motion to dismiss the Initial Complaint demonstrated that 5419 Sunset, *not UCB*, received federal funding [Docket Nos. 15-17], Plaintiff chose to ignore reality and assert baldly false allegations that the New York Entities and California Entities received Federal financial assistance through 5419 Sunset and that 5419 Sunset was a "dummy entity" to evade Title IX regulations.  *See* FAC ¶¶ 101, 103.  Significantly, there is absolutely no factual support for these conclusory allegations.

The FAC remarkably specifically deletes the factual assertion that the "believe all women" movement within the comedy community "followed" the UCB decision to ban Plaintiff, and now seeks to alter that time-line to assert that this movement began before the decision to ban him and somehow influenced the UCB decision regarding Plaintiff.  Compare Initial Complaint ¶ 70, with FAC ¶¶ 66-67.  The very evidence cited to support the false time line, however, undermines these

---

[9] Plaintiff repeats the same three new paragraphs in 8 of his 16 claims.  *See* FAC, Third Claim (¶¶ 139, 140, 141); Fourth Claim (¶¶ 147, 148, 149); Fifth Claim (¶¶ 165, 166, 167; Sixth Claim (¶¶ 172, 173, 174); Seventh Claim (¶¶ 179, 180, 181); Ninth Claim (¶¶ 197, 198, 199); Twelfth Claim (¶¶ 217, 218, 219); and Thirteenth Claim (¶¶ 225, 226, 227) (referred to hereinafter as the "Alleged Bias Paragraphs").

4

revisionist attempts.  The article relied upon by Plaintiff is dated *after* the decision and in no way suggests the so-called believe all women movement affected the decision to ban Plaintiff.

Plaintiff's misguided lawsuit is motivated by his emotional response to his tarnished reputation and bruised ego and grasps at straws to assert claims where none exists.  In response to Defendants' initial motion to dismiss, Plaintiff added nothing to the FAC that would sustain his claims and instead seeks to twist and confuse his story.  However, the facts, even as plead after Plaintiff's second bite at the apple, fail to state a claim for relief.  Pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) and 12(b)(1), Plaintiff's FAC should be dismissed in its entirety.

**STATEMENT OF FACTS**[10]

**The Upright Citizens Brigade Theatre**

Plaintiff does **not** allege he is one of UCB's full-time employees, including theatre technicians, bookkeepers, human resources staff or venue managers.  Instead, Plaintiff alleges he was an "employee" of UCB because he "performed" at a UCB theater.  UCB is a New York limited liability company doing business as Upright Citizens Brigade Theatre, which operates two improvisational and sketch comedy theatres.  *See* Declaration of James Lemonedes dated August 1, 2018 ("Lemonedes Dec."), Ex. "C," Alex Sidtis Affidavit ("Sidtis Aff.")  ¶ 1.  The theatre involved in this case is located at 307 West 26th Street, New York, NY, 10001, in the Chelsea neighborhood of New York (the "Chelsea Theatre").  *See* Sidtis Aff. ¶¶ 2-3.  UCB is a space where young comedians come to develop their performance skills.  *See* FAC ¶ 42.  The theatre is similar

---

[10] For purposes of this Motion to Dismiss as to FRCP 12(b)(6) only, the material factual allegations set forth in the FAC are assumed true and will form the basis for the statement of facts herein.  *See  DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

5

to an open night mic at a bar, which allows novice performers a platform to grow.  *See* FAC ¶ 40.

These performers are not employees, just like a member of a library is not a librarian.

The NY Training Center is a *separate and distinct* limited liability company, which operates an improvisational and sketch comedy training center in New York.  *Id.* ¶ 11 and Sidtis Aff. ¶ 4.  UCB and the NY Training Center foster a thriving performing arts community in New York, where Plaintiff was a student encouraged and supported in pursuing comedy.  *See* FAC ¶¶ 42, 49.  Plaintiff wishes to re-enter that community where he claims he "never had any issues with anyone" and was a "beloved figure."  *See* FAC ¶ 58.

UCB's name is affiliated with the California Entities, which Plaintiff has also named as Defendants in the FAC.  The California Entities promote and support improvisational and sketch comedy in Los Angeles.  The CA Training Center is an improvisational and sketch comedy training center. The Inner Sanctum is a café and performance space and UCBTLA is an improvisational and sketch comedy theatre.  *See* Sidtis Aff. ¶ 6 and FAC ¶¶ 16, 17.  Plaintiff does not allege that he trained at the CA Training Center or performed at the UCBTLA's theatre or event ate at the café. The California Entities lease a building located at 5419 Sunset Boulevard in Los Angeles, which is owned by 5419 Sunset.  FAC ¶ 20; Sidtis Aff. ¶ 8.  In 2012, 5419 Sunset received a small business loan from the Federal Government.  FAC ¶ 24; Sidtis Aff. ¶ 10.  5419 Sunset secured the loan to rebuild the inside of the theatre located on its property and originally received the loan funding on May 13, 2015.  Sidtis Aff. ¶ 10.

**Training Center Courses**

The NY Training Center offers Improvisation and Sketch Comedy Classes.  Sidtis Aff. ¶ 4.  Certain NY Training Center students are invited to audition for house teams, known as the "Harold" and "Maude" teams.  *See* FAC ¶¶ 43-44.  Students at the NY Training Center generally

6

covet opportunities to perform in "house sponsored groups" at a UCB theater. *Id.* Significantly, Plaintiff fails to allege that such student-performers receive any salary or monetary compensation for the privilege of appearing at a UCB theatre in order to increase their own marketability.

**Plaintiff's Education and Enrollment in Courses at the Training Center**

In the summer of 2006, Plaintiff was attending Nassau Community College ("Nassau CC") as a full-time student when he enrolled in his first course at the NY Training Center, Improvisation 101. *Id.* ¶ 40. Plaintiff alleges that Defendant Shannon Patricia O'Neill, who is the current artistic director and *was* the course registrar in 2006 when Plaintiff registered for classes at the Training Center, "mocked" him for having his parents pay for his classes. *Id.* ¶ 57.

In the fall of 2006, Plaintiff did not take any classes at the NY Training Center because he moved out of state and transferred from Nassau CC to Northeastern University in Boston, Massachusetts. *Id.* ¶ 41. Plaintiff left that University after one semester and returned to New York purportedly to pursue a career in performing.[11] *Id.* ¶ 41. He enrolled in another NY Training Center course, Improvisation 201. *Id.* Over the next five years, 2006 to 2010, Plaintiff took another twelve (12) courses at the NY Training Center. *Id.* ¶ 42. By 2010, Plaintiff completed both the Improvisation and Sketch curriculums, which are the only two curricula offered at the NY Training Center. *Id.* ¶ 42. During his time as a student, Plaintiff auditioned for and joined two teams, the Harold Team and the Maude team. *Id.* ¶¶ 43-44. He remained on at least one team until 2010, when he began to focus on his stand-up career. *Id.* ¶¶ 46, 49.

---

[11] From November 2007 to August 2008, Plaintiff was an intern at UCB, and alleges that he helped set up and clean the theatre prior to and after performances, accepted deliveries and deposited cash in the bank. *See id.* ¶ 47. In exchange for his work as an intern, Plaintiff received two free courses at the Training Center. *Id.* ¶ 48.

7

**Plaintiff's Performance Career**

Beginning in 2010, Plaintiff began to focus on his stand-up career in New York. *Id.* ¶ 49. From 2010 to 2016, Plaintiff does ***not*** allege that he was a student of UCB nor the NY Training Center, ***nor*** does he allege that he received any ***monetary*** compensation from Defendants. *Id.* ¶¶ 48, 53. UCB and the NY Training Center do not teach stand-up comedy, their focus is improvisational and sketch comedy. *See* FAC ¶7. While Plaintiff attempted to build his stand-up career, he admits receiving guidance and support from his former NY Training Center teachers. *Id.* ¶ 49. Glaringly absent from his FAC, however, is ***any* allegation that Plaintiff was taking classes or earning wages from the New York Entities or the California Entities from 2010 to 2016***. Plaintiff alleges that in August 2016 he was "banned from almost every comedy venue that he had worked with," which demonstrates that he was performing at other non-UCB venues during and prior to August 2016.[12] *See* FAC ¶ 77. After 2010, Plaintiff was never again a student at or an intern with Defendants. Plaintiff concedes that his connection to Defendants after 2010 was limited to:

1. From 2010 to 2013, assisting NY Training Center teachers and performers by participating in performances when needed. *See* FAC ¶ 49.
2. From 2013 to 2016, hosting a monthly stand-up series at UCB, which provided him an opportunity to work out new material and develop his stand-up act. *Id.* ¶ 49. He does not allege that he was hired to host these monthly events, nor does he allege he received any monetary compensation. In exchange for hosting the series, Plaintiff received free publicity and exposure to professional opportunities, and a chance to develop his stand-up act, drink tickets and comp tickets to the show. *Id.* ¶ 53.
3. September 2014, UCB TourCo[13] recommended Plaintiff to host a night of stand-up comedy for a private client. *Id.* ¶ 51. Plaintiff does not allege he was hired for the gig.

---

[12] As concerns his performance at non-UCB venues, Plaintiff alleges he was the host of a show "Slow Dance," at an East Village venue, *see* FAC ¶ 77, and that TD Ameritrade hired him to perform an online commercial, *id.* ¶ 78.

[13] UCB TourCo is defined in the Complaint as "a branch of UCB." *See* FAC ¶ 51.

**The Rape Accusations Against Plaintiff.**

On August 9, 2016, UCB emailed Plaintiff and requested that he come to UCB's main offices in Midtown Manhattan. *Id.* ¶ 59. On August 11, 2016, Plaintiff met with Ms. O'Neill and Mr. Sidtis at UCB's offices. *Id.* During this meeting, UCB advised Plaintiff for the first time that: several people had accused him of rape, UCB conducted an investigation, and UCB decided to ban Plaintiff from performing at UCB (the "Aug. 2016 Meeting"). *Id.* ¶¶ 60-62. Two days later, Plaintiff alleges that "someone" posted the news that Plaintiff was banned from UCB. *Id.* ¶ 68. Plaintiff alleges that a UCB performer "generated a fake press release pretending to be a spokesperson for UCB," advising that Plaintiff "was banned for raping multiple women." *Id.* ¶ 69. Plaintiff admits that in response to the fake release, UCB sent a cease and desist letter to the person who allegedly posted the news. *Id.* ¶ 71. Plaintiff alleges that his roommates, who were involved in the UCB community, demanded that he move out, and that, along with being publicly labeled a rapist, drove him to depression. *Id.* ¶¶ 79, 83.

It has been nearly a decade since Plaintiff completed the two curricula offered at the NY Training Center: improvisation and sketch. *See* FAC ¶ 42. At the time he was banned from UCB, August 2016, he was a performer and a former student, who used the UCB as a platform to promote his career outside UCB. *See* FAC ¶ 116. Plaintiff claims that *after* he was banned from UCB, a movement in the comedy community started, which he claims was called "believe all women." *Id.* ¶ 91; Ex. B.

**LEGAL ARGUMENT**

## LEGAL STANDARD UNDER FRCP 12(B)(6)

To survive a motion to dismiss under FRCP 12(b)(6), the facts set forth in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atlantic Corp. v.*

9

*Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  Conclusory statements fail to meet the pleading standard set forth in *Iqbal* and *Twombly*.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## I.   PLAINTIFF'S EMPLOYMENT CLAIMS FAIL AS A MATTER OF LAW

Plaintiff's claims six, seven, and nine through sixteen for gender discrimination, hostile work environment, and unlawful employment practices are brought pursuant to Title VII, the NYSHRL and the NYCHRL.  Plaintiff's claims under these statutes, however, fail as a matter of law because he was ***not*** an "employee" of Defendants as defined under Title VII, NYSHRL and NYCHRL. [14/15]  Both Title VII and NYSHRL "are subject to the same standard" and Plaintiff fails to allege facts to establish claims under either law.  *Salazar v. Ferrara Bros. Bldg. Materials Corp.*, No. 13–CV–3038, 2015 WL 1535698, at *5 (E.D.N.Y. Apr. 6, 2015).  In considering this motion it is important to observe that the fatal flaws concerning Plaintiff's employment-based claims were exposed in Defendants' initial motion to dismiss [Docket Nos. 15-17], and Plaintiff has been unable to recite any facts that ameliorate these flaws.

### A.   Plaintiff Fails to Allege Facts Sufficient to Establish He Was An Employee Protected by Title VII or NYSHRL (Claim Nos. 6, 9, 10, 11, 12, and 13)

In evaluating whether an employment relationship exists under Title VII and NYSHRL, the Second Circuit has explained that ***compensation is the threshold issue***.  *O'Connor v. Davis*,

---

[14] NYCHRL uses a nearly identical test to NYSHRL and Title VII in determining whether an employment relationship exists.  *See Conde v. Sisley Cosmetics USA, Inc.*, No. 11-cv-4010, 2012 WL 1883508, at *2 (S.D.N.Y. May 23, 2012) (finding remuneration is the threshold question under NYCHRL in determining whether someone is an employee).

[15] Defendants acknowledge that interns are protected under State and City laws (based on the 2014 amendments). *See* N.Y. Exec. Law § 296-c; New York City, N.Y. Code § 8-107; *see also Hughes v. Twenty-First Century Fox, Inc.*, No. 304 F. Supp. 3d 429, 445 (S.D.N.Y. Apr. 24, 2018).  This, however, is inapplicable, as Plaintiff **does not** allege he was an intern at the relevant time – during the Aug. 2016 Meeting.

10

126 F.3d 112 (2d Cir. 1997) (holding that an unpaid intern is not an employee under Title VII); *Sweeney v. Bd. of Educ. of Rocky Point Union Free Sch. Dist.*, 491 N.Y.S.2d 455 (2d Dep't 1985) (holding that the NYSHRL did not extend protection to unpaid school volunteer). "Where no financial benefit is obtained by the purported employee from the employer, no plausible employment relationship of any sort can be said to exist." *Gulino v. New York State Educ. Dept.*, 460 F.3d 361 (2d Cir. 2006)(quoting *O'Connor*, 126 F.3d at 115-16). Only once the threshold issue is established – that a financial benefit exists between two parties – does the analysis turn to the multi-factor common law agency test set forth by the Supreme Court in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), to determine whether an employment relationship exists. *O'Connor v. Davis*, 126 F.3d 112 (2d Cir. 1997).[16] Because Plaintiff does not assert that he received remuneration (as he unable to assert), he has failed to plead facts that satisfy the threshold issue in asserting an employment relationship and this Court need not apply the *Reid* test. Nevertheless, even applying the *Reid* test, Plaintiff does *not* allege facts to plead any actionable claim under the applicable statutes.

### 1.    Plaintiff Received No Remuneration from UCB

Plaintiff did not receive direct or indirect remuneration from UCB. Direct remuneration is salary or wages. *Id.* Indirect remuneration could be significant financial benefits such as employee benefits, health insurance, vacation or sick pay. *See, e.g., Haavistola v. Cmty Fire Co.*, 6 F.3d 211 (4th Cir. 1993) (employment relationship existed where firefighter received disability insurance,

---

[16] The NYCHRL applies a nearly identical test to the one applied in *Reid*, asking whether the employer: "1) had the power of the selection of the employee; 2) paid the employee; 3) had the power of dismissal over the employee; and 4) had the power to control the employee's conduct ." *Melendez v. Int'l Serv. Sys., Inc.*, No. 97-cv-8051, 1999 WL 187071, at *9 (S.D.N.Y. Apr. 6, 1999) (citations omitted) (applying test to New York City Human Rights Law). As under Title VII and NYSHRL, control is the paramount factor in this test. *Id.* at *9.

11

retirement pension, survivors' benefits, group life insurance and scholarships for dependents upon death).

*After* Plaintiff was a student and intern,[17] Plaintiff moved away from the UCB community to pursue his stand-up career from 2010 to 2013. *See* FAC ¶ 49. In 2013, Plaintiff alleges UCB invited him to host a monthly stand-up series at UCB's Chelsea Theatre. *Id.* Plaintiff further alleges that performers promote classes at performances.[18] *See* FAC ¶¶ 45, 55. During the period in question, Plaintiff hosted a stand-up series, UCB does not offer classes in stand-up, as such, it is clear the show was intended to promote the performers, not UCB. *See* FAC ¶ 7.

Similar to the intern in *Wang v. Phoenix Satellite Television US, Inc.*, 976 F. Supp. 2d 527, 537 (S.D.N.Y. 2013), when Plaintiff hosted the stand-up series, he did not enter into a mutually beneficial economic relationship with UCB. *See* FAC ¶ 53. Plaintiff does not allege that UCB paid him a salary or wages. Instead, Plaintiff alleges that he enjoyed the use of UCB's venue and equipment while hosting the show and claims that this somehow made him an "employee." *Id.* ¶ 56. The use of UCB's venue and equipment, however, does not distinguish him from someone in the public who is given the opportunity to use the space, or a volunteer, and not does create an employment relationship. *See Conde v. Sisley Cosmetics USA, Inc.*, No. 11-CV-4010, 2012 WL 1883508, at *2 (S.D.N.Y. May 23, 2012) (granting motion to dismiss finding a Sisley Cosmetics

---

[17] During the relevant timeframe, Plaintiff was neither a student nor an intern. *See* FAC ¶ 2. Plaintiff alleges he took classes at UCB from 2006 to 2010. *See* FAC ¶ 42. Plaintiff also claims he was an intern, from November 2007 to August 2008, and in exchange received two free courses. *See* FAC ¶ 48. Title VII protections do not extend to unpaid interns. *See Wang v. Phoenix Satellite Television US, Inc.*, 976 F. Supp. 2d 527, 537 (S.D.N.Y. 2013) (dismissing plaintiff's complaint because no mutually beneficial economic relationship existed between an unpaid intern and the company hosting her internship).

[18] Glaringly, Plaintiff does *not* allege that UCB requires performers to promote UCB classes or penalizes performers if they chose not to promote classes.

vendor who worked at the Sisley cosmetics counter in Saks, was interviewed by Saks, monitored by Saks' employees, and used Saks' cash registers was not an employee of Saks).

Plaintiff alleges that in exchange for hosting a monthly show, he would receive free publicity, drink tickets for himself and complimentary show tickets for friends. *See* FAC ¶ 53. However, none of these perks are sufficient to create an employment relationship. Thus, Plaintiff did not receive any of the benefits that are typically associated with indirect remuneration sufficient to create an employment relationship. *See York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) (affirming dismissal of Title VII claims where plaintiff volunteered and, in return, received clerical support and tax deductions because there can be no employment relationship absent financial benefit). Significantly, Plaintiff *still does not allege* that he received employee benefits, health insurance, vacation or sick pay for his "work" at UCB. Instead, he received the type of rewards that a volunteer might receive. As such, he fails to assert facts that can support any claim under Title VII and NYSHRL.

### 2.     Even if this Court finds Plaintiff Received Remuneration, He is not an Employee Because His Allegations Fail the "Reid" Test

Even if this Court determines that drink tickets and complimentary tickets for friends when performing at a monthly show is sufficient remuneration to satisfy the threshold issue in evaluating an employment relationship, Plaintiff must still satisfy the multi-factor common law agency test under *Reid* to be considered an employee. *See O'Connor*, 126 F.3d 112, citing *Reid*, 490 U.S. 730.[19]

---

[19] When applying the *Reid* test courts "must disregard those factors that, in light of the facts of a particular case are irrelevant or of indeterminate weight." *See Davis v. New York Sports Officials' Council*, No. 09-CV-0514, 2010 WL 3909688, at *7 (N.D.N.Y. Sept. 30, 2010).

13

The *Reid* analysis[20] requires this Court to consider the totality of the circumstances, but the most important factor is control over one's work.  *See Lerohl v. Friends of Minnesota Sinfonia*, 322 F.3d 486 (8th Cir. 2003) (dismissing the case and finding musicians in to be independent contractors).  Moving Defendants are unaware of any case applying the *Reid* factors to comedians or improvisation performers, but courts have evaluated plaintiffs in analogous professions such as musicians, actors and artists.

For example, the Eighth Circuit held that musicians, who played with the *Friends of Minnesota Sinfonia*, were <u>not</u> employees because they controlled their own work.  *Id.*  In its decision, the *Lerohl* Court considered that: the orchestra musicians also performed for other organizations and performed solo; they were able to opt out of performances; they were paid per performance; and their employer allegedly did not withhold income taxes, health insurance, workers' compensation insurance or other fringe benefits (except contributing an agreed percentage of the performers union scale payments to the musicians union pension fund).  *Id.*  The *Lerohl* Court was not persuaded by plaintiffs' argument that the director controlled their work because the Court found that work by independent contractors is often performed "to the exacting specifications of the hiring party."  *Id.*

Other courts have made similar determinations about actors, opera singers, artists and sculptors.  *See Albert-Velez v. Corporacion de Puerto Rico Para La Difusion Publica*, 361 F.3d 1

---

[20] "[1] the hiring party's right to control the manner and means by which the product is accomplished . . . [;][2] the skill required; [3] the source of the instrumentalities and tools; [4] the location of the work; [5] the duration of the relationship between the parties; [6] whether the hiring party has the right to assign additional projects to the hired party; [7] the extent of the hired party's discretion over when and how long to work; [8] the method of payment; [9] the hiring party's role in hiring and paying assistants; [10] whether the work is part of the regular business of the hiring party; [11] whether the hiring party is in business; [12] the provision of employee benefits; and [13] the tax treatment of the hired party."  *Cosgriff v. Valdese Weavers LLC*, No. 09-cv-5234, 2012 WL 1071497, at *5 (S.D.N.Y. Mar. 30, 2012)(quoting *Reid*, 490 U.S. at 751-52).

14

(1st Cir. 2004) (hostess of a TV show found not to be an employee because she had control over her performance); *Spackman v. District of Columbia Dept. of Employment Servs.*, 590 A.2d 515 (D.C. Cir. 1991) (opera contracts with people necessary to create the opera, opera singer retained artistic integrity as an artist); *In re Metropolitan Opera Ass'n, Inc. and Operatic Artists of America*, No. 2-RC-21699, 1999 WL 112550 (NLRB Feb. 26, 1999) (solo artists engaged on a per performance basis were not employees); *Reid*, 490 U.S. 730 (finding that a sculptor was an independent contractor rather than an employee).

By its very nature a comedian's work is that of an independent artist who controls his/her performance. Notably, ***Plaintiff alleges he controlled the monthly stand-up show he hosted at UCB, "entitled 'Midnight Stand-Up.'"*** *See* FAC ¶¶ 49-50. Moreover, UCB's focus is sketch and improvisational comedy, not stand-up. *See* FAC ¶ 7. Plaintiff alleges that he "produced" and "hosted" a monthly stand-up series for UCB. *See* FAC ¶ 49. Plaintiff alleges that he "booked new comics and famous celebrities" and "sold out almost every performance." *Id.* ¶ 50. Plaintiff also alleges that when UCB advised him that he was banned from UCB, they told him that "he could take his show, Midnight Stand Up, to any other theater," which demonstrates that UCB felt he owned the show. *See* FAC ¶ 62. Although Plaintiff alleges that he was "supervised" by UCB while on its premises, *see* FAC ¶ 56, this vague conclusory allegation is not enough to establish that UCB had the kind of control giving rise to an employment relationship. *See Conde*, 2012 WL 1883508, at *3 (finding allegations that plaintiff attended meetings with putative employer, was told how to dress, was monitored by putative employer, and was given a warning that she would be "terminated" if she did not follow dress code, were not enough to establish an employment relationship); *see also Lerohl, supra*, 322 F.3d at 490 ("Work by independent contractors is often, if not typically, performed to the exacting specifications of the hiring party."). Underscoring this

15

conclusion is that Plaintiff was not constrained to only performing at UCB, he could perform elsewhere and he did. *See* FAC ¶¶ 77-78. Plaintiff never alleges that UCB provided him with health insurance or other fringe benefits and did not make pension contributions for him. Thus, Plaintiff has failed to allege facts sufficient to establish an employment relationship under *Reid*.

**B.**   **Plaintiff Fails to Allege Sufficient Facts to Support a Claim of Gender Discrimination Under Title VII or NYSHRL (Claim Nos. 9 and 13)**

Employment discrimination cases under Title VII and NYSHRL are subject to burden-shifting framework set forth in *McDonnell Douglas v. Green,* 411 U.S. 792 (1973). *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 82–83 (2d Cir. 2015). However, the Second Circuit has held "[a]t the pleadings stage of the litigation, [plaintiff is] not required to plead a *prima facie* case of discrimination as contemplated by the *McDonnell Douglas* framework." *Id.* at 84. Rather, "[u]nder *Iqbal* and *Twombly* . . . in an employment discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex or national origin was the motivating factor." *Gomez v. Stonybrook Univ.,* No. 14-CV-7219, 2016 WL 1039539, at *4 (E.D.N.Y. Jan. 28, 2016), report and rec. adopted, No. 14-CV-7219, 2016 WL 1045536 (E.D.N.Y. Mar. 15, 2016). Even under the lenient pleading requirements, Plaintiff has failed to plea any actionable employment claim**.**

**1.**   **Plaintiff Fails to Allege Facts That Give Rise to an Inference of Discrimination (Claim Nos. 9 and 13)**

Plaintiff alleges in conclusory fashion that Defendants had a biased attitude, he is male, and UCB terminated him from his employment, but ***fails to allege any specific facts*** to suggest that UCB's decision to ban Plaintiff was motivated by gender bias. Plaintiff alleges that UCB felt pressure from the comedy community and public to accept females' accusations of sexual assault and reject males' side of the story. *See* FAC ¶¶ 197-199, 225-227. Plaintiff claims that UCB's

16

investigation into his alleged sexual misconduct was unfair. *Id.* He also attaches a new article that discusses the comedy community's *reaction* to Plaintiff being banned. *See* FAC Ex. B. The August 18, 2016 news report indicates that after Plaintiff was banned, people in the comedy community had conflicting views about UCB's decision to ban Plaintiff. *Id.* Plaintiff seems to imply that the news report is evidence that UCB had a biased attitude towards men. *See* FAC ¶¶ 197-199, 225-227. These allegations, without more, do not give rise to a claim for gender discrimination under Title VII or NYSHRL. "[N]aked assertions of race discrimination ... without any specific [factual] allegation of a causal link between the defendants' conduct and the plaintiff's [protected characteristic] [are] too conclusory to withstand a motion to dismiss." *Sanders-Peay v. NYC Dep't of Educ.*, No. 14-CV-4534, 2014 WL 6473507, at *3 (E.D.N.Y. Nov. 18, 2014). Rather, Plaintiff must allege facts to support an inference of discrimination that his gender was a motivating factor in the decision to "terminate" him.[21]

In order to assert facts to establish the required causal connection a plaintiff may allege "actions or remarks made by decision makers that could be viewed as reflecting discriminatory animus." *LaSalle v. City of N.Y.*, No. 13–CV–5109, 2015 WL 1442376, at *2 (S.D.N.Y. Mar. 30, 2015). Plaintiff, however, has not done so here. In a failed attempt to establish the required causal connection Plaintiff claims Ms. O'Neill "mocked [him] for having his parents pay for his classes" when he first registered at UCB. FAC ¶ 57. Without any further basis, Plaintiff next alleges that he "believes that [Ms.] O'Neill ... labeled [him] a 'privileged white man' and decided that he must

---

[21]   As will be established below, a similar analysis is applied in considering a claim under Title IX. *See*, fn 30, *and accompanying text below.* As demonstrated below, Plaintiff has failed to allege sufficient facts to assert a plausible claim of education discrimination based upon gender under Title IX. Indeed, Plaintiff's allegations regarding the "believe all women" movement could *not support an inference of discrimination*, because Plaintiff admits this movement occurred *after* the complained of conduct (the Aug. 2016 Meeting) occurred. *See* FAC, Ex. B. This same analysis is applicable in considering Plaintiff's Title VII claim. and is incorporated by reference herein.

17

be guilty." *Id.* ¶ 91.  Indisputably, Plaintiff's "belief," without facts to support such a belief, aside from one decade-old comment – that is devoid of any reference to gender – and a news article describing *reactions* to Plaintiff being banned from UCB is insufficient to establish an inference of discrimination.

Plaintiff also alleges that the phrase "'Aaron Glaser is a rapist' went viral across the internet." FAC ¶ 72.  The allegation in itself demonstrates that any adverse attention that Plaintiff allegedly received was based on his alleged actions *not his gender*.  *See Nungesser v. Columbia, et al.*, 169 F. Supp. 3d 353 (S.D.N.Y 2016) (finding that plaintiff was not being harassed because of his gender, but because he was accused of sexual misconduct which is not gender based, because both men and women can be accused of sexual misconduct).  Moreover, Plaintiff fails to connect the allegations of attention on the internet to Defendants.

Plaintiff also fails to plead facts that Defendants treated him less favorably than other similarly situated females.  *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 248–49 (E.D.N.Y. 2015).  While Plaintiff claims that Defendants demonstrated bias by accepting "the females' accusations of sexual assault and rejecting the male's side of the story," FAC ¶ 198, Plaintiff cannot point to a situation where males accused a female of sexual assault and Defendants' came to the female's defense.  Moreover, Plaintiff does not allege examples of instances where females were believed over males.  Plaintiff merely alleges that Defendants predetermined the results of its investigation because his accusers were female, *see* FAC ¶ 190, he also alleges that UCB's Managing Director, Mr. Sidtis, *see* FAC ¶ ¶ 9, 27, who is male, investigated the allegations and decided that Plaintiff should be banned from UCB's facilities.  *Id.* ¶ 62.  In evaluating Plaintiff's allegations of discrimination the Court should apply the inference *against* discriminatory intent when the decision maker is in the same protected class as plaintiff.  *See Fosen v. The New York Times*, No.

18

03-CV-3785, 2006 WL 2927611, at *5 (S.D.N.Y. Oct. 11, 2006); *see also Connell v. Consol. Edison Co. of N.Y., Inc.*, 109 F. Supp. 2d 202, 209 (S.D.N.Y. 2000) (noting inference against discriminatory intent when decision-makers are in same protected class as plaintiff).

### 2. Plaintiff Fails to State a Hostile Work Environment Claim (Claim Nos. 10 and 12)

In order to establish an actionable hostile work environment claim Plaintiff must allege, "'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Shultz v. Shearith*, 867 F.3d 298, 309 (2d Cir. 2017)(quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014)).

Plaintiff alleges that for ten years he "was a beloved figure" of UCB and he "never had any issues with anyone." FAC ¶ 58. Then suddenly, without any warning, everything changed during the Aug. 2016 Meeting when he was banned from UCB facilities. Plaintiff claims his "Monthly Stand-Up" show ran from 2013 until the Aug. 2016 Meeting. *See* FAC ¶ 49. Plaintiff does ***not*** allege that he had ***any negative experiences*** at UCB or the NY Training Center ***prior*** to the Aug. 2016 Meeting.[22] In fact, Plaintiff claimed he first learned of the allegations against him and the results of the investigation at the Aug. 2016 Meeting. *See* FAC ¶ 61. Plainly, Plaintiff's own characterization of his experience at UCB contradicts any claim of hostile work environment. In contrast to his own allegations, Plaintiff attempts to support his hostile work environment claim by conclusively alleging that his work environment was "humiliating and embarrassing," which

---

[22] Even if Plaintiff was considered an employee, it is remarkably inconsistent to assert that he was subjected to a hostile work environment at UCB, when he was the sole host of a monthly stand-up show that he produced and booked by himself. *See* FAC ¶ 49.

19

was "severe and pervasive," because of the "flawed investigation." *Id.* ¶¶ 204- 206. Plaintiff also claims that the New York Entities began creating a hostile work environment that "included, among other things, a negligent investigation and ultimate termination and discipline of Plaintiff Glaser because of his gender." *Id.* ¶¶ 115. Plaintiff also claims that in the course of performing his duties at UCB he was "forced to endure a hostile work environment" and that such environment endured from June 2016 to August 2016. FAC ¶ 114-115. Even these allegations, however, rest upon Plaintiff's dissatisfaction with the investigation into his alleged misconduct or bald assertions, as Plaintiff asserts he was "discriminated based on his gender by [UCB] during its flawed investigation." *Id.* ¶ 205. Yet, Plaintiff does *not* explain what *facts*, other than being told he was banned from UCB, created a "hostile work environment." These conclusory allegations alone are insufficient to state a claim under the law. *See Chick v. Cty. of Suffolk*, 546 Fed. Appx. 58 (2d Cir. 2013) (summary order) (affirming the district court's grant of the defendant's motion to dismiss a claim for hostile work environment where the plaintiff could point only to two remote, non-specific, and conclusory incidents).

It is implausible for Plaintiff to claim the he was subjected to a hostile work environment allegedly created by an investigation of which he was unaware until the point that he was banned from the UCB facilities. *Id.* ¶ 61. Moreover because he was allegedly "terminated" at the Aug. 2016 Meeting – meaning he could no longer attend any events at UCB – by definition, he could no longer be exposed to what he conclusively alleges was a hostile work environment. Accordingly, Plaintiff has failed to allege any circumstances that give rise to a claim for hostile work environment.

### 3.   Plaintiff's Claim for Retaliation Fails as He does not Allege that He Engaged in Protected Activity (Claim No. 11)

Plaintiff's claim for retaliation is deficient on its face because he fails to allege that he engaged in any protected activity. Plaintiff claims he was retaliated against "because of his gender." FAC ¶ 209. "A prima facie case for retaliation under Title VII and NYSHRL[23] requires: (1) that employee was engaged in a protected activity, (2) that defendants knew of the protected activity, (3) that employer took adverse employment actions against employee, and (4) a causal connection between the protected activity and the adverse action." *Soloviev,* 104 F. Supp. 3d 232 citing 42 U.S.C.A. § 2000e *et seq.*; N.Y. McKinney's Executive Law § 290 *et seq.*

Plaintiff must allege either that he opposed a practice that is discriminatory and unlawful or that he "made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing," in connection with an alleged violation of law. *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015). Plaintiff, however, *fails to allege any facts that he engaged in protected activity.* Instead, Plaintiff merely states that he was male and "terminated . . . because of his gender." FAC ¶ 209. This simply does not suffice; he does not allege that he opposed any unlawful practice or assisted in an investigation against UCB prior to his "termination." Plaintiff does not allege that he complained about the investigation nor does he allege that he even knew about the investigation *before* he was banned from UCB. Indeed, Plaintiff could not have complained that UCB's investigation was unlawful *before* he knew it existed. Plaintiff's claim for retaliation must fail as a matter of law.

---

[23] Similarly, under the NYCHRL, a claim for retaliation requires a showing of a protected activity. *See* Administrative Code of City of N.Y. § 8–107[7]; *see also Kassapian v. City of New York*, 155 A.D.3d 851, 854 (2d Dep't 2017), citing *Brightman v. Prison Health Serv., Inc.,* 108 A.D.3d 739, 739 (2d Dep't 2013). Thus, Plaintiff's claim number 15 for retaliation under the NYCHRL must also fail.

### C.      Plaintiff's Individual Liability Claims Must Fail (Claim Nos. 6 and 7)

Individual liability under the NYSHRL and the NYCHRL "are subject to the same analysis." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 450-51 (S.D.N.Y. 2018) citing N.Y.C. Admin. Code § 8–107(1)(a). Thus, Plaintiff's NYCHRL and NYSHRL claims alleging individual liability fail for the same reasons. "Individual liability under [the NYSHRL] lies where a defendant actually participates in the conduct giving rise to discrimination, but is limited to individuals with ownership interest or supervisors, who themselves, have the authority to hire and fire employees." *Hughes,* 304 F. Supp. 3d at 450 (quoting *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 420 (E.D.N.Y. 2010) (citations omitted)).

In support of Plaintiff's aiding and abetting claims, he alleges that Ms. O'Neill, Mr. Sidtis or Ms. Hale "knowingly and recklessly aided and abetted the unlawful employment practice and discrimination against Plaintiff in violation of the NYSHRL . . . [and] the NYCSHRL [sic]."  FAC ¶¶ 171, 178.  Plaintiff does not provide any further factual support for such claims beyond alleging that the "biased attitudes of the New York Entities and California Entities"[24] are what lead to him suffering discrimination.  These vague conclusory allegations regarding the New York Entities and California Entities are insufficient to impose individual liability on Ms. O'Neill, Mr. Sidtis or Ms. Hale.  Moreover, there can be no aiding and abetting liability where there is no underlying liability for discrimination, harassment or retaliation. Because Plaintiff's claims fall short of alleging a violation under the law, his aiding and abetting claims also necessarily fail. *See Erasmus v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 1398 (PAE), 2015 WL 7736554, at *8

---

[24] FAC ¶¶ 172, 173, 174 (Sixth Claim) & ¶¶ 179, 180, 181 (Seventh Claim); see, *supra* fn 8.

(S.D.N.Y. Nov. 30, 2015)(citing *Petrisch v. HSBC Bank USA, Inc.*, No. 07 Civ. 3303 (KAM), 2013 WL 1316712, at \*21 (E.D.N.Y. Mar. 28, 2013) ("[A]iding and abetting is only a viable theory where an underlying violation has taken place.")).

**D.      Plaintiff's Additional NYCHRL Claims Must Also Fail (Claim Nos. 14, 15 and 16)**

"NYCHRL claims . . . are reviewed independently from and more liberally than their federal and state counterparts." *LaSalle,* 2015 WL 1442376, at \*3 (granting motion to dismiss race discrimination claim under NYCHRL because, notwithstanding the more lenient standard, plaintiff failed to plead facts supporting an inference that she was treated less well than others because of her race). Plaintiff's allegations fail to sustain a claim even under the more lenient NYCHRL standard because, as established above, Plaintiff has not alleged facts that show he was treated less well than others because of his gender. For example, Plaintiff does not allege that he was treated less favorably than women accused of sexual misconduct. Indeed, Plaintiff cannot show "that [he] is treated 'less well'" because of a protected trait. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). Plaintiff does not plead more "than what [a] reasonable victim of discrimination would consider petty slights and trivial inconveniences," which is insufficient for a claim under the law. *Williams v. New York City Hous. Auth.*, 872 N.Y.S. 2d 27 (1st Dep't 2009).

Plaintiff's claim of retaliation under NYCHRL, any such claim must fail for the same reasons that Plaintiff's NYSHRL and Title VII retaliation claims, must fail -- Plaintiff failed to allege that he engaged in any protected activity. *Soloviev,* 104 F. Supp. 3d at 252 (citing N.Y.C. Admin. Code § 8–107(7)).

23

## II.     PLAINTIFF'S EDUCATION CAUSES OF ACTION SHOULD BE DISMISSED

Plaintiff brings four claims under Title IX against UCB.   Initially, Plaintiff seeks declaratory relief under Title IX.   Plaintiff next asserts a violation of Title IX for damages, and finally Plaintiff asserts two separate claims under Title IX by alleging that the New York Entities, the California Entities and 5419 Sunset (the "Corporate Defendants") acted with deliberate indifference in violation of the statute and based on an erroneous outcome.

### A.     Plaintiff's Claim for Declaratory Judgment Fails Because Where There is No Basis For the Underlying Title IX Claim, Declaratory Judgment Is Inappropriate (Claim No. 1)

In order to obtain a declaratory judgment, Plaintiff must establish claims upon which his declaratory relief rests. *Propst v. Ass'n of Flight Attendants,* 546 F. Supp. 2d 14, 22–23 (E.D.N.Y. 2008)(dismissing claims for declaratory relief where the substantive claims on which the declaratory relief was based were dismissed because "[t]he court may 'only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief' " quoting *In re Joint Eastern & Southern Dist. Asbestos Litig.,* 14 F.3d 726, 731 (2d Cir. 1993)).   As discussed below, Plaintiff cannot state a claim under Title IX, thus his claim for declaratory relief must fail. In addition, no private right of action exists under Title IX based on alleged disparate impact of a policy on a protected group. *See Nungesser,* 169 F. Supp. 3d 353 (citing *Doe v. Columbia,* 831 F.3d 46 (2d Cir. 2016)).   Thus, in order to establish a claim under Title IX, Plaintiff must plead intentional discrimination based on gender, and he has not.[25]

---

[25] Defendants' motion to dismiss the Initial Complaint specifically addressed several fatal flaws in that pleading. Despite this specific notice of the Initial Complaint's failings, Plaintiff has been unable to correct such defects. Instead, in an effort to resuscitate the defective pleadings, Plaintiff sprinkled the same conclusory allegations throughout the FAC, namely that Defendants had "biased attitudes" adopted to refute "criticisms circulating within the comedy community and in the public press . . ." and that this "motivated" Defendants "to accept the females' accusations of sexual assault and reject the male's side of the story. . ." *See supra* footnote n. 9.   Significantly, Plaintiff has failed to point to any evidence that criticisms of UCB were circulating *prior* to the decision to ban Plaintiff.  More

24

**B.**       **Plaintiff's Title IX Claims Must Fail Because Plaintiff Was Neither A
Student Nor An Employee (Claim Nos. 2, 3 and 4)**

Title IX provides, "No person in the United States shall, on the basis of sex, be excluded

from participation in, be denied the benefits of, or be subjected to discrimination under any

education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).  Title

IX typically protects students, but courts are divided on whether Title IX *also* protects employees.

*Russell v. New York Univ.*, No. 15-CV-2185, 2017 WL 3049534, at *38 (S.D.N.Y. July 17, 2017),

citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 131 & n.1 (2d Cir. 2013) (declining to decide

"whether there is a private right of action for employment discrimination under Title IX").[26]  The

Southern District of New York recently dismissed a Title IX claim where it found that plaintiff

was an employee, not a student.  *Philpott v. New York*, 252 F. Supp. 3d 313, 318 (S.D.N.Y. 2017).

If a claim for employment discrimination exists under Title IX, then the same employment

relationship analysis applied above to Plaintiff's Title VII claims will apply here.  *See Yusuf v.

Vassar College*, 35 F.3d 709, 714 (2d Cir. 1994) ("courts have interpreted Title IX by looking to .

. . the case law interpreting Title VII.").   Based on the analysis above, Plaintiff's claim for

employment discrimination under Title IX fails because he was **not** an employee of UCB.

---

importantly, simply stating bias existed is not sufficient to state a claim – a conclusory allegation is not a fact upon
which a pleading can rely to defeat a motion for failure to state a claim.

[26] Compare *Towers v. State Univ. of N.Y. at Stony Brook*, No. 04-CV-5243, 2007 WL 1470152, at *4 (E.D.N.Y. May
21, 2007) (finding Title IX cannot be used to circumvent the remedial scheme of Title VII), *and Vega v. State Univ.
of N.Y. Bd. of Trustees*, No. 97-CV-5767, 2000 WL 381430, at *3 (S.D.N.Y. Apr. 13, 2000) (agreeing with the Fifth
and Seventh Circuits that Title VII provides the exclusive remedy for individuals "alleging employment discrimination
on the basis of sex, and limiting money damages under Title IX to student plaintiffs."), *with Morris v. Fordham Univ.*,
No. 03-CV-556, 2004 WL 906248, at *3 (S.D.N.Y. Apr. 28, 2004) ("Neither the Supreme Court nor the Second
Circuit has resolved the question of whether Title IX provides a cause of action to employees of federally funded
educational programs who bring claims of sex discrimination against their employers), *and Henschke v. New York
Hospital-Cornell Medical Center*, 821 F. Supp. 166, 172 (S.D.N.Y. 1993) (finding an employment discrimination
private right of action exists under Title IX).

Plaintiff was **not a student nor an employee at the time of the complained of conduct** (the Aug. 2016 Meeting) and, as such, his Title IX claims must fail. Plaintiff alleges he is a "former student," who last enrolled in UCB classes at the NY Training Center in 2010. *See* FAC ¶ 42. Plaintiff was never a student of the California Entities and never an employee of any of the Corporate Defendants. Plaintiff performed at the Chelsea Theatre from 2013, when UCB granted him performance privileges, until UCB revoked those privileges in 2016. Title IX does not cover non-students who have privileges to use an institution's facilities. *See K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054 (8th Cir. 2017) (finding a potential soccer recruit visiting campus was not protected by Title IX, even though sexually assaulted at an on-campus fraternity house by one of its members). This court should follow the *K.T. v. Culver-Stockton Coll.* court and dismiss Plaintiff's Title IX claims because Plaintiff was a non-student, performer on a UCB theater at the time of the alleged misconduct. *See K. T. v. Culver-Stockton Coll.*, No. 4:16-CV-165, 2016 WL 4243965, at *1 (E.D. Mo. Aug. 11, 2016), *aff'd*, 865 F.3d 1054 (8th Cir. 2017). Plaintiff as a performer with privileges to use UCB's theatre cannot bring a claim under Title IX.

### C.   Plaintiff Fails to State A Claim For Gender Discrimination Under Title IX (Claim Nos. 2, 3 and 4)

Even if this Court should find that that UCB is covered by Title IX (which Defendants' dispute), then the Court should nevertheless dismiss Plaintiff's education-based claims as he has failed to allege specific facts that plausibly give rise to an inference of gender discrimination under Title IX. There are two types of claims arising from dissatisfaction with the investigation into claims of sexual harassment: erroneous outcome or selective enforcement. *Yusef v. Vassar College*, 35 F.3d 709, 714 (2d Cir. 1994) (recognizing reverse discrimination claim under Title

26

IX).  In the FAC, Plaintiff asserts erroneous outcome and does not allege selective enforcement.[27]

Plaintiff also attempts to create a *new claim for deliberate indifference*,[28] which is not a cause of

action under Title IX.  Deliberate indifference is a *standard or burden of proof*,[29] not a separate

claim, thus Moving Defendants will address Plaintiff's "deliberate indifference" allegations in

connection with his claim for gender discrimination under Title IX.

Plaintiff claims that Moving Defendants' investigation into allegations of his sexual

misconduct led to an erroneous outcome.  *See* FAC ¶ 142 ("UCB's erroneous determination"); *see

also* ¶¶ 150-52.  To bring an erroneous outcome challenge, plaintiff must allege (1) facts sufficient

to cause some doubt on the outcome of the investigation and (2) a causal connection between the

flawed outcome and gender bias.  *See Rolph v. Hobart and William Smith Colleges*, 271 F. Supp.

3d 386, 399 (W.D.N.Y. 2017) (Plaintiff fails to allege particular facts sufficient to doubt the

accuracy of the outcome reached).  The pleading standard in reverse discrimination cases requires

that Plaintiff plead specific facts that support a minimal plausible inference of discrimination,

which Plaintiff has not, and cannot plead.  *See Columbia*, 831 F.3d 46 (finding that specific

allegations of anti-male bias and factual allegations asserting detailed reasons for that bias was

sufficient to survive a motion to dismiss).[30]

---

[27] Nowhere in the Complaint does Plaintiff mention **selective enforcement**.  Indeed, the Initial Complaint described the nature of his claim, exclusively on an erroneous outcome theory, as it alleged: "Simply put: UCB improperly mishandled an investigation against Plaintiff Glaser by failing to conduct a formal hearing process against Plaintiff Glaser."  Initial Complaint ¶ 3.  Significantly, the FAC now deletes this language, but instead the FAC now specifically identified this theory – erroneous outcome – as a separate claim.  *See* FAC ¶¶ 145-55 (4th Claim: "Violation of Title IX – Erroneous Outcome").

[28] *See* FAC ¶¶ 137-44 (3rd Claim: "Violation of Title IX – Deliberate Indifference"), which remarkably also asserts "erroneous determination."  *Id.* ¶¶ 142-43.

[29] The deliberate indifference standard is typically applied to determine whether a plaintiff has stated a claim sufficient to recover from an institution based on a hostile environment claim under Title IX.  *Roe v. Chappagna Central School District*, No. 16-CV-7099, 2017 WL 4119655 (S.D.N.Y. Sept. 15, 2017) (holding a plaintiff must show that the school was deliberately indifferent to a substantial risk of harm).

[30] In *Columbia* the Second Circuit confirmed that pleading a Title IX claim carries a requirement of asserting facts to support an assertion of discriminatory intent similar to the requirement found in pleading a Title VII violation. 831

27

The Second Circuit reversed the dismissal of the pleading in *Doe v. Columbia* based on plaintiff's specific allegations that public criticism *predating* the disciplinary decision influenced Columbia University's handling of its investigation into allegations of that plaintiff's sexual misconduct. *Id.* In *Doe v. Columbia*, the plaintiff, a student at Columbia University who was accused of rape, alleged that Columbia did not comply with its own Title IX investigation procedures designed to protect accused students. *Id.* at 56-57. Plaintiff in *Doe v. Columbia* also alleged that the Columbia University reached decisions contrary to the weight of the evidence. *Id.* at 57. The Second Circuit noted that these procedural deficiencies alone did not demonstrate gender bias, but the negative publicity "preceding the disciplinary hearing . . . accusing the University of not taking seriously complaints of female students," made the allegation of gender bias plausible. *Id.* In *Doe v. Columbia*, the plaintiff cited a New York Post article dated Dec. 11, 2013 (two months before plaintiff's disciplinary hearing) entitled "Columbia drops ball on jock 'rapist' probe: students," which quoted several female students who alleged that Columbia mishandled their sexual assault complaints. *Id.* at 50. In *Columbia*, the plaintiff also cites to a January 23, 2014 article published (less than a month before plaintiff's disciplinary hearing) in an independent student run newspaper. *Id.* at 50. Then in February 2014, the University's Dean promised to hold a Town Hall meeting about the school's handling of investigations into allegations of sexual misconduct. *Id.* at 51. On February 12, 2014, *Columbia* held plaintiff's disciplinary hearing. *Id.* at 52. The allegations in *Columbia* are extremely specific and raised a plausible inference that the "University's administration was cognizant of, and sensitive to, these

---

F.3d at 55-56. As demonstrated above, *see fn* 21, *supra, and accompanying text*, Plaintiff has failed to allege sufficient facts to assert a plausible claim of employment discrimination based upon gender. This same analysis is applicable in considering Plaintiff's Title IX claim, and is incorporated by reference herein.

criticisms" prior to plaintiff's disciplinary hearing. *Columbia Univ.*, 831 F.3d at 57.

Plaintiff cannot liken the facts in his FAC to the pleading in *Doe v. Columbia*, because there was no public pressure on UCB. In stark contrast to the specific factual assertions in *Columbia,* Plaintiff does **not allege facts** to establish that UCB's findings were colored by bias, and instead provides conclusory allegations. Even though Plaintiff had the benefit of reading Defendants' motion to dismiss the Initial Complaint, and had the opportunity to revamp his pleadings, Plaintiff is unable to assert any facts to support his newly alleged vague conclusory allegations that UCB was under criticism from the comedy community. Indeed, Plaintiff attaches a news article to the FAC, which *does not indicate that UCB was under pressure either before or after Plaintiff was banned from UCB. See* FAC, Ex. B. In the article, *The Comedy World Can't Handle Rape Allegations*, which was published in The Cut, dated August 18, 2016 (*after* the Aug. 2016 Meeting), the reporter notes male comedians largely criticized UCB for banning Plaintiff and that female comedians both criticized and praised the decision. *Id.* Significantly, Plaintiff had previously alleged that the "believe all women" movement in the national comedian community did not begin until **after he was banned from UCB.** *See* Initial Complaint ¶ 70 ("the movement that followed"). Plaintiff now attempts to retreat from that factual assertion and alter the time-line as the FAC contradicts the assertion and now alleges that "there was gender bias at UCB, especially given (i) the fact that UCB was receiving pressure from female members to crack down on alleged misconduct and found a convenient scapegoat to show it was listening, and (ii) the rise of the movement within the comedy community labeled 'believe all women.'" FAC ¶ 91. However, Plaintiff's *prior* allegations and attached news article belie his claim that gender bias that favors women existed at UCB or in any way influenced the decision to ban him from UCB facilities.

29

Indeed, Plaintiff sets forth no specific allegations to support his newly asserted timeline. Plaintiff's allegation that UCB employees acted "with deliberate indifference" towards Plaintiff because of his male gender, *id.* ¶ 138, is insufficient because it lacks the specificity required under the law. Beyond Plaintiff's vague and broad statements that bias existed, Plaintiff's only support for his claim that UCB was deliberately indifferent is that UCB violated Plaintiff's rights under Title IX and its alleged erroneous determination. *See* FAC ¶¶ 137-144. These are not facts, but legal conclusions.

The only additional facts Plaintiff alleges in support of his erroneous outcome claim are that: the investigators were untrained, Plaintiff did not receive notice of the investigation, no hearing was held, Plaintiff did not receive witness statements, there was no cross-examination, and no appeal was allowed. *See* FAC ¶ 127. Plaintiff's list of alleged procedural flaws, however, does **not** give rise to an inference of gender bias and, thus, are not enough to survive a motion to dismiss. *Yusef,* 35 F.3d at 714 ("[a]llegations of a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss."). The fatal gap in his pleading is the "lack of particularized allegation[s] relating to a causal connection between the flawed outcome and gender bias." *Id.* This gap is widened by the fact that Plaintiff asserts a gender bias based on a movement that occurred *after the conduct that allegedly serves as the basis for Plaintiff's claims. See* Initial Complaint ¶ 70 and FAC, Ex. B. Furthermore, Plaintiff fails to allege a causal connection between the investigation and gender bias because the sexual misconduct allegations against Plaintiff were the types of allegations UCB would investigate, regardless of the gender of the accused.

30

### III.    PLAINTIFF'S TORT-BASED CLAIMS FAIL

Plaintiff's fifth and eighth claims for negligent training and supervision against UCB and negligent infliction of emotional distress against Defendants should be dismissed.  Plaintiff's tort-based claims are all premised on Defendants' allegedly improper investigation into the allegations of sexual misconduct.  *See* FAC ¶¶ 162-164, 185.  Plaintiff alleges "numerous breaches of the standard of care" where none exist in an attempt to circumvent the statutory preclusion of private lawsuits.  FAC ¶ 185.  Because the alleged duties do not exist, Plaintiff's negligence claims fail and should be dismissed.

### A.    Plaintiff's Negligence Claims Are Pre-Empted by the Workers' Compensation Act, if he is Found to be an Employee

Plaintiff alleges that Defendants were his "employers," and if the Court accepts this allegation as true, Plaintiff's negligence claims are barred by the Workers' Compensation statute's exclusive remedy.  *See* N.Y. Workers' Comp. Law § 11 (McKinney 2018).  In New York, an employee's exclusive remedy for injuries arising from an employer's negligence is provided for under the Workers' Compensation Law.  *See Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522 (S.D.N.Y. 1998)(citing *O'Brien v. King World Prods, Inc.,* 669 F. Supp. 639, 641 (S.D.N.Y. 1987)); *see also Persaud v. S. Axelrod Co.,* No. 95 CIV. 7849(RPP), 1996 WL 11197, *5 (S.D.N.Y. Jan. 10, 1996) ("If recovery is available under the Worker's Compensation Law, this recovery will be plaintiff's exclusive remedy against her employer and she will not be able to bring other common law tort claims against her employer.").  As such, Plaintiff is barred from bringing any negligence claims against Defendants.

ACTIVE\60817662.v1-8/1/18

**B.    Plaintiff's Claim for Negligent Training and Supervision of Employees Fails (Claim No. 5)**

**i.    Plaintiff alleges Individual Defendants acted within the scope of their employment, thus, his claim must fail**

A claim that an employer, was "negligent in failing 'to properly interview, hire, train, supervise, and monitor' its employees ... 'does not lie where, as here, the employee is acting within the scope of his or her employment, thereby rendering the employer liable for damages caused by the employee's negligence under the [alternative] theory of respondeat superior' " *Drisdom v. Niagara Falls Mem. Med. Ctr.,* 53 A.D.3d 1142, 1143 (4th Dep't 2008). "It is well settled under New York law that '[a] claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of [his or her] employment.'" *Stokes v. City of New York,* No. 05-CV-0007, 2007 WL 1300983, at *14 (E.D.N.Y. May 3, 2007). Insofar as Plaintiff alleges that the Individual Defendants were acting within the scope of their employment, which he does, *see* FAC ¶ 85, the claim of negligent training and supervision must fail. *See Owen v. State,* 160 A.D.3d 1410 (4th Dep't 2018) (affirming the court's decision to dismiss claimant's claim for negligent supervision and training)(citing *Leftenant v. City of New York,* 70 A.D.3d 596, 597 (1st Dep't 2010)).

**ii.    Plaintiff cannot make out the elements of a claim for negligent training and supervision**

If this Court finds that Plaintiff was not an employee, his negligence claims still must fail. In order to establish a claim for negligent supervision, a plaintiff must plead facts that show that, employer "knew or should have known that the employee" had the propensity for the type of behavior that caused plaintiff's harm. *Kwang Bok Yi v. Open Karaoke Corp.*, 161 A.D.3d 971,

32

971–72 (1st Dep't 2018); *see Ross,* 2 F. Supp. 2d 522 (quoting *Kirkman v. Astoria Gen. Hosp.,* 204 A.D. 2d 401, 403 (2d Dep't 1994)).   Gender bias is not the type of offense that negligent investigation or supervision was intended to protect.   *See Brown v. Bronx Cross County Medical Group,* 834 F. Supp. 105, 110 (S.D.N.Y. 1993).   "[M]ost of the cases in which this claim has been sustained involve significant physical injury."   *Perry v. Burger King Corp.,* 924 F. Supp. 548 (S.D.N.Y. 1996) (citing *Brown v. Bronx Cross County Medical Group,* 834 F. Supp. 105, 110 (S.D.N.Y. 1993) (granting motion to dismiss where the employee's offense involved racial harassment instead of physical injury)).

Plaintiff claims that UCB was negligent because the Individual Defendants, as employees of UCB, allegedly failed to conduct a proper investigation under Title IX.   *See* FAC ¶¶ 135-140. Specifically, he claims that the Individual Defendants were allowed to take "charge of this high profile investigation, without adequate oversight," but Plaintiff does not allege how they were negligent beyond making clear that he believed them to be biased against him because of his gender.   FAC ¶ 164.   Moreover, Plaintiff has failed to allege that Defendants foresaw or should have foreseen such bias.   Plaintiff also fails to plead a causal connection between his alleged harm and Defendants actions.   "Conclusory allegations of negligent supervision are insufficient to overcome a motion to dismiss." *Ross,* 2 F. Supp. 2d at 532-33 (citing *Richardson v. New York Univ.,* 202 A.D.2d 295, 296 (1st Dep't 1994)).   Thus, Plaintiff's purported claim for negligent training and supervision of employees should be dismissed.

### C.   Plaintiff's Claim for Negligent Infliction of Emotional Distress Fails (Claim No. 8)

Plaintiff attributes four sentences in his FAC to his claim for negligent infliction of emotional distress ("NIED").   To state a claim for NIED, Plaintiff must show (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe

33

emotional distress.  *See Romero v. City of New York*, 839 F. Supp. 2d 588 (E.D.N.Y. 2012).

Plaintiff merely alleges that "Defendants' conduct was negligent and involved numerous breaches

of the standard of care" and that it was foreseeable that such a breach would cause Plaintiff

emotional distress.  FAC ¶ 185.  Plaintiff must allege facts that demonstrate that Defendants'

behavior was "beyond all possible bounds of decency."  *See Romero*, 839 F. Supp. 2d 588.

Plaintiff fails to allege a plausible causal connection between UCB "terminating" his monthly

stand-up show and his emotional distress.  Plaintiff alleges that he grew "despondent from the

ongoing trauma of losing his friends, his career, and his girlfriend."  FAC ¶ 83.  Plaintiff must

show "[a] breach of the duty of care 'resulting directly in emotional harm.'"  *Taggart v Costabile*,

131 A.D.3d 243, 252-53 (2d Dep't 2015)(citing *Ornstein v. New York City Health & Hosps. Corp.*,

10 N.Y.3d 1, 6 (N.Y. 2008)).  Here, Plaintiff alleges no facts to plausibly suggest that Defendants

alleged conduct directly resulted in emotional harm.  Indeed, the FAC specifically alleges events

constituting an intervening factor – "someone posted on Twitter that Plaintiff Glaser had been

banned by UCB for raping multiple women."[31] FAC ¶ 68.   Accordingly, Plaintiff's NIED claim

must fail.

## IV.   PLAINTIFF'S TITLE IX CLAIMS SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE UCB IS NOT A RECIPIENT OF FEDERAL FINANCIAL ASSISTANCE

Moving Defendants request that this Court dismiss Plaintiff's Title IX claims under FRCP

12(b)(1) for lack of subject matter jurisdiction.[32]  It is Plaintiff's burden to establish there is proper

---

[31]  Remarkably, the FAC further establishes that UCB issued a cease and desist letter regarding a fake press release by someone "pretending to be a spokesperson for UCB."  FAC ¶ 69.

[32]  Unlike a motion to dismiss for failure to state a claim, in a motion to dismiss for lack of subject matter jurisdiction, the Court does not assume that all factual allegations are accurate.  Indeed, to determine whether this Court lacks of subject matter jurisdiction it may consider evidentiary submissions to resolve a factual dispute.  *See Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).

jurisdiction over the Title IX claims in this case.  *See Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003), *cert. denied*, 540 U.S. 1111 (2004) (a party who seeks federal jurisdiction bears the burden of establishing that jurisdiction is proper).    Plaintiff's conclusory assertion that UCB was a direct and indirect recipient of federal funds that meet the definition under Title IX, *see* FAC ¶¶ 102, 103, is false, *see* Sidtis Aff. ¶ 5, and insufficient to meet Plaintiff's burden.

Neither the New York Entities nor the California Entities were direct or indirect recipients of Federal financial assistance, which is a necessary prerequisite for an institution to fall under the ambit of Title IX.  *See* 20 U.S.C. § 1681(a) (Title IX prohibits discrimination "on the basis of sex . . . under any education program or activity *receiving Federal financial assistance*."); *see also, Doe v. Meisels, et al.*, No. 14-CV-5725, 2016 WL 2977269 (E.D.N.Y. May 20, 2016). Accordingly, the New York Entities and the California Entities are **not** covered by Title IX.  *Nat'l Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459 (1999).

### A.    UCB Is Not A Direct Nor An Indirect Recipient of Federal Assistance

As defined by 34 C.F.R. §106.2(i), a "recipient" of Title IX funds is:

> any State or political subdivision thereof, or any instrumentality of a State or political subdivision thereof, any public or private agency, institution or organization, or other entity, or any person, to whom Federal financial assistance is extended directly or through another recipient and which operates an education program or activity which receives such assistance, including any subunit, successor, assignee or transferee.

UCB, UCBTLA, and Inner Sanctum are **not** educational institutions.  Sidtis Aff. ¶ 4.  The NY Training Center and CA Training Center may likely qualify as educational institutions, but *none of the aforementioned entities were recipients of Federal financial assistance and thus are not institutions that must comply with Title IX*.  *See Cannon v. Univ. of Chicago,* 441 U.S. 677, 695 n. 17 (1979) ("Title IX is applicable only to certain educational institutions receiving Federal

35

financial assistance"); *Cf. U.S. Dep't of Transp. v. Paralyzed Veterans,* 477 U.S. 597, 605 (1986) ("Congress limited the scope of § 504 [which has the same federal funding trigger as Title IX] to those who actually 'receive' Federal financial assistance"). Defendants' motion to dismiss the Initial Complaint established that 5419 Sunset, not UCB, received a Small Business Loan, and thus any claim under Title IX was fatally flawed. [Docket Nos. 15-17]   In a failed attempt to remedy this clear defect, Plaintiff now makes two conclusory allegations, unsupported by any factual allegations: (1) the New York Entities and the California Entities received Federal financial assistance through 5419 Sunset, *see* FAC ¶ 103, and (2) 5419 Sunset was set up as a "dummy entity" to evade Title IX regulations. *See* FAC ¶ 101. Plaintiff, however, does not allege any facts connecting the New York Entities to 5419 Sunset, which is fatal to his claims under Title IX. *See Buckley v. Archdiocese of Rockville Centre*, 992 F. Supp. 586, 588-90 (E.D.N.Y. 1998) (in the absence of any factual allegations that the defendant received federal funds itself, or had any formal institutional affiliation with an entity that did, Title IX claim could not be maintained). Specifically, Plaintiff does not allege what funds UCB received or how UCB used any funds.

A direct recipient of federal funds under Title IX regulations must execute a written assurance agreeing to comply with Title IX. 34 C.F.R. § 106.4. Neither the New York Entities nor the California Entities have executed any such assurance on the basis of federal aid received by colleges and universities. *See* Sidtis Aff. ¶ 5. In other words, the New York Entities and the California Entities never knowingly or voluntarily accepted the terms of the Spending Clause contract, and accordingly is not covered by Title IX.[33]   As such, Plaintiff's attempt to confer jurisdiction of this Court through Title IX jurisdiction is without merit.

---

[33] Fox Rothschild does not currently represent the California Entities or any of the newly added defendants.

36

An institution is an indirect recipient of Federal financial assistance if the institution enrolls students who receive federal funds earmarked for tuition at that institution. *Meisels,* 2016 WL 2977269.  The *Meisels* Court dismissed Title IX claims against an educational institution when plaintiffs failed to allege that they paid tuition with earmarked federal funds. *Id.* In that case, plaintiffs' Title IX claims failed because the allegations did not support an inference that the defendant received federal funds earmarked for tuition. *Id.* Similarly, Plaintiff does not allege that he paid for his UCB courses with federal aid earmarked for tuition. To the contrary, Plaintiff alleges his parents paid for his UCB courses. *See* FAC ¶ 57. UCB neither directly nor indirectly receives Federal financial assistance.

### B.     Title IX Does Not Extend to a Beneficiary of Federal Financial Assistance

Plaintiff may claim that the New York Entities and the California Entities are **beneficiaries** of Federal financial assistance, but that is not enough to subject an entity to the requirements of Title IX.  "[E]ntities that only benefit economically from Federal assistance are not" **recipients** within the meaning of Title IX. *Elizabeth Cucinotta Sorvillo Felicia Mooradian v. St. Francis Preparatory Sch.*, No. 13-cv-3357, 2014 WL 11462720, at *5 (E.D.N.Y. Aug. 14, 2014)(quoting *NCAA v. Smith*, 525 U.S. 459, 460 (1999)). Finding otherwise would unnecessarily extend the statutorily grounded-limits on Title IX's reach. *Paralyzed Veterans,* 477 U.S. at 606.  The Supreme Court in *NCAA v. Smith* found that the NCAA, which received dues not earmarked for tuition from federally assisted colleges, was ***not a recipient*** of Federal financial assistance. Receiving funds from a federally assisted college will make an institution an economic **beneficiary** of the federal funds, but not a **recipient** under Title IX and thus not required to comply with Title IX. *Meisels,* 2016 WL 2977269.

37

The Supreme Court examined analogous statutory language and similar facts in *Paralyzed Veterans* to determine whether commercial airlines are covered under Section 504 of the Rehabilitation Act, which prohibits discrimination against disabled persons in any program or activity "receiving Federal financial assistance." 477 U.S. at 614-15, citing 29 U.S.C. § 794. The Supreme Court found that it is airports, not airlines who receive Federal financial assistance, and airlines merely benefit from the aid by using the runways. 477 U.S. at 604-06. Similar to the airlines in *Paralyzed Veterans*, the California Entities only benefit by leasing performance space from 5419 Sunset and thus, this Court should find, consistent with *Paralyzed Veterans*, that Title IX "does not extend as far as those who benefit from" the Federal financial assistance. *Id.* at 607, 610 (emphasis added). 5419 Sunset received a small business loan to renovate its Los Angeles theater, which the California Entities rent. *See* Sidtis Aff. ¶ 8. 5419 Sunset is **not** involved in any educational programs. *See* Sidtis Aff. ¶ 9. As such, the California Entities are at best beneficiaries of 5419 Sunset's small business loan used to renovate its theatre. The New York Entities, however, cannot even be considered **beneficiaries** of 5419 Sunset's federal assistance; at best, the New York Entities are affiliates of beneficiaries. Plaintiff's suggestion that this Court should extend Title IX's reach to affiliates of a beneficiaries is contrary to Supreme Court case law and beyond the pale.

As previously mentioned, Plaintiff has added six new defendants in his FAC, who he now alleges are "connected" to UCB. Notably, however, Plaintiff has lifted the language describing the California Entities and 5419 Sunset from Defendants' initial motion to dismiss. *See* FAC ¶¶ 17-21. Plaintiff attempts to transform this description of the entities into a "connection" between Defendants in order to support his defective educational claims. However, Plaintiff cannot create a relationship where one does not exist. Plaintiff alleges that Ms. Hale secured a federal small

38

business loan "for the benefit of the California Entities and the New York Entities."  FAC ¶ 25. Plaintiff does not allege how the California Entities and the New York Entities allegedly benefited from 5419 Sunset's small business loan, but even if he had, being a beneficiary is not enough to subject those entities to Title IX.

## V.   THIS COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER REMAINING STATE AND CITY LAW CLAIMS

Should this Court decide to dismiss *only* Plaintiff's federal claims (and Defendants respectfully assert that dismissal is appropriate for all claims), this Court should decline supplemental jurisdiction for Plaintiff's state and city claims (including all tort-based claims).  28 U.S.C. § 1367(c) allows the court to decline to exercise supplemental jurisdiction over a state or city law claim if the court has dismissed all claims over which it has original jurisdiction. Given the foregoing reasons, this Court should find that Plaintiff has failed to state a claim under Title IX and Title VII, and decline to exercise supplemental jurisdiction over Plaintiff's other claims.

ACTIVE\60817662.v1-8/1/18

## CONCLUSION

The face of the FAC demonstrates that no facts exists to support Plaintiff's claims. Instead, Plaintiff is attempting to use this Court as a means to clear his name by challenging the outcome of UCB's investigation into his alleged sexual misconduct. This is a desperate attempt to point the finger at Defendants in order to save his own career. Plaintiff's allegations, however, do not give rise to an inference of gender discrimination. Defendants recognize that accusations of rape are devastating, but they are devastating regardless of the accused's gender. As such, Defendants move this Court to dismiss the FAC with prejudice.

Dated: New York, New York
       August 1, 2018

                                        Respectfully submitted,

                                        **FOX ROTHSCHILD LLP**


                                        By: _____
                                        Carolyn D. Richmond, Esq.
                                        James M. Lemonedes, Esq.
                                        Bryn Goodman, Esq.
                                        101 Park Avenue, Suite 1700
                                        New York, New York 10178
                                        Phone: (212) 878-7900
                                        Facsimile: (212) 692-0940
                                        jlemonedes@foxrothschild.com
                                        ***Attorneys for Defendants***

40