UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------------X

AARON GLASER,                                                    CIVIL ACTION

                                                                No.: 1:18-cv-971 (JPO)

                        Plaintiff,

            -against-

UPRIGHT CITIZENS BRIGADE LLC,
UPRIGHT CITIZENS BRIGADE TRAINING CENTER,
LLC, UPRIGHT CITIZENS BRIGADE TRAINING
CENTER LA, LLC, UCB INNER SANCTUM, LLC,
UCBTLA, LLC, 5419 SUNSET PROPERTIES, LLC,
ALEX SIDTIS,  SHANNON PATRICIA O'NEILL,
AND SUSAN HALE,

                        Defendant.

----------------------------------------------------------------------------------X

### <u>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION OF UPRIGHT CITIZENS BRIGADE TRAINING CENTER, LLC's MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>

## Table of Contents

Table of Authorities...................................................................................................iii-iv

I.   PRELIMINARY STATEMENT.........................................................................1

II.  LEGAL ARGUMENT ........................................................................2

     A.  Standards of review.........................................................................2

     B.  Plaintiff Sufficiently Alleges Facts to Establish That He Was An Employee........4
               i.  Plaintiff Did Receive Remuneration...............................4

     C.  Plaintiff Alleges Sufficient Facts to Support a Claim of Gender
         Discrimination...........................................................................9

               i.  Plaintiff Successfully Alleges Facts That Give Rise to An
                   Inference of Discrimination.........................................9

              ii.  Plaintiff's Hostile Work Environment Claim................13

             iii.  Plaintiff's Claim for Retaliation...................................14

     D.  Plaintiff's Education Claims of Relief Should Survive............................15

     E.  Plaintiff's Tort Claims Must Survive.................................................17

     F.  The NY Training Center Is A Direct or At Least An Indirect Recipient of
         Federal Assistance.......................................................................20

     G.  Title IX Does Extend to Beneficiaries of Financial Aid............................21

III. CONCLUSION.............................................................................25

**Table of Authorities**

Cases

*Arista Records, LLC v. Doe 3.* 604 F. 3d 110, 120 (2d Cir. 2010). …….…………………………4

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). …….…………………………….…………..2

*Awad v. City of New York*, No. 13 Civ. 5753, 2014 WL 1814114……….………………..14

*Bell Atlantic Corp. v. Twombley*, 550 U.S. 554, 555 (2007) …….………………..…..…2, 3

*Cmtys. For Equity v. Mich, High Sch. Athletic Ass'n,* 80 F. Supp. 2d 729, 733-34 (W.D. Mich 2000)……….…………………………………………………………………………22

*Conley v. Gibson*, 355 U.S. 41, 47 (1947) …….…………………………………………..2

*Detone v Bullit Courier Serv.,* 140 AD2d 278 [1st Dept 1988] ……….…………………...30

*Doe v. Columbia University*, 831 F.3d 46, 48 (2d Cir. 2016) …….……….………………..9

*EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)……………………..3

*Erickson v. Pardus*, 551 U.S. 89, 93, 94 (2007)……………………………………………3

*Ford v Gildin*, 200 AD2d 224 [1st Dept 1994] …….……………………………..…….18

*Gonzalez v City of the New York*, 2015 NY Slip Op 06869…………………………….…..18

*Gorokhovsky v. N.Y.S. Hous. Auth.*, 552 Fed.Appx. 100, 102 (2d Cir. 2014) …….……..…14

*Haddock v City of New York*, 75 NY2d 478 [1990] …….…………………………….....18

*Henschke v. N.Y. Hosp.-Cornell Med. Ctr.,* 821 F.Supp. 166, 172-73 (S.D.N.Y. 1993) ………16

*Hernandez v. Kaisman,* 957 N.Y.S.2d 53, 58-59 (1st Dep't 2012) ……….…………….…14

*Jane Doe v. Mercy Catholic Medical Center* (3d Cir. 2017) No. 16-1247……….……..…15-16, 24

*Johnson v. FedEx Home Delivery*, No. 04 CV 4935, 2011 WL 6153425 at *13 (E.D.N.Y. Dec. 12, 2011) …….…………………………………………..…...……………………………..8

*Lakoski v. James,* 66 F.3d 751, 755 (5th Cir.1995)…………………………..……………16

*Lipsett v. Univ. of Puerto Rico,* 864 F.2d 881, 897 (1st Cir.1988) …….…………………16

*Littlejohn v. City of New York*, 795 F.3d 297……………………………………………10

*Lotes Co. v. Hon Hai Precision Indus. Co.,* 753 F. 3d 395, 403 (2d Cor. 2014......................................3

*Makarova v. U.S.*, 201 F. 3d 110, 113 (2d. Cir. 2000) ...........................................................20

*NCAA v. Smith,* 525 U.S. 459, 460 (1999).....................................................................24

*Palkovic v Johnson,* 2008 U.S. App. LEXIS 12600 at *5 (2d Cir. June 13, 2008). .................3

*Preston v. Virginia ex rel. New River Cmty. Coll.,* 31 F.3d 203, 205-06 (4th Cir.1994) ..........16

*Summa v. Hofstra University*, 708 F. 3d 115, 131 & 1 (2d Cor. 2013) ............................16

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506. (2002) ............................................................2

*Williams v. Board of Regents,* 47 F.3d 1282 (11th Cir. 2007)..........................................22

**Statutes**

65 Fed Reg. 52867 at ï½§ 115 (2000). ..................................................................23-24

§ 219[2]; § 213 [comment d]); Restatement [Second] of Torts § 317)...............................18

Restatement [Second] Agency §§ 219[1], 228)..........................................................18

Section 2(7) New York Workers' Compensation Law.................................................17-18

New York City Admin. Cod. §8-107...............................................................1, 6, 7

NYCHRL § 8-102 (5).................................................................................6

New York Executive Law 290 et seq.................................................................1

New York Executive Law 296.......................................................................13

NYSHRL...........................................................................................1, 6, 7, 9

Title IX ...................................................................................passim

Title VII...........................................................................................1, 6, 15

Fed. R.C.P. 8.........................................................................................2, 3

Fed. R.C.P.  12(b)(1)..............................................................................1, 20

Fed. R.C.P.  12(b)(6)..............................................................................1, 3

Plaintiff Aaron Glaser ("Glaser" or "Plaintiff) respectfully submits this Memorandum of Law in opposition to the motion of Defendant Upright Citizens Brigade Training Center, LLC's (hereinafter "NY Training Center" or "Defendant") to Dismiss Plaintiff's First Amended Complaint. For the reasons set forth below, Plaintiff respectfully requests that the Court denies NY Training Center's motion.

## I. **PRELIMINARY STATEMENT**

This is an action for declaratory and injunctive relief and for damages arising out of Defendants' unlawful conduct that resulted in the wrongful termination of Plaintiff Glaser, a former student and employee of Defendants. Plaintiff filed this action against Defendant UPRIGHT CITIZENS BRIGADE LLC, (hereinafter "UCB"), UPRIGHT CITIZENS BRIGADE TRAINING CENTER, LLC, UPRIGHT CITIZENS BRIGADE TRAINING CENTER LA, LLC ("UCBTC LA"), UCB INNER SANCTUM, LLC ("UCB INNER") UCBTLA, LLC, 5419 SUNSET PROPERTIES, LLC ("5419 SUNSET"), ALEX SIDTIS (hereinafter "Sidtis"), SHANNON PATRICIA O'NEILL, (hereinafter "O'Neill"), AND SUSAN HALE (hereinafter "Hale") for violations of gender discrimination, hostile work environment, and wrongful termination, pursuant to Title VII of the Civil Rights Act, and the New York State Human Rights Law ("NYSHRL"), New York Executive Law 290 et seq., New York City Admin. Code §8-107 ("NYCHRL"), and violations of Title IX, and other unlawful conduct.

The NY Training Center now asks the Court to dismiss the action pursuant to FRCP 12(b)(6) and 12(b)(1). The crux of NY Training Center's motion is based on NY Training Center's erroneous position that Plaintiff's enrollment at NY Training Center ended in 2010, years before the alleged misconduct occurred in August 2016. The NY Training Center somehow argues that Plaintiff was "at best an occasional volunteer" not protected under NYSHRL, NYCHRL, or Title

IX because he was neither an employee nor a student (at the time of the investigation and ultimate termination) and because neither the NY Training Center was neither a direct nor indirect recipient of Federal financial assistance.

Plaintiff states bona fide claims for relief under Title IX and state and city law. The Amended Complaint details a plausible gender bias against Plaintiff, enough to sufficiently plead claims of relief for gender discrimination under Title IX and state and city law. Moreover, the NY Training Center's position that they are neither direct nor indirect recipients of Federal assistance is misleading, as the amended complaint sufficiently pleads a claim of relief for Title IX.

Accordingly, the Plaintiff respectfully requests that the Court deny the NY Training Center's meritless motion to dismiss the Amended Complaint, which is annexed hereto as Exhibit A to the Declaration of Mark D. Shirian ("Shirian Dec.").

## II. LEGAL ARGUMENT

### A. Standards of review

Rule (8)a of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard that merely requires that a complaint "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47 (1947); *see also Bell Atlantic Corp. v. Twombley,* 550 U.S. 554, 555 (2007). A plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face to nudge [ ] [his or her] claims across the line from conceivable to plausible." *Id.* at 570.

In the Title VII context, a plaintiff need not plead all the elements of a prima facie case in order to withstand a 12 (b) (6) motion. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506. (2002). *Swierkiewicz's* holding remains good law after *Ashcroft v. Iqbal* 556 U.S. 662 (2009) and

*Twombly. EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014).

Subsequent to *Twombley*, the Supreme Court clarified any doubt about a heightened pleading standard by reiterating that Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' and that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93, 94 (2007). Further, when deciding a motion to dismiss pursuant to Rule 12(b)(6), "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether the plaintiff is entitled to offer evidence to support her claims." *Palkovic v Johnson*, 2008 U.S. App. LEXIS 12600 at *5 (2d Cir. June 13, 2008).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

In considering a motion to dismiss, a district court must "accept all factual claims in the complaint as true, and draw all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F. 3d 395, 403 (2d Cir. 2014) However, "the tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Rather, the complaint's factual allegations must

be enough to raise a right to relief above the speculative level, i.e. enough to make the claim plausible." *Arista Records, LLC v. Doe 3.* 604 F. 3d 110, 120 (2d Cir. 2010).

### B. Plaintiff Sufficiently Alleges Facts to Establish That He Was An Employee

#### i. Plaintiff Did Receive Remuneration

In support of its motion to dismiss, the NY Training Center argues that Plaintiff's NYSHRL and NYCHRL claims are not sufficiently pled because Plaintiff was not an employee of the NY Training Center. The NY Training Center accuses Plaintiff of inappropriately conflating legal entities.[1] However, it is clear that the Defendants, taken as a whole, are indeed one entity operating in two cities under multiple subsidiaries that contain the same "Upright Citizens Brigade" brand. Specifically, the NY Training Center asserts that Plaintiff did not receive direct or indirect remuneration. However, NY Training Center's position is severely misguided. By closely examining the Defendants' business model, it is clear that performers did in fact receive substantial remuneration.

In opposition to the NY Training Center's arguments with respect to their arguments regarding Plaintiff's employment claims, Plaintiff hereby incorporates herein by reference the arguments set forth in Plaintiff's Memorandum of Law in Opposition to the Initial Defendant's Motion to Dismiss.[2]

Additionally, Plaintiff attaches an article from the New York Times, dated February 19, 2013, titled "Laughs Can Be Cheap at a Comedy Theater", by Jason Zinoman, which is annexed as Exhibit B to the Shirian Dec. In the article, one of the founders of the Upright Citizens Brigade,

---

[1] NY Training Center fails to define Upright Citizens Brigade, LLC. It appears that "UCB" is used to define Upright Citizens Brigade, LLC.
[2] Plaintiff's Opposition to Defendants' Motion to Dismiss and supporting documents, Docket No. 68.

Mr. Besser, states that "we pay our performers,.. just not with money." Specifically the article states that "Upright Citizens Brigade did recently respond to the criticism by making several small changes to policy, like adding stand-ups to its small touring business (which does pay), promising to hold industry showcases for stand-ups and giving performers two free drinks a show." See Exhibit B. This arguably demonstrates that the NY Training Center is aware of the platform that they provide their performers and how it likely equates to some form of compensation.

In the case at bar, it is undisputed that the NY Training Center, and the rest of the Defendants, clearly hired Plaintiff to perform at its theater for a recurring show that Plaintiff hosted. Specifically, Plaintiff alleges that "in 2013, Plaintiff Glaser began producing and hosting a monthly stand-up series at the New York Entities' theater, entitled "Midnight Stand-Up," which ran until the August 2016 *UCB Meeting.*" See Exhibit A, paragraph 49. Plaintiff also alleges that he "was asked, in his capacity as a New York Entities performer and former student, to assist current students in sketch classes by performing those students' works in front of the class, as part of the student curriculum. Plaintiff Glaser did this several times during the latter part of his tenure with the New York Entities." Exhibit A, paragraph 52.

Plaintiff alleges that: "Performers at the New York Entities and California Entities, including Plaintiff Glaser, were compensated by free drinks and were allowed free admission to shows, as well as comped admission tickets for friends. Performers are also showcased to casting directors and pushed towards even more professional opportunities." See Exhibit A, paragraph 53.

Plaintiff also alleges that the New York Entities and California Entities' curriculum is intimately bound with its performances. Performers promote classes at performances, teach classes, and assist with classes. Students come in with the aim of becoming performers. The performance space is as much a theater as it is a showcase for the potential of the curriculum, and

the curriculum is touted as a way to increase entertainers' prospective value for employment within the entertainment industry. See Exhibit A, paragraph 55. At all times relevant to this action, Plaintiff Glaser was employed by the New York Entities, and exclusively utilized the New York Entities' equipment, including but not limited to, the theater itself, the UCB Training Center, film equipment, rehearsal space, meeting rooms, microphone, lighting, lighting and sound technicians, advertising and machinery. The New York Entities also maintained records of the dates that Plaintiff Glaser worked on the show and directly supervised Plaintiff Glaser while he was on the New York Entities' premises. See Exhibit A, paragraph 56. Plaintiff Glaser was then summarily terminated and banned by the New York and California Entities and was told that he could not enter the premises of the New York Entities, and thereby could neither perform nor take classes. Sidtis then told Plaintiff Glaser that he could appeal the UCB banning. See Exhibit A, paragraph 62.

Contrary to the NY Training Center's argument, under the NYCHRL, independent contractors may be counted as employees and can file employment discrimination claims against the contracting company, if they are "[n]atural persons employed as independent contractors to carry out work in furtherance of an employer's business enterprise who are not themselves employers. . ." NYCHRL § 8-102 (5). Notwithstanding, Plaintiff has demonstrated that he was an employee under NYSHRL, NYCHRL and Title VII.

In light of the facts alleged in Plaintiff's Amended Complaint, Plaintiff indeed did receive remuneration for his work as a performer in the form of free drinks. Moreover, under the NYCHRL, Plaintiff's tasks clearly "carried out work in furtherance of" the NY Training Center, as an employer's *business enterprise who are not themselves employers*. Clearly, Plaintiff's contribution benefited the NY Training Center and furthered its cause by assisting other students.

Additionally, the showcase and platform that the Defendants offers to its performers within the comedy community in the hopes of securing other performances was and continues to be a significant form of remuneration.

Moreover, as Sidtis was clearly the managing director of the NY Training Center, the NY Training Center arguments about when Plaintiff took classes should be ignored, as the actions that Sidtis took against Plaintiff were taken as his role of the managing director of the New York Entities, and arguably the California Entities. Indeed, there is evidence that the UCB was involved in the hiring, firing, and discipline, of Plaintiff. Plaintiff was hired by UCB and Glaser was disciplined by UCB employees and was even offered an appeal, which was later withdrawn by Sidtis. See Exhibit A, paragraph 62, and 82. This demonstrates control over Plaintiff's work.

Additionally, audience members, as well as prospective students, paid an admission fee in order to watch Plaintiff perform. Moreover, Plaintiff's association with the UCB opened other doors for him in the comedy community. Specifically, Plaintiff alleges that "Performers are also showcased to casting directors and pushed towards even more professional opportunities." See Paragraph A, paragraph 53. As such, Plaintiff and the NY Training Center mutually benefited by the arrangement, clearly, the NY Training Center relied on the labor of its performers to recoup its investment into its theatre, by luring prospective students to enroll into UCB classes.

Ultimately, the question of whether this arrangement demonstrates that Plaintiff received sufficient employee benefits is inappropriate for the purposes of a pre-answer motion to dismiss. Notwithstanding, at the very least, Plaintiff alleges facts sufficient to determine that he received remuneration. As such, NY Training Center's assertion that Plaintiff was not an employee for the purposes of NYSHRL and NYCHRL because he did not receive remuneration should be ignored.

Plaintiff alleges that "in 2013, Plaintiff Glaser began producing and hosting a monthly stand-up series at the New York Entities' theater, entitled "Midnight Stand-Up.": See Exhibit A, paragraph 49.

Plaintiff also alleges that "Midnight Stand-Up was a hit, selling out almost every performance. Plaintiff Glaser booked new comics and famous celebrities. During Midnight Stand-Up, while the audience was getting seated, a projector was run, projecting messages onto the stage's wall encouraging audience members to take classes and become performers like what they see at New York Entities' theaters." See Exhibit A, paragraph 50.

As for the right to assign additional projects factor, an employer generally directs an employee as to which tasks to perform, while an independent contractor is typically hired only for particular contracts and obligated to perform only those tasks to which it has already agreed by contract. *Johnson v. FedEx Home Delivery*, No. 04 CV 4935, 2011 WL 6153425 at *13 (E.D.N.Y. Dec. 12, 2011) (Gleeson, J.).

In the case at bar, Glaser alleges that "in addition, Plaintiff Glaser was asked, in his capacity as a New York Entities performer and former student, to assist current students in sketch classes by performing those students' works in front of the class, as part of the student curriculum. Plaintiff Glaser did this several times during the latter part of his tenure with the New York Entities." See Exhibit A, paragraph 52. Arguably, Glaser was assigned projects in addition to his role as a host of the show, which supports the position that Plaintiff was an employee.

Glaser and the other performers at the UCB were arguably integral to UCB's business and profit. Moreover, any specialized skill required for Plaintiff to perform at the UCB was arguably attained from the UCB courses Plaintiff enrolled in previously. See Exhibit A, paragraph 42.

Therefore, in light of the foregoing, Plaintiff alleges facts sufficient to establish an employment relationship with the NY Training Center.

### C. Plaintiff Alleges Sufficient Facts to Support a Claim of Gender Discrimination

#### i. Plaintiff Successfully Alleges Facts That Give Rise to An Inference of Discrimination

The NY Training Center's major issue in support of its motion to dismiss Plaintiff's claims of relief for gender discrimination under Title IX, NYSHRL and NYCHRL is that the NY Training Center argues that Plaintiff fails to allege that their decision to terminate Plaintiff was motivated by gender bias. However, NY Training Center ignores the fact that Plaintiff's Amended Complaint alleges facts that certainly do demonstrate some sort of gender bias at the NY Training Center. With respect to the NT Training Center's arguments regarding Plaintiff's gender bias claims, Plaintiff hereby incorporates herein by reference the arguments set forth in Plaintiff's Memorandum of Law in Opposition to the Initial Defendant's Motion to Dismiss.[3]

Plaintiff's claim is identical to *Doe v. Columbia University*, 831 F.3d 46, 48 (2d Cir. 2016), a case in which the Second Circuit reversed the dismissal of a Title IX reverse discrimination claim — i.e., a claim by a student alleging that the university's investigation of an alleged sexual assault was flawed as a result of gender-based bias in favor of the complainant. In *Columbia*, the plaintiff alleged that "both the investigator and the panel declined to seek out potential witnesses Plaintiff had identified as sources of information favorable to him"; "[t]he investigator and the panel failed to act in accordance with University procedures designed to protect accused students"; and "[t]he investigator, the panel, and the reviewing Dean . . . reached conclusions that were incorrect and contrary to the weight of the evidence."

---

[3] Plaintiff's Opposition to Defendants' Motion to Dismiss and supporting documents, Docket No. 68.

The court held that "[w]hen the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an apparent reason based in the evidence), it is plausible to infer . . . that the evaluator has been influenced by bias." To find that the bias was sex-related, the court focused on the allegations of "substantial criticism of the University, both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students," and that the "University's administration was cognizant of, and sensitive to, these criticisms."

The court held that "the temporary presumption afforded to plaintiffs in employment discrimination cases under Title VII applies to sex discrimination plaintiffs under Title IX as well." **The court reasoned that Title IX claims have so much in common with Title VII claims that on "certain sorts of facts, rules the Supreme Court established for Title VII litigation appear to apply also to such similar claims of sex discrimination under Title IX."**

The Court in *Doe v. Columbia* held that the Complaint alleges that during the period preceding the disciplinary hearing, there was substantial criticism of the University, both in the student body and in the public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students. It alleges further that the University's administration was cognizant of, and sensitive to, these criticisms, to the point that the President called a University-wide open meeting with the Dean to discuss the issue.

Ultimately, the court held that the Complaint adequately pled facts that plausibly support at least the needed minimal inference of sex bias. *Also see Littlejohn v. City of New York*, 795 F.3d 297 at 311.

In the case at bar, Plaintiff alleges that he "believes that there was a gender bias at UCB, especially given (i) the fact that UCB was receiving pressure from female members to crack down on alleged misconduct and found a convenient scapegoat to show that it was listening" by terminating him. See Exhibit A, paragraph 91.

Plaintiff alleges that "The New York Entities and California Entities never conducted a formal hearing against Plaintiff Glaser with respect to the allegations of sexual assault. Instead, upon information and belief, the Defendant, facing increasing pressure and backlash from UCB members and the public responding to UCB's **previous** failure to crackdown on multiple complaints of sexual assault and misconduct against male performers and staff, were motivated to make an example of Plaintiff Glaser at the expense of his right to due process because of his gender." See Exhibit A, paragraph 66.

Plaintiff attached an article to his amended complaint by Emily McCombs, titled *The Comedy World Can't Handle Rape Allegations*, Aug. 18, 2016, ("The Cut article") discussing a culture of sexual misconduct at UCB, with women stating "sexual harassment and assault has been ignored by the [UCB] administration for years," and detailing the accounts of multiple women who complain to the UCB administration yet UCB took "no action" or even "punished or reprimanded" the women for speaking out in the past. *Id.; also see* Exhibit B of Plaintiff's Amended Complaint. A logical reading of The Cut article follows that the UCB was clearly under criticism before Plaintiff's termination, even though the article is dated after the decision was made.

Specifically, Plaintiff alleges that "by administering a swift and arbitrary punishment, UCB attempted to salvage its reputation among its members, but in so doing placed Plaintiff Glaser's reputation on the sacrificial alter and made him into a scapegoat. In sum, for the sake of

showing they were tough on men, the Defendant provided Plaintiff Glaser a process that was one-sided, irregular, and unsupported by evidence because of his gender. The fallout from the UCB Meeting, unfortunately, went well beyond merely destroying Plaintiff Glaser's reputation at UCB." Exhibit A, paragraph 67.

Plaintiff alleges that" the biased attitudes by Defendant Upright Citizens Brigade LLC through its officers, agents, and employees was, at least in part, adopted to refute criticisms circulating within the comedy community and in the public press that the UCB was turning a blind eye to female students' charges of sexual assaults by male performers." *See* Exhibit A, paragraph 197.

Plaintiff further alleges that the" biased attitudes by the Defendant Upright Citizens Brigade LLC through its officers, agents, and employees was, at least in part, motivated in the instance to accept the females' accusations of sexual assault and reject the male's side of the story, so as to show the comedy community and the public that the UCB is serious about protecting female students and performers from sexual assault by male students and performers." *See* Exhibit A, paragraph 198.

In the case at bar, Plaintiff sufficiently alleges circumstances plausibly supporting a motivation on the part of the NY Training Center, as the UCB as a whole clearly suffered criticism in the press and within the comedy community about how it handled sexual assault and harassment before they determined to terminate Plaintiff.

At the time Sidtis and O'Neill terminated Plaintiff, they certainly were aware that the UCB had been criticized for its conduct and handling of sexual assault claims in the past. It is plausible that the UCB and the individually named Defendant were motivated to refute those criticisms by siding with the accusing females an against the accused male, without even a formal hearing.

Additionally, annexed hereto as Exhibit C to Shirian's Decl. is an article by Katie J.M. Baker from Buzzfeed titled, *Standing Up To Sexual Harassment and Assault in L.A.'s Comedy Scene*, dated January 16, 2016, which was published about seven months before Defendants' decision to terminate Plaintiff. The article states that it is an "exclusive story of how female comedians decided to take matters into their own hands and kick alleged assaulters and harassers out of their community – *and the scandal that followed.*. Specifically, the article states that "Members of the 'Women of UCB' Facebook group told BuzzFeed News they felt pressure to ignore annoying or even abusive behavior if they wanted to succeed. A logical reading of the Buzzfeed article demonstrates that a criticism of UCB as a whole had existed before Plaintiff's termination with respect to how the UCB handled sexual assault and harassment allegations made by women against male performers, regardless if it occurred in Los Angeles or New York.

As such, Plaintiff successfully alleges facts that give rise to an inference of gender discrimination and NY Training Center's argument should be ignored.

### ii.  Plaintiff's Hostile Work Environment Claim

NY Training Center argues that Plaintiff's hostile work environment claim against the NY Training Center fails because Plaintiff does not allege that he was enrolled in classes, performing, or working at the NY Training Center after 2010. However, NY Training Center's argument is misguided, as the allegations made by Plaintiff demonstrate that it is plausible that the NY Training Center's actions may have controlled or impacted the environment that Plaintiff was engaged in. Moreover, as previously demonstrated, the academic and performance aspects of the NY Training Center and the UCB are intertwined.

"To state a cause of action alleging a hostile work environment under Executive Law § 296, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is

objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected class].

To state a hostile work environment claim under the NYCHRL, a plaintiff need only allege differential treatment of any degree based on a discriminatory motive. *Awad v. City of New York*, No. 13 Civ. 5753, 2014 WL 1814114, at *7 (citing *Gorokhovsky v. N.Y.S. Hous. Auth.*, 552 Fed.Appx. 100, 102 (2d Cir. 2014)). "Even a single comment may be actionable under [the] NYCHRL 'in appropriate circumstances.' " Id. (quoting *Gorokhovsky* 552 Fed.Appx. at 102.) A claim under the NYCHRL "should only be dismissed if plaintiff does not allege behavior by Defendant that 'cannot be said to fall within the broad range of conduct that falls between severe and pervasive on the one hand and a petty slight or trivial inconvenience on the other.' " Id. (quoting *Hernandez v. Kaisman,* 957 N.Y.S.2d 53, 58-59 (1st Dep't 2012).

In the case at bar, Plaintiff alleges that "when Plaintiff Glaser was first involved with the New York Entities in 2006 as a student, O'Neill, the current artistic director who was then also the New York Entities' course registrar, mocked Plaintiff Glaser for having his parents pay for his classes, which humiliated Plaintiff Glaser. See Exhibit A, paragraph 57.

Additionally, by offering an appeal and later withdrawing the offer, the Defendant arguably created a hostile work environment. See Exhibit A, paragraphs 81-82.

Accordingly, Plaintiff successfully alleges a claim of relief for hostile work environment as to the NY Training Center.

### iii.   Plaintiff's Claim for Retaliation

In light of Defendants' prior arguments, Plaintiff previously withdrew his claim of relief for retaliation.[4]

### D. Plaintiff's Education Claims of Relief Should Survive

The NY Training Center submits Plaintiff somehow cannot state a claim under Title IX, and thus his claim for declaratory relief must also fail. Specifically, the NY Training Center argues that Plaintiff's claims are time-barred, because he was a student in 2010. However, the negligence that Plaintiff alleges occurred in August 2016, which is when the sham investigation and negligence by the UCB administration took place. As Plaintiff commenced this action in February 2018, this baseless argument should be ignored.

The NY Training Center also argues that Plaintiff's claim for discrimination under Title IX fails because he was not an employee of NY Training Center. Defendant further argues that Plaintiff was not a student nor an employee at the time of the complained of conduct (August 2016). However, Defendant's arguments fail. In opposition to the NY Training Center's arguments with respect to their arguments regarding Plaintiff's education claims, Plaintiff hereby incorporates herein by reference the arguments set forth in Plaintiff's Memorandum of Law in Opposition to the Initial Defendant's Motion to Dismiss.[5]

In *Jane Doe v. Mercy Catholic Medical Center* (3d Cir. 2017) No. 16-1247, the U.S. Court of Appeals for the Third Circuit found that Title IX and Title VII both protect employees against workplace discrimination, students and employees have the right to file a lawsuit for damages

---

[4] Plaintiff previously withdrew his claim of relief for retaliation in his Memorandum of Law in Opposition. See Docket No. 68.
[5] Plaintiff's Opposition to Defendants' Motion to Dismiss and supporting documents, Docket No. 68.

under Title IX, and employees of federally funded education programs may sue for retaliation under Title IX.

In the case at bar, Plaintiff alleges that he "was given no information other than being told that the alleged actions that spurred the complaints occurred in 2010 or prior, at least six years before the UCB Meeting." Exhibit A, Paragraph 61. As such, this fact alleged by Plaintiff demonstrates that Plaintiff may have been a student at the time of the alleged misconduct, which would without a doubt trigger Title IX.

Defendant cite to *Summa v. Hofstra University*, 708 F. 3d 115, 131 & 1 (2d Cir. 2013), but conveniently fail to mention a footnote from the Court's decision which noted that:

> "the First and Fourth Circuits have recognized such a right of action, *see Preston v. Virginia ex rel. New River Cmty. Coll.,* 31 F.3d 203, 205-06 (4th Cir.1994) ("An implied private right of action exists for enforcement of Title IX. This implied right extends to employment discrimination on the basis of gender by educational institutions receiving federal funds." (citation omitted)); *Lipsett v. Univ. of Puerto Rico,* 864 F.2d 881, 897 (1st Cir.1988) **(finding employment discrimination against a student-employee actionable under Title IX),** while the Fifth Circuit has held there is no such right, *see Lakoski v. James,* 66 F.3d 751, 755 (5th Cir.1995). We also note that the U.S. Department of Justice recognizes such a cause of action. U.S. DEP'T OF JUSTICE, TITLE IX LEGAL MANUAL IV.B.2., *available  at* http://www.justice.gov/crt/about/cor/coord/ixlegal.php ("The Department takes the position that Title IX and Title VII are separate enforcement mechanisms. Individuals can use both statutes to attack the same violations. This view is consistent with the Supreme Court's decisions on Title IX's coverage of employment discrimination, as well as the different constitutional bases for Title IX and Title VII.") (citing *Henschke v. N.Y. Hosp.-Cornell Med. Ctr.,* 821 F.Supp. 166, 172-73 (S.D.N.Y. 1993))."

*Id.*

As such, the NY Training Center's argument that that Plaintiff is somehow not entitled to the protections of Title IX because he was not an employee nor a student at the time of the decision to terminate him should be given no credence, as it is very clear that Title IX covers former students and employees. The Title IX violations occurred in 2016, when Defendants failed to provide Plaintiff with the due process protections enumerated within Title IX.

16

Moreover as previously discussed, at the very least, Plaintiff demonstrated that he was an employee by contributing to the business of the NY Training Center. The Buzzfeed article also states that the "it's good for business to blur the lines between theatergoers and actors — and actors and instructors — so that newcomers feel like part of a big, funny family." See Exhibit C.

Accordingly, Plaintiff should be afforded the protections of Title IX as against the NY Training Center.

### E. Plaintiff's Tort Claims Must Survive

The NY Training Center argues that Plaintiff's fifth and eight claims for negligent training and supervision and negligent infliction of emotional distress should be dismissed as to the NY Training Center. As a preliminary matter, as Sidtis was acting in his capacity as the director of the NY Training Center and the other Defendants, the negligence of Sidtis is imputed onto the NY Training Center. In opposition to the NY Training Center's arguments with respect to their arguments regarding Plaintiff's tort claims, Plaintiff hereby incorporates herein by reference the arguments set forth in Plaintiff's Memorandum of Law in Opposition to the Initial Defendant's Motion to Dismiss.[6]

Defendant desperately argue that Plaintiff is barred from bringing any negligence claims against Defendant, as such claims would be pre-empted by the Workers' Compensation Act. However, this argument fails miserably, as Defendant cannot establish that it even offered Plaintiff or other similarly situated performer employees the benefit of bringing worker's compensation claims.

In addition, there is a specific section of the New York Workers' Compensation Law that addresses mental injuries. Section 2(7) of the workers' compensation law in essence states that

---

[6] Plaintiff's Opposition to Defendants' Motion to Dismiss and supporting documents, Docket No. 68.

a mental injury is not compensable if it arose from a lawful personnel decision involving a disciplinary action, work evaluation, job transfer, demotion, or termination taken in good faith by the employer. Moreover, if the Defendant did not have Workers Compensation insurance for its performers, this argument will be of no moment, as Plaintiff was never given the opportunity to seek redress through worker's compensation. Accordingly, Plaintiff's negligence claims are not pre-empted by the Workers' Compensation Act.

The NY Training Center argues that that insofar as Plaintiff alleges that the Individual Defendant were acting within the scope of their employment, Plaintiff's claim of negligent training and supervision must fail.

However, NY Training Center's argument is entirely meritless. In *Gonzalez v City of the New York*, 2015 NY Slip Op 06869, the court held that the alleged duty owed to plaintiff stems from New York's long recognized tort of negligent hiring and retention (see *Haddock v City of New York*, 75 NY2d 478 [1990]; *Ford v Gildin*, 200 AD2d 224 [1st Dept 1994]; *Detone v Bullit Courier Serv.,* 140 AD2d 278 [1st Dept 1988], lv denied 73 NY2d 702 [1988]). This tort applies equally to municipalities and private employers (see *Haddock*, 75 NY2d 478). This theory of employer liability should be distinguished from the established legal doctrine of "respondeat superior," where an employer is held liable for the wrongs or negligence of an employee acting within the scope of the employee's duties or in furtherance of the employer's interests (see Restatement [Second] Agency §§ 219[1], 228).

In contrast, under the theory of negligent hiring and retention, an employer may be liable for the acts of an employee acting outside the scope of his or her employment (see id. at § 219[2]; see also id. at § 213 [comment d]); Restatement [Second] of Torts § 317).

The NY Training Center contends that Plaintiff does not allege the elements of a claim for negligent training and supervision.

18

Thus, in this case, plaintiff's claims of negligent supervision and training do not depend on whether the Individual Defendant acted within the scope of his employment or whether the Defendant participated in, authorized, or ratified the Individual Defendant tortious conduct. Rather, the alleged breach of duty stems from the claim that during Sidtis and O'Neill's employment with the UCB, UCB became aware or should have become aware of problems with the Individual Defendant that indicated that they were unfit, uneducated and untrained to handle investigations of sexual assault, that the UCB failed to take further action such as an investigation, discharge, or reassignment, and that plaintiff's damages were caused by the UCB negligent retention, or supervision of the Individual Defendant.

Plaintiff alleges that Defendant breached this duty  and were negligent in the following respects: a. Failing to train its employees, agents or representatives in the proper method to thoroughly investigate and adjudicate, without bias, complaints of sexual misconduct. b. Failing to supervise its employees, agents or representatives and making sure the procedures were followed; and c. Failing to maintain proper policies and procedures designed to fairly, reasonably and properly adjudicated claims of sexual misconducts without bias or favor. See Exhibit A, paragraph 161.

Plaintiff also alleges that "upon information and belief, the Individual Defendant did not have any training in adjudication; in the law; in the weighing of evidence; in what type of conduct constitutes sexual harassment or sexual assault; or in the relevance or irrelevance of particular types of evidence in the alleged sexual assault setting." See Exhibit A, paragraph 88.

Of course, Plaintiff sufficiently alleges a claim for negligent supervision and training of employees, as the Individual Defendant were not educated and trained to handle an investigation involving accusations of sexual assault. Accordingly, the NY Training Center's

motion to dismiss Plaintiff's claim for negligent training and supervision of employees should be denied.

**F. The NY Training Center Is A Direct or At Least An Indirect Recipient of Federal Assistance**

The NY Training Center moves to dismiss Plaintiff's Title IX claims under FRCP 12(b)(1) for lack of subject matter jurisdiction. As pointed out by the Defendant, the court may consider evidentiary submissions to resolve a factual dispute with respect to whether this Court lacks subject matter jurisdiction *See Makarova v. U.S.*, 201 F. 3d 110, 113 (2d. Cir. 2000). Although the NY Training Center claims that it is neither a direct or indirect recipients of Federal financial assistance, the facts belie their position. In opposition to the NY Training Center's arguments with respect to their arguments regarding Plaintiff's Title IX claims, Plaintiff hereby incorporates herein by reference the arguments set forth in Plaintiff's Memorandum of Law in Opposition to the Initial Defendant's Motion to Dismiss.[7]

Annexed hereto to the Shirian Dec. as Exhibit D is a print-out from www.usaspending.gov, [8] which appears to be a record of a federal loan from the Small Business Administration to the Upright Citizens Brigade Training Center as a recipient, with a DUNS number of 189666910 and an address of 5419 W. Sunset Blvd., Los Angeles, 90027. Additionally, the address of 5419 W. Sunset Blvd., Los Angeles, 90027 is precisely where the California Entities are located at and is the location of the UCB's Los Angeles theatre.

Shockingly, contrary to NY Training Center's position that it somehow did not benefit from federal assistance, the website lists the Upright Citizens Brigade Training Center as a recipient of the federal funds.

---

[7] Plaintiff's Opposition to Defendants' Motion to Dismiss and supporting documents, Docket No. 68.

[8] https://www.usaspending.gov/#/award/46108919

Additionally, annexed to the Shirian Dec. as Exhibit E is a copy of the operating agreement of 5419 Sunset, which is purportedly signed by Defendant Sidtis (twice) and shockingly demonstrates that Defendant Sidtis is actually a manager of 5419 Sunset and that Defendant UCBTALA, LLC is a member of the 5419 Sunset entity. Moreover, the address used for Sidtis is a New York address in the operating agreement. See Exhibit E.

Incredibly, the affidavit of Defendant Sidtis submitted in support NY Training Center's motion is quite misleading. For example, Sidtis conveniently fails to disclose that he is a manager of the 5419 Sunset entity, while admitting and acknowledging that the 5419 Sunset entity took out federal funds. See Sidtis Affidavit, paragraph 10. Additionally, Sidtis fails to disclose that UCBTLA, LLC is a member of Defendant 5419 Sunset. A fair reading of Sidtis' Affidavit demonstrates that the NY Training Center in this action are all associated as one UCB brand and entity.

It follows that the federal funding that was secured by 5419 Sunset and the Defendants did benefit the NY Training Center, as it bolstered its prominence in the comedy industry by having an additional brand new theater to offer its students on Sunset Boulevard in Los Angeles. For NY Training Center to argue that it was not a direct or indirect recipient of the federal funding is disingenuous.

Accordingly, Plaintiff's assertion that the NY Training Center was either a direct and indirect recipient of federal funds under Title IX is correct and sufficient to meet the burden that jurisdiction is proper.

## G. Title IX Does Extend to Beneficiaries of Financial Aid

NY Training Center argues that it did not execute a written assurance of compliance pursuant to Title IX and did not knowingly or voluntarily accepted the terms of the Spending

Clause Contract and are not covered by Title IX. However, Exhibit D demonstrates that it may have.

However, *Williams v. Board of Regents,* 47 F.3d 1282 (11th Cir. 2007), is a Title IX case where the court noted that the plaintiff "alleged that [the University of Georgia], a funding recipient, has ceded control over one of its programs, the athletic department, to [the University of Georgia Athletic Association] and provided extensive funding to UGAA." *Id.* at 1294. Based on this contention, the court ruled that to not extend Title IX coverage to the University in this case would allow "funding recipients to cede control over their programs to indirect funding recipient" but avoid Title IX liability." *Id.* (citing *Cmtys. For Equity v. Mich, High Sch. Athletic Ass'n,* 80 F. Supp. 2d 729, 733-34 (W.D. Mich 2000).

In the case at bar, it is clear that the NY Training Center was at least a beneficiary of the federal funds purportedly obtained by Defendant 5419 Sunset. Plaintiff alleges that, upon information and belief, 5419 Sunset executed an assurance of compliance. See Exhibit A, paragraph 105. However, Sidtis' affidavit does not refute Plaintiff's allegation that an assurance of compliance was executed by Defendant 5419 Sunset.

Additionally, the NY Training Center argues that Plaintiff has failed to allege that 5419 Sunset had any formal institutional affiliation with the NY Training Center. However, this is false, as Plaintiff alleges that "Defendant 5419 Sunset has common employees and managers with the New York Entities and California Entities." Exhibit A, para. 54. Additionally, the operating agreement demonstrates that the NY Training Center, through Sidtis, had a formal institutional affiliation with the entity that secured the federal funding and the property was used and continues to be used by the Defendants. Plaintiff alleges that "5419 Sunset has common employees, management and/or operations staff with the New York Entities and/or California Entities. In

2012, 5419 Sunset took out a federal small business loan ("SBA") to assist for the purpose of constructing and rebuilding the theatre and office space located on its property at 5419 W. Sunset Boulevard in Los Angeles. 5419 received funding from its SBA loan on May 13, 2015, which was secured by Defendant Hale and for the benefit of the California Entities and New York Entities. See Exhibit A, paragraphs 23-25.

Accordingly, Title IX does extend to beneficiaries of federal financial assistance and the NY Training Center should be subject to Title IX. Clearly, the NY Training Center benefited from the federal funds by being able to offer a brand new theater on Sunset Boulevard for its bicoastal theater and school. The New York Training Center's reasoning would open the door for schools with federal funding to start "dummy entities" to secure funding in order evade Title IX liability. This cannot and should not happen.

NY Training Center also argues that Sidtis was not a managing director of the NY Training Center. Additionally, they argue that a similar manager does not demonstrate that all benefited from the federal aid. This nonsensical argument by the NY Training Center should be ignored, as they have failed to cite any case law on this issue. Moreover, as of October 20, 2018, the ucbtrainingcenter.com catalog indicates that Alex Sidtis is a managing director of the New York UCB Training Center under the Administration of the Upright Citizens Brigade. Annexed hereto to the Shirian Dec. as Exhibit F is a copy of the screen shot from the UCB Website.[9] Incredibly, the NY Training Center represents that Sidtis is not a manager of the NY Training Center.

The Defendants have already admitted that 5419 leases the space to the California Entities but simply ignore the fact that in the case of federal financial assistance extended to provide real property or structures thereon, such assurance shall obligate the recipient, or in the case of a

---

[9] https://newyork.ucbtrainingcenter.com/catalog

subsequent transfer, the transferee, for the period for which the real property or structures are used to provide an education program or activity.. *See* 65 Fed Reg. 52867 at ï½§ 115 (2000).

Furthermore, Title IX regulations provide that land originally acquired through a program receiving federal financial assistance must include a covenant binding on subsequent purchasers or transferees that requires nondiscrimination for as long as the land is used for the original or a similar purpose for which the federal assistance is extended. *See* 65 Fed Reg. 52867 at ï½§ 115 (2000).

By Sidtis' own admission, 5419 Sunset owns certain property and leases the space to the California Entities. However, it is clear that Sidtis, the manager of the New York Entities and Hale, the former manager of the California Entities, are participants and have roles in the 5419 Sunset entity, which secured the federal financial assistance.

NY Training Center's use of *NCAA v. Smith,* 525 U.S. 459, 460 (1999), is misplaced, because in that case, the NCAA and the federally assisted colleges were clearly separate and distinct entities and did not work in unison. In the case at bar, Defendant 5419 Sunset has common employees and managers with the NY Training Center and the rest of the Defendants. As such, the NY Training Center was clearly a beneficiary of the federal assistance. See Exhibit D.

In *Jane Doe v. Mercy Catholic Medical Center* (3d Cir. 2017) No. 16-1247, the U.S. Court of Appeals for the Third Circuit found that that under Title IX, "education program or activity" means "all of the operations" of an entity "any part of which" receives federal funding, including not only public and private postsecondary institutions, but also corporations, partnerships, sole proprietorships, and other organizations engaged in the business of providing education, healthcare, housing, social services, or parks and recreation." *Id.*

In the case at bar, Plaintiff did in fact allege that the NY Training Center had some sort of affiliation with Defendant 5419 Sunset Properties, which the Defendants have already admitted is the entity that purportedly secured the federal assistance.

Accordingly, Plaintiff has successfully conferred jurisdiction of this Court through Title IX jurisdiction.

### III. CONCLUSION

Plaintiff has sufficiently pled cognizable claims. As a result of the foregoing, Plaintiff respectfully requests this Court to deny NY Training Center's motion to dismiss the Amended Complaint in its entirety.

Dated: October 29, 2018
        New York, New York

                                          Respectfully submitted,

                                          MARK DAVID SHIRIAN P.C

                                          By: _____
                                              Mark D. Shirian, Esq.
                                          228 East 45th Street, Suite 1700B
                                          New York, NY 10017
                                          Telephone: (516) 417-0201
                                          Email: mshirian@shirianpc.com
                                          COUNSEL FOR PLAINTIFF


CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2018, I served the foregoing to be filed by ECF, which will notify all attorneys of record.

                        s/ Mark D. Shirian