UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AARON GLASER,

                              Plaintiff,

              -v-

UPRIGHT CITIZENS BRIGADE, LLC,
et al.,
                              Defendants.

18-CV-971 (JPO)

<u>OPINION AND ORDER</u>

J. PAUL OETKEN, District Judge:

Plaintiff Aaron Glaser, a stand-up comedian, brings this sex discrimination suit against various affiliated comedy theatres and schools based in New York City and Los Angeles, as well as against a company that owns property leased by some of the theaters, and against three of the theatres' directors (collectively, "Defendants"). (Dkt. No. 25 ("FAC") ¶¶ 1, 7–22.) Glaser raises tort claims, as well as claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* (FAC ¶¶ 117–249.) Before the Court now are Defendants' three motions to dismiss the operative First Amended Complaint. (Dkt. Nos. 39, 52, 64.) For the reasons that follow, Defendants' motions to dismiss are granted.

I.      **Background**

        A.      **Factual Background**

The following facts are drawn from Plaintiff's First Amended Complaint and are presumed true for purposes of the instant motions.

### 1. The Parties

Plaintiff Aaron Glaser is a 31-year-old male and was a resident of the State of New York at all relevant times. (FAC ¶ 6.) Defendant Upright Citizens Brigade LLC ("UCB LLC") is a New York company that operates comedy theatres and training centers in New York City and Los Angeles. (FAC ¶¶ 7, 9.) Upright Citizens Brigade Training Center, LLC ("UCBTC LLC") is a separate entity, also incorporated in New York, that operates two Manhattan theatres together with UCB LLC and that provides training in improvisational and sketch comedy. (FAC ¶¶ 11–14.) Glaser refers to these two entities collectively as the "New York Entities." (FAC ¶ 12.) Defendant Shannon Patricia O'Neill serves as the New York Entities' Artistic Director, and Alex Sidtis serves as UCB LLC's Managing Director, which also entails managing the operations of UCBTC LLC. (FAC ¶¶ 8–11.)

Glaser was a student of the New York Entities from 2006 to 2010, and he served as an intern for the New York Entities from 2007 to 2008. (FAC ¶¶ 42, 47.) Following the conclusion of his time as a student in 2010, Glaser continued to perform at the New York Entities' theatres; at the time of the August 2016 meeting that gave rise to this suit, Glaser was producing and hosting his own monthly stand-up comedy series. (FAC ¶ 49.) Glaser alleges that his stand-up show was a "hit," and that the New York Entities took advantage of his show's popularity by advertising their products at his performances and by requesting that he provide his services to a private client. (FAC ¶¶ 50–51.) During this period, Glaser "several times" assisted the New York Entities' teachers in the execution of their curricula by performing student works at their classes. (FAC ¶ 52.) Glaser represents that he was compensated for his efforts during this period in the form of free drinks, free admission tickets to shows hosted by the New York Entities, and the opportunity to showcase his work for casting directors. (FAC ¶ 53.)

Glaser alleges that various entities in Los Angeles, California, also operate under the Upright Citizens Brigade umbrella. (FAC ¶¶ 7, 16.) These entities, which Glaser collectively refers to as the "California Entities," include Defendants Upright Citizens Brigade Training Center LA, LLC; UCB Inner Sanctum, LLC; and UCBTLA, LLC. (FAC ¶ 17.) Defendant Susan Hale is the Managing Director of the California Entities. (FAC ¶ 18.)

Defendant 5419 Sunset Properties, LLC ("5419 Sunset") is an entity that owns a theatre and office space that it leases to the California Entities. (FAC ¶¶ 20–21.) Glaser alleges that 5419 Sunset and the New York and California Entities (collectively, the "UCB entities" or "UCB") all operate "as one unified entity." (FAC ¶ 35.) More specifically, he alleges that these entities all share common employees, management, and staff (FAC ¶ 23), including Hale, who serves as "an owner, employee and/or representative of 5419 Sunset, in conjunction with her duties as Managing Director of the California Entities" (FAC ¶ 22). Glaser further alleges that 5419 Sunset is a "dummy entity" created by the New York and California Entities in order to evade the constraints placed on educational institutions by Title IX. (FAC ¶ 101.)

## 2. The August 11, 2016 Meeting

On August 9, 2016, Glaser received an email inviting him to attend an August 11, 2016 meeting at "UCB's main offices" in Manhattan. (FAC ¶ 59.) Present at that meeting were Glaser and Defendants O'Neill and Sidtis. (*Id.*) At the meeting, O'Neill and Sidtis told Glaser that he had been accused of having committed one or more rapes sometime prior to 2011, and that following an investigation into those accusations, the New York and California Entities had resolved to ban Glaser from their properties and from attending or performing at any of their shows or classes. (FAC ¶¶ 60–62.)

Glaser maintains that he is innocent of the rapes he has been accused of. (FAC ¶ 94.) Glaser alleges that UCB erroneously found him to be culpable for this conduct because UCB

conducted a one-sided investigation in which he played no part, and because he was not afforded a hearing at which he could contest those allegations or confront his accusers. (FAC ¶¶ 61, 90.) Sidtis also allegedly never delivered on a promised opportunity for Glaser to appeal his ban. (FAC ¶¶ 81–82.)

Glaser alleges that the New York and California Entities declined to afford him these procedural protections because of their bias against men, a bias that stemmed from UCB's effort to refute public accounts of its past failures to properly address allegations of male-on-female sexual violence. (FAC ¶ 66–67.) In support of these allegations of gender bias, Glaser has attached to his First Amended Complaint a news article from the week following his ban that describes a long history of ignored allegations of male-on-female sexual harassment at UCB. (FAC ¶ 66 n.1; Dkt. No. 25-2 at 3–4.) The article also details the widespread and heated public reaction that followed on the heels of Glaser's ban. (Dkt. No. 25-2.)

### 3. Aftermath

Despite Defendants' promises that the allegations against Glaser would remain confidential (FAC ¶ 62), internet users began sharing that information on Twitter within days of the August 11, 2016 meeting (FAC ¶ 68). Plaintiff alleges that either Sidtis or O'Neill must have leaked that information, because they "were in such a ready position to do so," presumably because they had been the only others present at the meeting. (*Id.*) As news of the allegations against Glaser spread, one UCB performer eventually generated a "fake press release," purportedly authored by UCB, that described Glaser as a rapist. (FAC ¶ 69.) Though UCB served cease and desist letters on the author of the fake press release, UCB declined to publicly rebut or comment on the allegations against Glaser, and it instead issued only a generic statement confirming that UCB takes all allegations of sexual misconduct seriously. (FAC ¶¶ 71, 73.)

Glaser alleges that the phrase "Aaron Glaser is a rapist" ultimately "went viral across the internet." (FAC ¶ 72.) His First Amended Complaint describes in detail the negative impact this public notoriety had on his life and career. For example, following the public disclosure of the contents of the August 11, 2016 meeting, Glaser was no longer able to book comedy venues for his shows (FAC ¶ 77), one business entity for which Glaser had recorded a commercial pulled his content from the internet (FAC ¶ 78), his roommates (who were also UCB students) expelled him from his residence (FAC ¶ 79), and he received death threats by phone and via his social media accounts (FAC ¶ 80). Glaser eventually became suicidal, and he began taking antidepressant medications "to get him through such dark times." (FAC ¶ 83.) He alleges that he will now live the rest of his life bearing the false label of "rapist." (FAC ¶¶ 94–95.)

### B. Procedural Background

Glaser commenced this action by filing a complaint against Defendants UCB LLC, O'Neill, and Sidtis ("the Initial Defendants") on February 4, 2018. (Dkt. No. 1.) After the Initial Defendants moved to dismiss Glaser's claims against them (Dkt. No. 15), Glaser filed the operative First Amended Complaint, this time asserting claims against the Initial Defendants, the California Entities, Hale, 5419 Sunset, and UCBTC LLC. (FAC ¶ 1.) Before the Court now are three motions to dismiss the First Amended Complaint: (1) the Initial Defendants' motion, filed on August 1, 2018 (Dkt. No. 39); (2) the California Entities, Hale, and 5419 Sunset's motion, filed on August 20, 2018 (Dkt. No. 52); and (3) UCBTC LLC's motion, filed on October 1, 2018 (Dkt. No. 64). The Court is now prepared to rule on Defendants' motions.

## II. Legal Standards

### A. Rule 12(b)(1)

Where a party moves to dismiss a plaintiff's complaint for lack of subject-matter jurisdiction solely on the basis of the allegations contained in the pleading, a "plaintiff has no

evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). Instead, in such a scenario a plaintiff is required only to "allege facts that affirmatively and plausibly suggest" a basis for subject-matter jurisdiction. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam). In reviewing such a "facial attack to the court's jurisdiction, [courts must] draw all facts—which [are] assume[d] to be true unless contradicted by more specific allegations or documentary evidence—from the complaint and from the exhibits attached thereto." *Id.* When doing so, courts must construe "all reasonable inferences to be drawn from those factual allegations in [the non-moving party's] favor." *Id.*

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the" complaint. *Carter*, 822 F.3d at 57. Should a defendant do so, a plaintiff must "come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (alteration in original) (quoting *Exchange Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)). In opposing such a motion, a plaintiff has "the burden of proving by a preponderance of the evidence that [subject-matter jurisdiction] exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

### B.      Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citation and footnote omitted). In assessing a Rule 12(b)(6) motion, "[c]ourt[s] must . . . 'draw [ ] all inferences in the plaintiff's

favor.'" *Goonan v. Fed. Reserve Bank of N.Y.*, 916 F. Supp. 2d 470, 478 (S.D.N.Y. 2013) (second alteration in original) (quoting *Allaire Corp. v. Okumus,* 433 F.3d 248, 250 (2d Cir. 2006)). In addition to "the allegations on the face of the complaint," courts considering Rule 12(b)(6) motions also "may permissibly consider documents . . . that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings*, 489 F.3d 499, 509 (2d. Cir. 2007).

## III. Discussion

Glaser's First Amended Complaint asserts federal claims under Title VII (FAC ¶¶ 188–212) and Title IX (FAC ¶¶ 117–55), as well as various state- and city-law claims (FAC ¶¶ 156–87, 213–49). All Defendants move to dismiss Glaser's Title IX claims pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction. (Dkt. No. 41 at 34–39; Dkt. No. 54 at 22–25; Dkt. No. 66 at 10–12.) They also, collectively, move to dismiss each of Plaintiff's claims pursuant to Rule 12(b)(6) for failure to state a claim. (Dkt. No. 41 at 10–34; Dkt. No. 54 at 17–22; Dkt. No. 66 at 4–9.) Finally, the California Entities, Hale, and 5419 Sunset move to dismiss Plaintiff's claims against them pursuant to Rules 12(b)(2) and 12(b)(5) for improper service and for lack of personal jurisdiction. (Dkt. No. 54 at 6–17.)

The Court concludes that while Defendants have failed to identify any basis for calling into question this Court's subject-matter jurisdiction over Glaser's Title IX claims, Defendants are correct that Glaser has failed to state a claim for relief under either Title VII or Title IX. The Court declines to exercise supplemental jurisdiction over Glaser's remaining state- or city-law claims or to address the California Entities, Hale, and 5419 Sunset's Rule 12(b)(2) and Rule 12(b)(5) motions.

### A. Subject-Matter Jurisdiction

Each of the Defendants moves to dismiss Glaser's Title IX claims against them for lack of subject-matter jurisdiction. (Dkt. No. 41 at 34–39; Dkt. No. 54 at 22–25; Dkt. No. 66 at 10–12.) According to Defendants, Glaser has failed to demonstrate that any of them operates an "education program or activity receiving Federal financial assistance," which is a statutory requirement for any Title IX claim. 20 U.S.C. § 1681(a). Defendants maintain that Glaser's "conclusory assertion[s]" to the contrary are "insufficient to meet Plaintiff's burden" of demonstrating subject-matter jurisdiction over those claims. (Dkt. No. 41 at 35.)

Defendants' contention amounts to a merits-based challenge to the sufficiency of Plaintiff's allegations, rather than an attack on this Court's subject-matter jurisdiction. "[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006). The requirement that Title IX defendants operate an "education program or activity receiving Federal financial assistance" is not described in the statute as jurisdictional. 20 U.S.C. § 1681(a). Indeed, just as with the "employee-numerosity requirement" for Title VII claims that the Supreme Court held to be non-jurisdictional in *Arbaugh*, Title IX's federal-funding provision also "does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Arbaugh*, 546 U.S. at 515 (second quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). A similar outcome is thus called for under the Supreme Court's "readily administrable bright line" rule, *id.* at 516, created for courts confronting the "subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy," *id.* at 511. Because Title IX does not describe its limitations on the scope of covered entities as jurisdictional, the question whether a defendant operates a covered education program or activity receiving federal financial assistance goes to the merits of a Title IX plaintiff's claim, but it does not operate as a threshold

jurisdictional requirement subject to Rule 12(b)(1). *See Barrs v. S. Conference*, 734 F. Supp. 2d 1229, 1232 (N.D. Ala. 2010) ("Whether Defendant receives Title IX funding necessarily implicates the merits of Plaintiffs' case and, therefore, is an issue this court cannot consider under Rule 12(b)(1).").

Still, Defendants might launch a jurisdictional attack on Glaser's Title IX claims if they were "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a [genuine] federal controversy." *Oneida Indian Nation of N.Y. v. Cty. of Oneida*, 414 U.S. 661, 666 (1974). Glaser's claims do not fit this description. Glaser has expressly pleaded that the New York and California Entities operate as educational institutions (*see, e.g.*, FAC ¶¶ 30–31), and that they are each, along with 5419 Sunset, direct recipients of federal funding (FAC ¶¶ 102, 104, 119–24). In addition, and more specifically, he alleges that 5419 Sunset, which took out a federal loan in 2012, is a "dummy entity" created by Hale and the New York and California Entities for purposes of avoiding Title IX liability, and that it "5419 Sunset has common employees, management and/or operations staff with the New York Entities and/or California Entities." (FAC ¶¶ 22–24, 101.) There is case law nominally supporting Glaser's theory that where one organization acts "as an agent or arm of" an educational institution, both may be jointly treated as educational institutions "for Title IX purposes." *O'Connor v. Davis*, 126 F.3d 112, 118–19 (2d Cir. 1997) ("Factors that could lead to [this] conclusion . . . [might include]: the two entities have [an] institutional affiliation; there is [a] written agreement binding the two entities in [some] way; [their] staff [is] shared; [or] funds are circulated between them . . . .") Glaser's claims that the New York and California Entities and 5419 Sunset are all collectively subject to Title IX by virtue of their joint

administration and common management are thus not so wholly insubstantial or frivolous that the exercise of subject-matter jurisdiction over those claims would be inappropriate.

The Court addresses Defendants' challenges to Glaser's Title IX allegations on the merits below. Here, the Court concludes only that this Court has subject-matter jurisdiction over Glaser's non-frivolously pleaded Title IX claims. *See M.H.D. v. Westminster Schs.*, 172 F.3d 797, 802 n.12 (11th Cir. 1999) (concluding that a Title IX claim premised on an arguably novel theory of "Federal financial assistance" was "neither immaterial nor wholly frivolous," and that "[a] district court [therefore] had jurisdiction to entertain th[e] controversy").

### B. Failure to State a Claim

Each of the Defendants moves to dismiss Glaser's claims against them pursuant to Rule 12(b)(6) for failure to state a claim. (Dkt. No. 41 at 10–34; Dkt. No. 54 at 17–22; Dkt. No. 66 at 4–9.) The Court agrees with Defendants that Glaser has failed to plausibly plead a claim for relief under Title VII and Title IX. The Court declines to address Defendants' contentions with respect to Glaser's remaining state-law claims.

### 1. Title VII

All of Glaser's claims brought under Title VII require that he establish that he was an "employee" of UCB LLC.[1] Title VII, in relevant part, defines "[t]he term 'employee' [as] an individual employed by an employer," and it defines "[t]he term 'employer' [as] a person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. §§ 2000e(b), (f). Because Title VII provides only this "circular" definition of employee, the Second Circuit has adopted a two-part test for purposes of determining whether a Title VII plaintiff qualifies as an "employee" under the statute. *United States v. City of N.Y.*, 359 F.3d 83,

---

[1] Glaser's Title VII claims are all brought against only UCB LLC. (FAC ¶¶ 188–212.)

91 (2d Cir. 2004) (quoting *O'Connor*, 126 F.3d at 115). "First, the plaintiff must show she was hired by the putative employer." *Id.* at 91–92. In order to do so, a plaintiff "must establish that she received remuneration in some form for her work." *Id.* at 92. "Second, this Court must determine whether a hired person is an employee under a thirteen-factor agency rubric articulated by the Supreme Court" in *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), which considers factors such as an alleged employer's level of control over the alleged employee. *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 442 (S.D.N.Y. 2018).[2] This two-part test, "[s]tated another way, . . . [requires that] an employer [1] *compensates* and [2] *controls* an employee's work." *Nelson v. Beechwood Org.*, No. 03 Civ. 4441, 2004 WL 2978278, at *3 (S.D.N.Y. Dec. 21, 2004).

The first part of the test, *i.e.*, the compensation or remuneration analysis, is treated as "a threshold issue to determine whether an employee-employer relationship exists." *Hughes*, 304 F. Supp. 3d at 443. Only "[o]nce [a] plaintiff furnishes proof that her putative employer remunerated her for services she performed" must a court "look to 'the thirteen factors articulated by the Supreme Court in [*Reid*].'" *City of N.Y.*, 359 F.3d at 92 (quoting *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 113 (2d Cir. 2000)). While "[t]his remuneration need not be a salary, [it] must consist of 'substantial benefits not merely incidental to the activity performed.'" *Id.* (citation omitted) (quoting *York v. Ass'n of the Bar of the City of*

---

[2] The *Reid* "factors include: (1) the hiring party's right to control the manner and means by which the product is accomplished; (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of the relationship between the parties; (6) whether the hiring party has the right to assign additional projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the method of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work is part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; and (13) the tax treatment of the hired party." *Hughes*, 304 F. Supp. 3d at 442 (citing *Reid*, 490 U.S. at 751–52).

*N.Y.,* 286 F.3d 122, 126 (2d Cir. 2002)).  Put another way, these "benefits must meet a minimum level of 'significance,' or substantiality, in order to find an employment relationship in the absence of more traditional compensation."  *York*, 286 F.3d at 126 (quoting *Pietras v. Bd. of Fire Comm'rs of the Farmingville Fire Dist.,* 180 F.3d 468, 473 (2d Cir. 1999)).  The Second Circuit has identified the "following factors as indicative of 'financial benefit'" sufficient to qualify as remuneration: "salary or other wages; employee benefits, such as health insurance; vacation; sick pay; or the promise of any of the foregoing."  *Id.*  An example of a set of non-salary remuneration held sufficiently substantial to satisfy this test is: "(1) a retirement pension, (2) life insurance, (3) death benefits, (4) disability insurance, and (5) some medical benefits."  *Pietras,* 180 F.3d at 471; *see also id.* at 473.

Here, Glaser has alleged three forms of compensation that he was receiving from Defendants in return for his work for them at the time of his ban: (1) free drinks, (2) free admission tickets to shows hosted by the New York and California Entities, and (3) the opportunity to showcase his work to casting directors.  (FAC ¶ 53.)  These types of compensation do not fit into any of the categories that the Second Circuit has described as indicative of financial benefit sufficient to satisfy the remuneration inquiry.  *See York*, 286 F.3d at 126.  The Court concludes that the compensation alleged by Glaser does not "meet [the] minimum level of 'significance,' or substantiality, [required] in order to find an employment relationship in the absence of more traditional compensation."  *Id.* (quoting *Pietras,* 180 F.3d at 473).  Moreover, all of these alleged benefits, and most particularly the career benefits Glaser obtained from showcasing his work to casting directors, are "merely incidental" to Glaser's performances.  *Id.*

A survey of the various forms of compensation addressed in prior cases applying the Second Circuit's "remuneration" test for Title VII "employees" buttresses this conclusion. For example, in *Hughes*, a court dismissed a Title VII claim on the basis of the plaintiff's failure plead sufficient remuneration. *Hughes*, 304 F. Supp. 3d at 443–44. The *Hughes* plaintiff was a regularly appearing Fox commentator who was not paid any salary or fee for her appearances on Fox's networks. *Id.* at 438–39. The *Hughes* court rejected the forms of direct compensation the plaintiff had pleaded, namely transportation reimbursement and the costs for doing her hair and makeup, as too insignificant or insubstantial to qualify as remuneration under the Second Circuit standard. *Id.* at 443. The court also rejected as irrelevant to the remuneration inquiry the plaintiff's allegations that her career prospects were boosted by her appearances, holding that any such boost was merely "incidental" to the activity she was performing. *Id.* at 444.

The same conclusion is called for here. Glaser's allegations that he received free drinks and admission tickets to the New York and California Entities' theatre are of an analogous level of insubstantiality to the transportation costs and hair-and-makeup services rejected in *Hughes*. *See id.* at 443. Similarly, the benefits to Glaser's career attendant to his performances at the New York Entities' theatre are just as "incidental" to his comedic work as were the career benefits the *Hughes* plaintiff derived from her appearances on Fox channels. *See id.* at 444.

Equally apropos is *York*. *See* 286 F.3d at 122. In *York*, the Second Circuit affirmed the Rule 12(b)(6) dismissal of a Title VII claim brought by a volunteer for a local bar association group where the volunteer pleaded that she received only clerical assistance, the opportunity to deduct relevant expenses from her taxes, and networking opportunities as compensation for her work. *Id.* at 123, 126. The *York* court described all of these benefits as "merely incidental to the administration of the [Bar] Association's programs for the benefit of the bar at large." *Id.* at 126.

The court expressed concern that a conclusion to the contrary would "render all volunteer activity 'employment' under Title VII," an outcome the court expressly rejected. *Id.* The *York* court added that "even if the benefits put forward by [the volunteer] were not merely incidental to her activities for the [Bar] Association, they were not sufficiently substantial to meet the remuneration test. Clerical support, limited tax deductions, and 'networking opportunities' are not the sort of substantial benefits that distinguish [Title VII employees from volunteers] for remuneration purposes." *Id.*

Again, there is no basis for distinguishing the free drinks, free admission tickets, and opportunities for professional growth that Glaser received in exchange for his performances at the New York Entities' theatre from the categorically similar benefits the *York* plaintiff received for her volunteer work. Indeed, the tax deductions and clerical support obtained by the volunteer appear *more* valuable than the drinks and tickets Glaser obtained for his work, yet the Second Circuit rejected even the former as insufficient for Title VII remuneration purposes. *See id.* And because the Second Circuit has held that the networking opportunities that came along with volunteering in a local professional organization were incidental to that volunteering, so too here must this Court hold that the opportunities for professional growth that came along with Glaser's stage time at a local comedy theater were incidental to his performances. *See id.*

Finally, a brief comparison of Glaser's allegations with the types of non-financial compensation the Second Circuit has described as sufficiently substantial to qualify as remuneration confirms the insufficiency of the former for purposes of Title VII. In *Pietras*, the Second Circuit described a mix of benefits composed of "(1) a retirement pension, (2) life insurance, (3) death benefits, (4) disability insurance, and (5) some medical benefits" as a sufficient basis for finding Title VII employee status. *Pietras,* 180 F.3d at 471; *see also id.* at

473.  And in *City of New York*, the Second Circuit held that a Title VII plaintiff's receipt of "cash payments and food stamps in return for [] work," where those "payments equaled the minimum wage times the number of hours [] worked," along with "other benefits including transportation and child care expenses and eligibility for workers' compensation," were sufficiently "substantial" to qualify as remuneration.  *City of N.Y.*, 359 F.3d at 92.  Here, Glaser has not alleged facts sufficient to show that the compensation he received from UCB LLC is in any way comparable to the benefits received by the plaintiffs in *Pietras* and *City of New York*.  Accordingly, Glaser has failed to allege facts sufficient to establish that he was compensated in a manner sufficient to qualify him as an "employee" of UCB LLC at the time of the conduct at issue in this suit.  All of his Title VII claims must therefore be dismissed.

### 2.     Title IX

Glaser's Title IX claims are similarly deficient.  Because Glaser's allegations establish that he was neither a student nor an employee of Defendants as of August 2016, the period in which he was allegedly discriminated against on the basis of gender, he fails to allege facts sufficient to demonstrate that Title IX affords him a right to relief for that discrimination.

Glaser has expressly pleaded that his time as a student at UCB ended years before Defendants' allegedly discriminatory conduct.  (FAC ¶¶ 42, 49.)  In response to Defendants' argument that this Court should dismiss Glaser's Title IX claims because he was not a student in any of their educational programs at the time of their allegedly discriminatory conduct (Dkt. No. 41 at 25–26; Dkt. No. 54 at 21; Dkt. No. 66 at 8–9), Glaser contends that because *his* alleged misconduct occurred while he was still a student at UCB, he should be entitled to sue Defendants under Title IX for their disciplinary treatment of him a number of years later (Dkt. No. 67 at 26–27; Dkt. No. 81 at 16).  Glaser's argument misses the point.  The incident giving rise to Glaser's Title IX claims is Defendants' allegedly discriminatory disciplining of Glaser, not Glaser's

alleged rapes.  (*See, e.g.*, FAC ¶¶ 131 ("[T]he New York Entities and California Entities and

5419 Sunset's disciplinary process violated . . . Title IX . . . ."); 135 ("[T]he New York Entities

and California Entities and 5419 Sunset's actions in the investigation and adjudication of the

allegations against Plaintiff Glaser were . . . in clear violation of Title IX's requirements . . . .").)

The proper question before the Court is thus whether Title IX provides a person in Glaser's

position as of August 2016 a private cause of action.

"Title IX has been construed to prohibit gender discrimination against both students

enrolled in federally supported educational programs and employees involved in such programs."

*Murray v. N.Y. Univ. Coll. of Dentistry*, 57 F.3d 243, 248 (2d. Cir. 1995).  In the context of

Title IX claims predicated on sexual harassment, in contrast, a number of courts have required

that a plaintiff establish as an element of her claim that she be a "student" of a covered

defendant.  *See, e.g.*, *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007) (en banc) ("To

establish a Title IX claim on the basis of sexual harassment, a plaintiff must show that (1) she

was a student at an educational institution receiving federal funds . . . ."); *Frazier v. Fairhaven

Sch. Comm.*, 276 F.3d 52, 66 (1st Cir. 2002) (same); *K.T. v. Culver-Stockton Coll.*, No. 16 Civ.

165, 2016 WL 4243965, at *4–6, (E.D. Mo. Aug. 11, 2016) ("Plaintiff's Status as a Non-Student

Precludes Her From Asserting a Title IX Claim.").  As one of these cases notes, *see K.T.*, 2016

WL 4243965, at *5, this is because the Supreme Court has explained in this context that "the

[Title IX] provision that the discrimination occur 'under any education program or activity'

suggests that the behavior [giving rise to liability must] . . . have the systemic effect of denying

the victim equal access to an educational program or activity," *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 652 (1999).[3]

Although Glaser's Title IX claims involve allegedly discriminatory disciplinary processes rather than sexual harassment, his Title IX claims brought in the capacity of a non-student should fare no better than did the Title IX claims of other non-students rejected in prior cases. Title IX proscribes gender discrimination that impacts a person's right to equal enjoyment of an "educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Because Glaser has pleaded that he had moved on from Defendants' educational programs by the time of Defendants' allegedly unlawful discrimination (FAC ¶¶ 42, 49), there is no plausible basis for concluding that Defendants' discriminatory conduct would have "den[ied] the victim [*i.e.*, Glaser] equal access to an educational program or activity," *Davis*, 526 U.S. at 652. Nor can Glaser be said to have been "subjected to discrimination *under any education program or activity*" in these same circumstances. 20 U.S.C. § 1681(a) (emphasis added).

The Court does not now hold that a non-student can never be entitled to bring a private suit for gender discrimination under Title IX. For example, it well established that prospective applicants to a covered educational program may bring such suits. *See, e.g., Cannon v. Univ. of*

---

[3] Glaser identifies no case suggesting that a former student, one whose participation in an educational program has ended, may bring suit under Title IX with respect to later discriminatory conduct that is unrelated to their participation as a student or employee in an educational program or activity. Glaser cites one case that he says makes it "very clear that Title IX covers former students and employees." (Dkt. No. 75 at 20.) This case, however, holds no such thing. *See generally Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545 (3rd Cir. 2017). *Mercy Catholic*'s analysis of the phrase "educational program or activity" concerns the scope of programs or activities themselves covered by the statute, *see id.* at 553–54, and it nowhere addresses the issue raised by Defendants here, namely, whether a former participant in a covered educational activity or program may assert a private cause of action under Title IX for discriminatory conduct subsequent and unrelated to their participation in that program (*see, e.g.*, Dkt. No. 80 at 10).

*Chi.*, 441 U.S. 677, 680 (1979). But while any such discriminated-against *prospective* students clearly "are effectively denied equal access to an [educational] institution's resources and opportunities," *Davis*, 526 U.S. at 651, discrimination against a *former* student in Glaser's situation does not similarly implicate Title IX's concern with discrimination wrought "under any education program or activity," 20 U.S.C. § 1681(a). Accordingly, the Court concludes that Glaser is not entitled to bring a private suit against Defendants for their alleged discrimination under Title IX absent any allegations that he sought out but was denied equal enjoyment of "any education program or activity" on the basis of gender.[4]

Finally, Glaser's argument that he can sue as an "employee" of an entity subject to Title IX serves him no better. (Dkt. No. 67 at 26–27.) The Court need not decide whether the Second Circuit's current Title IX jurisprudence permits employees of covered institutions to assert a private cause of action under Title IX, *see Summa v. Hofstra Univ.*, 708 F.3d 115, 131 & n.1 (2d Cir. 2013) (noting Circuit split on this question and declining to "address . . . whether there is a private right of action for employment discrimination under Title IX"), because, as

_____

[4] Glaser does not argue that his continued involvement in Defendants' educational programs after his time as a student had ended was sufficient by itself entitle him to sue under Title IX. (*See, e.g.*, Dkt. No. 67 at 26–27.) Nor could he, at least given the factual allegations in his First Amended Complaint. His allegation that he had "several times during the latter part of his tenure with the New York Entities" volunteered to perform at their classes (FAC ¶ 52) lacks the specificity needed to support the conclusion that he remained a participant in their educational program as of August 2016, particularly because that "tenure" appears to refer to a six-year period spanning from 2010 to 2016 (*see* FAC ¶ 49). Similarly, Glaser's broad allegation that the "New York Entities and California Entities' curriculum is intimately bound with its performances" (FAC ¶ 55) does nothing to establish *his* right to sue under Title IX. Other than his allegation that he had at "several [unspecified] times" assisted with Defendants' classes following his time as their student (FAC ¶ 52), Glaser alleges no facts regarding *his own* continued involvement with Defendants' educational program. There is thus no plausible basis, based on the facts alleged in the First Amended Complaint, for concluding that Defendants' August 2016 conduct resulted in Glaser's being "subjected to discrimination under any education program or activity" in violation of Title IX. 20 U.S.C. § 1681(a).

explained above, Glaser has failed to plead facts sufficient to show that he was such an "employee," *see supra* Section III.B.1.[5]  Accordingly, Glaser's Title IX claims for employment discrimination, even if hypothetically cognizable under the statute, must be dismissed for his failure to plead facts sufficient to show that he was an "employee" of Defendants at the time of their conduct at issue in this suit.

### C.  Plaintiff's Remaining Claims

Because all of Glaser's federal claims have been dismissed, this Court must determine whether to exercise supplemental jurisdiction over his remaining city- and state-law claims. (FAC ¶¶ 156–87, 213–49.)  Where a district court has original jurisdiction over certain claims in an action, and additional claims "form part of the same case or controversy," the court has supplemental jurisdiction over the additional claims.  28 U.S.C. § 1367(a).  However, a court "may decline to exercise supplemental jurisdiction over" the additional claims on various grounds, including where "the district court has dismissed all claims over which it has original jurisdiction."  *Id.* § 1367(c)(3); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").  Here, because all of Glaser's federal claims have been dismissed

---

[5] Glaser concedes that his "claim for employment discrimination . . . under Title IX" may be made subject to the "same employment relationship analysis applied above to [his] Title VII claims," and he articulates no basis for applying any different definition of "employee" in the contexts of Title VII and Title IX.  (Dkt. No. 67 at 26.)  Indeed, Glaser likely could not, as "[i]n several prior cases, [the Second Circuit] ha[s] applied Title VII's framework and principles to Title IX claims." *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016) (collecting cases); *see also Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000) ("[I]dentical standards apply to employment discrimination claims brought under Title VII [and] Title IX . . . .").

at an early stage of this litigation, the Court declines in its discretion to exercise supplemental jurisdiction over Glaser's remaining city- and state-law claims. Accordingly, all of Glaser's remaining claims are dismissed.

The California Entities, Hale, and 5419 Sunset have separately moved to dismiss Plaintiff's claims against them pursuant to Rules 12(b)(2) and 12(b)(5) for improper service and for lack of personal jurisdiction. (Dkt. No. 54 at 6–17.) "[I]n cases such as this one with multiple defendants—over some of whom the court indisputably has personal jurisdiction—in which all defendants collectively challenge the legal sufficiency of the plaintiff's cause of action, [courts] may address first the facial challenge to the underlying cause of action and, if [they resolve to] dismiss the claim in its entirety, decline to address the personal jurisdictional claims made by some defendants." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012). Here, the Court has resolved to dismiss all of the claims against the California Entities, Hale, and 5419 Sunset in light of their merits-based challenges to Plaintiff's claims, and the Court would have been required address those merits-based challenges in any event because they were raised by other, New York-domiciled parties over whom the Court indisputably has personal jurisdiction. Accordingly, the Court need not address the California Entities', Hale's, and 5419 Sunset's Rule 12(b)(2) and 12(b)(5) motions to dismiss.

**IV.    Conclusion**

For the foregoing reasons, Defendants' motions to dismiss are GRANTED.

Plaintiff is granted leave to replead, provided that he can do so in a manner consistent with this opinion.  Any amended complaint shall be filed on or before April 18, 2019.  If Plaintiff decides not to replead but wishes to file an appeal from this opinion and order, he shall file a letter to that effect no later than April 18, 2019, in which event the Court will enter final judgment.

The Clerk of Court is directed to close the motions at Docket Numbers 39, 52, and 64.

SO ORDERED.

Dated:  March 28, 2019
          New York, New York

_____
                J. PAUL OETKEN
          United States District Judge